# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| In re:<br><br>PAXE LATITUDE LP,<br><br>Debtor. | Chapter 11<br>Case No. 23-11337 (CMG)<br><br>Hearing Date: TBD<br>Hearing Time: TBD |

**MOTION OF OHIO STATE EX REL COLUMBUS CITY ATTORNEY ZACH KLEIN FOR AN ORDER OR ORDER(S): (I) DISMISSING THE DEBTOR'S CASE WITH PREJUDICE PURSUANT TO 11 U.S.C. § 1112(b); OR, ALTERNATIVELY (II) (A) FINDING THAT THE CITY TAKING CONTROL OF THE DEBTOR'S PROPERTY VIA A COURT-APPOINTED RECEIVER IS WITHIN ITS POLICE AND REGULATORY POWER NOT SUBJECT TO THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(b)(4), OR ALTERNATIVELY, GRANTING THE CITY RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d) IN ORDER TO INSTALL A RECEIVER, TAKE NECESSARY EMERGENCY CONTROL OVER THE PROPERTY, AND FUND THE NECESSARY EXPENSES OF THE RECEIVER, HOUSING FOR THE DEBTOR'S DISPLACED TENANTS, THE REMOVAL OF HAZARDOUS MOLD AND ASBESTOS AT THE DEBTOR'S PROPERTY, AND OTHER NECESSARY COSTS AND EXPENSES; AND (B) APPOINTING AN OPERATING TRUSTEE PURSUANT TO 11 U.S.C. § 1104(a), OR CONVERTING THE DEBTOR'S CASE TO CHAPTER 7 PURSUANT TO 11 U.S.C. § 1112(b)**

**KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP**

Fred Stevens[1]
Christopher J. Reilly
200 West 41st Street, 17th Floor
New York, NY 10036
Tel. (212) 972-3000
Fax. (212) 972-2245

*Attorneys for the Lawful Representative of the City of Columbus, Ohio*

---

[1] Application for admission *pro hac vice* to be filed.

i

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................2

JURISDICTION ...................................................................................................................5

INTRODUCTION .................................................................................................................5

BACKGROUND ...................................................................................................................6

    A.  The Debtor, its Capital Structure, and its Failure to Maintain the Property .......................6

    B.  Routine Contempt Motions, Agreed Orders, and Violation of Those Orders by the
        Debtor ...........................................................................................................................7

    C.  The Christmas Day 2022 Disaster and January 4, 2023 Agree Order ................................8

    D.  The Tenants Continue to Suffer.....................................................................................12

    E.  The Debtor's Legal Failings at the Property are Long Standing, the Debtor has Done
        Nothing to Rehabilitate the Property, and the Problems Continue to get Worse ..............14

RELIEF REQUESTED..........................................................................................................15

    A.  The Debtor's Case Should be Dismissed Pursuant to U.S.C. § 1112(b) ..........................15

    B.  Alternatively, the Court Should Determine that the Stay Does Not Apply, or Otherwise
        Grant Relief from the Stay .............................................................................................21

        1.  The City's Proposed Actions Constitute the Enforcement of its Police and Regulatory
            Powers and are not Subject to the Stay ...................................................................22

        2.  Relief From the Stay Should be Granted to the Extent any Proposed Actions do not
            Fall Within the Police Powers Exception .................................................................23

    C.  If the Debtor's Case is not Dismissed, a Trustee Should be Appointed Under 11 U.S.C.
        §1104, or the Case Should be Converted..........................................................................24

NOTICE.............................................................................................................................29

NO PRIOR RELIEF .............................................................................................................29

# TABLE OF AUTHORITIES

*Cases:*

*15375 Mem'l Corp. v. Bepco, L.P.*, 589 F.3d 605 (3d Cir. 2009) ................................................16

*Argus Grp. 1700, Inc. v. Steinman (In re Argus Grp. 1700, Inc.),*
    206 B.R. 757 (E.D. Pa. 1997) ................................................................18

*C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC Ave. P'ship),*
    113 F.3d 1304 (2d Cir. 1997) ......................................................16, 17, 18

*Carolin Corp. v. Miller*, 886 F.2d 693 (4th Cir. 1989) ................................................16

*Commodity Futures Trading Comm'n v. Weintraub,*
    471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed. 2d 372 (1985) ........................................25, 26

*Furness v. Lilienfield*, 35 B.R. 1006 (D. Md. 1983) ................................................18

*In re 234-6 W. 22nd St. Corp.*, 214 B.R. 751 (Bankr. S.D.N.Y. 1997) ........................................24

*In re Bellevue Place Assocs.*, 171 B.R. 615 (Bankr. N.D. Ill. 1994) ............................................25

*In re Bowman*, 181 B.R. 836 (Bankr. D. Md. 1995) ........................................................26

*In re Brandywine Assocs., Ltd.*, 85 B.R. 626 (Bankr. M.D.Fla. 1988) ........................................18

*In re Cloudeeva, Inc.*, 2014 WL 6461514 (Bankr. D.N.J. Nov. 18, 2014) ..................................16

*In re First Alliance Mortg. Co.*, 263 B.R. 99 (B.A.P. 9th Cir. 2001) ..........................................22

*In re Hampton Hotel Investors, L.P.*, 270 B.R. 346 (Bankr. S.D.N.Y. 2001) ..............................25

*In re Ionosphere Clubs, Inc.*, 113 B.R. 164 (Bankr. S.D.N.Y. 1990)..........................................26

*In re Marvel Entm't Grp.*, 140 F.3d 463 (3d Cir. 1998)..................................................26

*In re McCorhill Publ'g, Inc.*, 73 B.R. 1013 (Bankr. S.D.N.Y. 1987) ..........................................26

*In re McMullen*, 386 F.3d 320 (1st Cir. 2004).............................................................22

*In re Northwest Airlines Corporation*, 483 F.3d 160 (2d Cir. 2007) ............................................25

*In re NuGelt, Inc.*, 142 B.R. 661 (Bankr. D. Del. 1992)..................................................16

*In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393 (11th Cir. 1988) ............................................17, 24

*In re Pied Piper Casuals, Inc.*, 40 B.R. 723 (Bankr. S.D.N.Y. 1984) ...........................................26

*In re Ravick Corp.*, 106 B.R. 834 (Bankr. D.N.J. 1989) ...............................................................18

*In re SB Props.*, 185 B.R. 198 (E.D. Pa. 1995) ..............................................................................17

*In re Sharon Steel Corp.*
    86 B.R. 455 (Bankr. W.D. Pa. 1988), *aff'd*, 871 F.2d 1217 (3d Cir. 1989) ............................26

*In re SGL Carbon Corp.*, 200 F.3d 154 (3d Cir. 1999) ..........................................................16, 17

*In re Suncruz Casinos, LLC*, 298 B.R 821 (Bankr. S.D. Fla. 2003) .............................................26

*In re Syndicom Corp.*, 268 B.R. 26 (Bankr. S.D.N.Y. 2001) .......................................................17

*In re The AdBrite Corporation*, 290 B.R. 209 (Bankr. S.D.N.Y. 2003)........................................25

*In re Tiffany Square Assocs., Ltd.*, 104 B.R. 438 (Bankr. M.D. Fla. 1989)..................................17

*In re Trident Associates Ltd. Partnership*,
    52 F.3d 127, 131 (6th Cir. 1995), cert. denied,
    516 U.S. 869, 116 S.Ct. 188, 133 L.Ed.2d 125 (1995)...........................................................24

*In re V. Savino Oil & Heating Co.*, 99 B.R. 518 (Bankr. E.D.N.Y. 1989) ..................................26

*In re W.R. Grace & Co.*, 285 B.R. 148 (Bankr. D. Del. 2002) ....................................................25

*In re Wally Findlay Galleries (New York), Inc.*, 36 B.R. 849, 851 (Bankr. S.D.N.Y. 1984) .......18

*Marsch v. Marsch (In re Marsch)*, 36 F.3d 825 (9th Cir. 1994).............................................16, 17

*NMSBPCSLDHB, L.P. v. Integrated Telecom Express, Inc.*
    *(In re Integrated Telecom Express, Inc.)*, 384 F.3d 108 (3d Cir. 2004) ................................16

*Primestone Inv. Partners L.P. v. Vornado PS, L.L.C. (In re Primestone Inv. Partners L.P.)*,
    272 B.R. 554 (D. Del. 2002) ...................................................................................................17

*United States v. Nicolet, Inc.*, 857 F.2d 202 (3d Cir. 1988).........................................................23


**Other Authorities:**

11 U.S.C. § 362(b)(4) ......................................................................................................1, 22, 29

11 U.S.C. § 362(d) ....................................................................................................................1, 29

11 U.S.C. § 362(d)(1) ...................................................................................................24

11 U.S.C. § 1104(a) .......................................................................................1, 24, 27, 30

11 U.S.C. § 1104(a)(1) ............................................................................................25, 27

11 U.S.C. § 1104(a)(2) ......................................................................................25, 27, 28

11 U.S.C. § 1107 ............................................................................................................5

11 U.S.C. § 1108 ............................................................................................................5

11 U.S.C. § 1112(b) ..........................................................................1, 15, 16, 28, 29, 30

11 U.S.C. § 1112(b)(1) ...................................................................................................16

11 U.S.C. § 1112(b)(2) ...................................................................................................24

28 U.S.C. § 157 ..............................................................................................................5

28 U.S.C. § 157(b)(2)(A) ................................................................................................5

28 U.S.C. § 157(b)(2)(O) ................................................................................................5

28 U.S.C. § 1334 ............................................................................................................5

28 U.S.C. § 1409(a) ........................................................................................................5

## TABLE OF EXHIBITS

| Exhibit | Description |
|---|---|
| A | February 16, 2022 *Decision and Entry for Contempt* of the Franklin County Municipal Court Environmental Division, Columbus, Ohio, Case No. 2022 EVH 060061 (J. Stephanie Mingo) |
| B | City's Complaint Commencing the Public Nuisance Action in the Environmental Court on January 28, 2022 |
| C | City's Emergency Orders Dated December 23, 2022 |
| D | City's Emergency Order Dated December 25, 2022 |
| E | Agreed Judgment Entered by in the Environmental Case on January 4, 2023 |
| F | Affidavit of Hannah Jones, Deputy Director in the City of Columbus' Department of Development |
| G | Affidavit of Aric Schmitter, Code Enforcement Supervisor for the City of Columbus |

| | **Exhibit A to Affidavit – Photographs of the Premises Taken by Aric Schmitter During Inspections on February 22 and 23, 2023** | |
|---|---|---|
| **No.** | **Description of Photograph Contents** | |
| 1 | Broken Windows at Premises taken February 23, 2023 | |
| 2 | Active Leak in Common Hall | |
| 3 | Active Leak in Common Hall | |
| 4 | Equipment of Contractor Stored in Gymnasium | |
| 5 | DEMARCATION OF PICTURES FROM 521 TOWER | |
| 6 | Mold Growth in Common Hall | |
| 7 | Equipment of Contractor Stored on Second Floor | |
| 8 | Mold Grown in Second Floor Common Hall | |
| 9 | Smashed Exterior Window Open in Room 211, Leaving Room and Contents Exposed to Elements | |

| Exhibit | | Description |
|---|---|---|
| | 10 | Equipment of Contractor Stored on Third Floor |
| | 11 | Smashed Exterior Window Open in Room 311, Leaving Room and Contents Exposed to Elements |
| | 12 | Smashed Exterior Window Open in Room 411, Leaving Room and Contents Exposed to Elements |
| | 13-14 | Mold Growth in Unit 409 |
| | 15 | Smashed Exterior Window Open in Room 511, Leaving Room and Contents Exposed to Elements |
| | 16 | Smashed Exterior Window Open in Room 611, Leaving Room and Contents Exposed to Elements |
| | 17 | Mold Growth on Seventh Floor |
| | 18 | Smashed Exterior Window Open in Room 711, Leaving Room and Contents Exposed to Elements |
| | 19 | Smashed Exterior Window Open in Room 811, Leaving Room and Contents Exposed to Elements |
| | 20 | Smashed Exterior Window Open in Room 911, Leaving Room and Contents Exposed to Elements |
| | 21 | Smashed Exterior Window Open in Room 1011, Leaving Room and Contents Exposed to Elements |
| | 22 | Smashed Exterior Window Open in Room 1111, Leaving Room and Contents Exposed to Elements |
| | 23 | Smashed Exterior Window Open in Room 1211, Leaving Room and Contents Exposed to Elements |
| | 24 | Mold Growth on Ceiling of Unit 1103 |
| | 25 | Same |
| | 26 | Smashed Exterior Window Open in Room 1311, Leaving Room and Contents Exposed to Elements |

| Exhibit | | Description |
|---|---|---|
| | 27 | Smashed Exterior Window Open in Room 1411, Leaving Room and Contents Exposed to Elements |
| | 28 | Smashed Exterior Window Open in Room 1511, Leaving Room and Contents Exposed to Elements |
| | 29 | Mold Growth in Unit 1501 |
| | 30 | Same |
| | 31 | Active Ceiling Leak in Unit 1502 |
| | 32 | Same |
| | 33 | Floor of Unite 1502 With Active Ceiling Leak |
| | 34 | Mold Growth in Unit 1505 |
| | 35 | DEMARCATION OF PICTURES FROM 529 TOWER |
| | 36 | Broken Window in Unit 314 |
| | 37 | Mold Growth in Unit 312 |
| | 38 | Same |
| | 39 | Open Window in Unit 1307 |
| | 40 | Mold Growth in Unit 1412 |
| | 41 | Same |
| | **Exhibit B to Affidavit – Inspection Results and Fifth Notice Issued by the City of Columbus, Bureau of Fire Prevention, to the Debtor on February 22, 2023** | |

**TO THE HONORABLE CHRISTINE M. GRAVELLE,**
**UNITED STATES BANKRUPTCY JUDGE:**

Ohio State Ex Rel Columbus City Attorney Zach Klein (the "<u>City</u>"), by and through his

undersigned counsel, Klestadt Winters Jureller Southard & Stevens, LLP, as and for his motion

(the "<u>Motion</u>") for an order or order(s):

    (I)    immediately dismissing the Chapter 11 case of Paxe Latitude LP, the above-
captioned debtor and debtor in possession (the "<u>Debtor</u>") with prejudice pursuant
to 11 U.S.C. § 1112(b);

or, in the event the Court declines to immediately dismiss the Debtor's case:

    (II)    (A) finding that the City taking physical control of the Debtor's real property
located at 521, 525 and 529 Sawyer Boulevard, Columbus, Ohio 43203, Parcel No.
101-288512, commonly referred to as Latitude Apartments or Latitude Five25 and
formerly known as Sawyer Towers (the "<u>Property</u>") by and through a receiver (the
"<u>Receiver</u>") is within the City's police and regulatory power not subject to the
automatic stay pursuant to 11 U.S.C. § 362(b)(4), or alternatively, granting the City
relief form the automatic stay pursuant to 11 U.S.C. § 362(d) in order to install the
Receiver, take necessary emergency control over the Property, and fund the
Receiver and other costs and expenses necessary to care for the Debtor's displaced
tenants by way of a priming first mortgage on consent of the Debtor's mortgagee,
Lument Commercial Mortgage Trust (the "<u>Lender</u>"); and

    (B) appointing an operating trustee pursuant to 11 U.S.C. § 1104(a), or converting
the Debtor's case to Chapter 7 pursuant to 11 U.S.C. § 1112(b);

respectfully sets forth and alleges as follows:

## PRELIMINARY STATEMENT

The Debtor's Property consists of two apartment buildings with a combined total of 394 residential apartment units, approximately 40% of which were occupied until Christmas Day 2022. Following a lengthy period of neglect by the Debtor and its owners and management, the Property suffered catastrophic waterline ruptures on December 24 and 25, 2022, causing the Property to flood and to lose heat, water, fire suppression, and elevators.  Columbus Fire Department and Code Enforcement determined that the Property was unsafe for habitation and directed the immediate mass evacuation and emergency relocation of the tenants to a shelter on Christmas Day 2022.  The tenants have since taken up residency in motels at the exclusive cost and expense of the City, Franklin County (the "County") and various non-profit organizations.

To make matters even worse, the Debtor's contractors brought in to rehabilitate the Property disturbed asbestos-containing materials and have contaminated the tenants' personal property.  The asbestos contamination, together with the black mold growing in several areas, shattered windows, and active water leaks, have rendered the Property completely uninhabitable without costly repairs and remediation.  The Debtor's tenants left their homes on Christmas Day with nothing more than they could carry.   Of the 194 evacuated tenants, only 82 have found permanent housing elsewhere while 103 are still living in motels paid for by the City and County.

In a decision entered by the Environmental Division of the Franklin County Municipal Court (the "Environmental Court") on February 16, 2023 (the "2/16/23 Decision"), Judge Stephanie Mingo made material findings following a two-day evidentiary hearing and described what happened and precisely who was at fault as follows:

> The devastating and traumatic upending of the lives of the tenants of [the Property] was completely preventable.  The initial public nuisance finding at the start of this court case was completely preventable.  The subpar conditions that have plagued the Property prior to this court case were completely preventable.  The initial code violations and public nuisance conditions were a direct result of the

severe and gross neglect of ownership and management. The catastrophic rupture of the waterlines in December 2022 was a direct result of the severe and gross neglect of ownership and management. The traumatic emergency evacuation of tenants on Christmas Day 2022 was a direct result of the severe and gross neglect of ownership and management. The mishandling of asbestos materials was a direct result of the severe and gross neglect of ownership and management.

The seismic efforts to prevent this catastrophic failure and to assist those unfortunate displaced tenants on a cold Christmas night were not done by ownership or management. Instead, those efforts were taken on by Columbus City Code Enforcement, various other City departments, and local non-profit organizations. But those Herculean efforts become a Sisyphean task when mired by the ongoing neglect and abject failures of the [Debtor and Intergra Affordable Management, LLC]. It is in the best interest of all of those involved that [the Debtor] no longer have control of this [P]roperty and a Receiver is appointed over the Property so this case can move forward in a responsible and accountable manner.

2/16/23 Decision, a copy of which is annexed hereto as Exhibit A, at p.8.

In the 2/16/23 Decision, the Environmental Court also ordered the Debtor to pay contempt fines totaling at least $4,380,000.00 (collectively, the "Contempt Fines") as follows: (i) $2,500,000.00 to be posted as a bond on or before March 3, 2023, in order to compensate the tenants, including by refunding any January 2023 rental payments made, paying for any unrecoverable personal property, and reimbursing out-of-pocket expenses; (ii) $1,130,000.00 to the City on or before March 13, 2023 on account of its costs and expenses including an outstanding $180,000.00 water bill; (iii) $750,000.00 to the County on or before March 13, 2023; and (iv) all outstanding utility bills by April 13, 2023.

Four days after the Environmental Court entered the 2/16/23 Decision, and five hours and forty-five minutes after the City and Lender filed a joint-motion in the Lender's foreclosure action, the Debtor filed its skeletal bankruptcy petition in this Court located 500 miles away from the Property, the Debtor's displaced tenants, and the City's witnesses and enforcement agents. Since filing its barebones petition, the Debtor has not taken any steps to regain possession and control of

the Property, to address the asbestos, mold, active leaks, open windows, and other dangerous conditions at the Property, or most importantly, to help the displaced tenants find places to live or replace their personal belongings.  The Debtor has no known plan for funding any of the repairs needed at the Property, or to fund the temporary housing and other costs required to care for the tenants (estimated to be $391,255 through February 24, 2023, not including the cost of replacing the tenants' personal property), which costs continue to accrue at the rate of approximately $220,000 per month.  This situation is untenable.

The Debtor's case was filed in bad faith for the apparent purpose of avoiding the appointment of the Receiver (which the Debtor had freely consented to in an agreed judgment), to further frustrate the City, the County, Lender, and tenants, and to avoid paying the Contempt Fines, the majority of which were aimed at dealing with the ongoing needs of the Debtor's displaced tenants.  The Debtor does not appear to have any equity in the Property, or any other legitimate reason to utilize the bankruptcy process.  The Debtor's case should be immediately dismissed with prejudice, so that the City, the County, Lender, and others can clean up the Debtor's mess.  If not, the Debtor should not be allowed to continue in possession of its property, and the installation of the Receiver should be permitted as either a permissible exercise of the City's regulatory and police powers, or by granting the City and Lender relief from the automatic stay.  The health and safety of the Debtor's tenants and citizens of Columbus depend upon the immediate installation of a Receiver who can take immediate appropriate measures to repair and restore the Property.

The City and County have agreed to fund $750,000 for the Receiver and other necessary expenses in order to accomplish these important and necessary tasks.  Further, the City, County and Lender have agreed to the County obtaining a priming, first-priority security interest in the Property on account of any actual emergency funding.

For all the foregoing reasons, the City respectfully requests that this Court immediately dismiss the Debtor's case as a bad faith filing with prejudice, or otherwise, that the Court authorize the appointment of the Receiver and the County's funding of the Receiver's activities by way of a permissible encumbrance on the Property, and install an independent fiduciary to replace the management and owners responsible for the "severe and gross neglect" that caused this situation.

## JURISDICTION

1.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the Standing Order of the United States District Court for the District of New Jersey referring matters to this Court.

2.      This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (O).

3.      Venue of the Debtor's case may be technically proper in this district pursuant to 28 U.S.C. § 1409(a), but the City reserves the right to seek the transfer venue of the case to the bankruptcy court in the Southern District of Ohio where the Property and a majority of the Debtor's creditors are located.

## INTRODUCTION

4.      At 11:40 p.m. on February 20, 2023 (the "Petition Date"), the Debtor filed a barebones voluntary petition for relief under chapter 11 of the Title 11 of the United States Code (the "Bankruptcy Code").

5.      At this time, the Debtor remains in control of its Property as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6.      No official committee of unsecured creditors, trustee, or examiner, has been appointed in the Debtor's case.

## BACKGROUND

### A. The Debtor, its Capital Structure, and its Failure to Maintain the Property

7.      The Debtor is the owner of the Property which consists of two apartment buildings with a combined total of 394 residential apartment units located at 521, 525 and 529 Sawyer Boulevard, Columbus, Ohio, Parcel No. 101-288512.  The Debtor acquired the Property and has been the record owner since in or around October 20, 2021.  The Debtor managed the Property through Integra Affordable Management, LLC ("Integra").

8.      The Debtor has not made any basic disclosures regarding its assets and liabilities in this bankruptcy case.  Accordingly, little is definitively known about its liabilities except for its obligations to the Lender, which approximate $12,750,000.00, and to various parties including the City and tenants in the collective amount of $4,380,000.00 as set forth in the 2/16/23 Decision of the Environmental Court.

9.      The Lender's predecessor in interest, OREC Structured Finance Co., LLC ("OREC") extended a loan to the Debtor in the original principal amount of $15,886,000 so that the Debtor could purchase the Property.  Under the agreement between the Debtor and OREC, $3.1 million of the principal was reserved for the purpose of repairing and upgrading the Property.  However, the Debtor never utilized those funds to perform necessary repair and upgrades and instead permitted the Property to fall into a state of disrepair.

10.     The dilapidated condition of the Property prompted the City to commence a public nuisance action in the Environmental Court on January 29, 2022 under Case No. 2022 EVH 060061, and assigned to Judge Stephanie Mingo (the "Environmental Case").  In its complaint commencing the Environmental Case (the "Environmental Complaint," a copy of which is annexed hereto as Exhibit B), the City alleged, among other things, that:

- the common areas and apartments at the Property were infested with roaches (¶20);

- garbage, solid waste and other miscellaneous trash and debris were scattered throughout the Property (¶27);

- multiple tenants called the City to complaint about the cleanliness issues in the buildings (¶28);

- one stairwell at the Property was smattered with feces (¶30(a)); and

- water leaks and failures of the heating system were common (¶¶51, *et al*.).

11.     On October 21, 2022, the Lender filed an action for foreclosure and other relief against the Debtor and Boruch Drillman ("Drillman"), a personal guarantor and apparent principal of the Debtor, in the Court of Common Pleas, Franklin County, Ohio, under Case No. 22-cv-7387 (the "Foreclosure Action").  According to the Lender, the Debtor has been routinely delinquent in meeting its periodic obligations under the loan documents and the unpaid balance due it totals at least $12,750,000.00.

**B. Routine Contempt Motions, Agreed Orders, and Violation of Those Orders by the Debtor**

12.     The Debtor was in a near constant state of contempt during the short pendency of the Environmental Case.  After entry of a preliminary agreed order and two motions by the City for contempt, the City and Debtor entered into a Final Agreed Judgment Entry which was entered by the Environmental Court on May 24, 2022.  That judgment required, among other things, the Debtor to maintain proper security and personnel for emergency services, and to be in compliance with all applicable building, zoning, and fire codes.

13.     The City filed additional motions for contempt of the May 24, 2022 judgment, ultimately resulting in the entrance of an Agreed Judgment on November 8, 2022, pursuant to which the Debtor had to enter into a contract to sell the Property with an unrelated party by November 23, 2022, and close on that sale by January 17, 2023.

14.     Just ten days later, on November 18, 2022, the Environmental Court entered a
Judgment Entry finding that the Debtor was already in violation of numerous provisions of the
November 8, 2022 Agreed Judgment.

**C. The Christmas Day 2022 Disaster and January 4, 2023 Agreed Order**

15.     On December 23, 2022, the City issued two emergency orders to the Debtor
requiring the immediate repair of the following conditions:

- Standing water in the unit and surrounding area that is the responsibility of the
  owner/management to clean, sanitize and figure out where the water/leak is coming
  from (Order 22441-01179); and

- Standing water present throughout unit, and heating facilities are not functioning
  properly and unable to maintain required 70 degrees within unit (Order 2241-01164).

Copies of those December 23, 2022 emergency orders are annexed as Exhibit C.

16.     Following the issuance of those emergency orders, the Property suffered
catastrophic waterline ruptures caused by the freezing conditions on December 24 and 25, 2022,
causing the Property to flood and to lose heat, water, fire suppression, and elevators.

17.     Columbus Fire Department and Code Enforcement determined that the Property
was unsafe for habitation and directed the immediate mass evacuation and emergency relocation
of the tenants on Christmas Day 2022.  That day, the City issued an emergency order to the Debtor
citing the following emergencies at each of the three buildings comprising the Property leading to
the mass evacuation:

- The buildings and all dwelling units lacked properly connected water utility;

- The dwelling units within the Property lacked functioning bathrooms because of lack
  of water utility;

- One or more of the buildings and dwelling units therein lacked sufficient heat;

- Elevators were not functional;

- The buildings lacked properly functioning fire suppression systems; and

- The buildings had standing water in various common areas.

A copy of the December 25, 2022 emergency order is annexed as <u>Exhibit D</u>.

18.     Following the events of Christmas Day 2022, the City, the Lender, and the Debtor entered into an Agreed Judgment which was entered by the Environmental Court on January 4, 2023 (the "<u>1/4/23 Judgment</u>").   Pursuant to the 1/4/23 Judgment, the Debtor agreed to the following salient terms[1]:

- Sale of the Property pursuant to the following schedule (¶1):

    o   Entry into a contract of sale with an unrelated party by January 6, 2023 (¶1(a));

    o   Obtain a nonrefundable deposit from the buyer of $500,000 by January 6, 2023 (¶1(b)); and

    o   Close on the sale by January 21, 2023 (¶1(d));

- Entry into payment arrangements for all outstanding utility bills and to maintain utilities through the closing (¶2);

- Complete all repairs and/or the replacements necessary to fully restore heat, hot water and elevator service to the Property by January 29, 2023 (¶3);

- Prohibit reoccupation of the Property until the Debtor had complied with all emergency orders issued by the City (¶4);

---

[1]  This is intended as a summary of the terms of the 1/4/23 Judgment only.  Parties should refer to the document itself for a full statement of its terms.

- Pay $50,000 to the City to reimburse it for all overtime costs incurred by January 10, 2023 (¶5);

- Reimburse the City and tenants for the cost of temporarily housing those tenants from December 25, 2022 to the date of sale (¶6);

- Properly staff the Property with security guards and a fire watch (¶7);

- Permit tenants to terminate their leases without penalty (¶8);

- Refund any January 2023 rent that had been paid by tenants (¶9); and

- Agreement to appoint a Receiver if the Environmental Court determines that Debtor violated the 1/4/23 Order (¶12).

A copy of the 1/4/23 Judgment is annexed hereto as Exhibit E.

19.    On January 23, 2023, the Lender filed a motion for contempt with respect to the 1/4/23 Judgment on account of the Debtor's failure to enter into a contract of sale for the Property or deliver the $500,000.00 nonrefundable deposit by January 6, 2023.[2]

20.    On January 27, 2023, the City filed a motion for contempt with respect to the 1/4/23 Judgment alleging that the Debtor committed numerous violations of the 1/4/23 Judgment including as follows:

- The Debtor failed to obtain the proper work permits in connection with its attempt to remediate water damage by removing portions of the ceilings and walls to access plumbing (violation of ¶4 of 1/4/23 Order), which led to the disturbance of asbestos containing products and the contamination of all of the tenants' personal property, much of which cannot be practically decontaminated.

---

[2]   According to the Lender, on January 11, 2023, five days after the due date, an entity called Mich Holdings LLC transferred $150,000.00 of the required $500,000.00 on the Debtor's behalf, but the remaining $350,000.00 was never received. Lender's Motion for Contempt, p.4.

- The Debtor failed to rebate January 2023 rent to the tenants (violation of ¶9 of the 1/4/23 Order).

- The Debtor failed to make arrangement to pay back utilities (violation of ¶2 of the 1/4/23 Order).

- The Debtor failed to take the required steps to sell the Property by February 10, 2023 (violation of ¶1 of the 1/4/23 Order).

- The Debtor failed to reimburse tenants and the City for the incurred and ongoing costs of temporarily housing the tenants (violation of ¶6 of the 1/4/23 Order).

21.     An evidentiary hearing on the Lender's January 23, 2023 contempt motion and City's January 27, 2023 contempt motion was held before the Environmental Court on February 13 and 14, 2023.  On February 16, 2023, the Environmental Court entered the 2/16/23 Decision finding the Debtor in contempt of numerous provisions of the 1/4/23 Order and, among other things, made the following contempt sanctions:

a)   Termination of the agreed stay of the Foreclosure Action and finding that the Lender is entitled to the automatic appointment of a Receiver of its choice.[3]

b)   The deposit of a contempt fine of $2,500,000 to be posted as a bond with the County Municipal Clerk of Courts on or before March 3, 2023, to be used to compensate the (now former) tenants of the Property including for (i) refunding an January 2023 rent payments that were made, (ii) unrecoverable personal property, (iii) reasonable out-of-pocket expenses incurred as a result of displacement, (iv) attorneys' fees incurred by Legal Aid in assisting tenants, and (v) pain and suffering allowable under Ohio law.

---

[3] The Lender and City have sought the appointment of New Perspective Asset Management, LLC, through its principal Dana Milligan, as receiver in this case, and its retention of Allen Stovall Neuman & Ashton, LLP, as legal counsel, and The Robert Weiler Company, as real estate broker to market and sell the Property.

c) The payment of a contempt fine of <u>$1,130,000</u> certifiable to the City by March 13, 2023 (including an outstanding water bill of $180,000).

d) The payment of a contempt fine of <u>$750,000</u> certifiable to the County by march 13, 2023.

e) The payment of the full balance of any and all utility bills owed from the Property by April 13, 2023.

22.     Significantly, the Environmental Court found that the Christmas Day 2022 disaster and subpar conditions that have plagued the Property were "completely preventable", and that the initial code violations and public nuisance conditions, the catastrophic rupture of the waterlines in December 2022, the traumatic emergency evacuations of the tenants on Christmas Day 2022, and the mishandling of asbestos materials were all "***a direct result of the severe and gross neglect of ownership and management***." 2/16/23 Decision at p.8 (emphasis added).

23.     Four days after entry of the 2/16/23 Decision, and less than six hours after the Lender and City filed a joint motion seeking the appointment of the Receiver in the Foreclosure Action (filed at 5:55 p.m.), the Debtor commenced this bankruptcy case by filing a skeletal bankruptcy petition (filed at 11:40 p.m.).   The Debtor's hasty filing contains significant deficiencies and serious errors, and raises significant questions regarding the legitimacy of the filing.

### D.  The Tenants Continue to Suffer

24.     As Judge Mingo noted, "[t]he seismic efforts to prevent this catastrophic failure and to assist those unfortunate displaced tenants on a cold Christmas night were not done by ownership or management", but by "Columbus City Code Enforcement, various other City departments, and local non-profit organizations." 2/16/23 Decision, p.9. The Debtor and its

management appear completely indifferent to the incredibly difficult position the tenants find themselves in as "a direct result of the severe and gross neglect of ownership and management." *Id.*

25.    Attached hereto as <u>Exhibit F</u> is the affidavit of Hannah Jones, the Deputy Director in the City of Columbus' Department of Development (the "<u>Jones Affidavit</u>").  Following the evacuation of tenants on Christmas Day 2022, Ms. Jones coordinated with the County, the Community Shelter Board and the Red Cross to establish an emergency housing location at a City of Columbus recreation center where residents were transported by bus on Christmas Day.  *Id.* at ¶7.

26.    While some tenants were able to find emergency housing with family and friends, approximately 46 tenants lived in the recreation center for five days while Ms. Jones coordinated contracts for temporary housing at two local motels.  *Id.* at ¶8.

27.    Approximately 114 tenants required temporary housing at the motels.  *Id.* at ¶10. Ms. Jones also coordinated contracts to provide food, transportation, relocation assistance, and rental subsidies to the tenants.  *Id.* at ¶11.

28.    As of February 24, 2023, the actual costs incurred to care for the Debtor's tenants were <u>$391,255</u>.  *Id.* at ¶12.

29.    As of February 23, 2023, approximately 82 tenants had found permanent housing, but approximately 103 remain in temporary housing at the motels.  *Id.* at ¶13.

30.    The continuing cost to the City and County for caring for the residents accrues in the amount of approximately <u>$220,000 per month</u>.  *Id.* at ¶14.

**E.  The Debtor's Legal Failings at the Property are Long Standing, the Debtor has Done Nothing to Rehabilitate the Property, and the Problems Continue to get Worse**

31.    Attached hereto as <u>Exhibit G</u> is the affidavit of Aric Schmitter, a Code Enforcement Supervisors for the City of Columbus (the "<u>Schmitter Affidavit</u>").  Mr. Schmitter has conducted multiple inspections of the Property.  *Id.* at ¶2.

32.    Between the Debtor becoming the record owner of the Property on October 20, 2021, and December 25, 2022, Columbus Code Enforcement received approximately 65 complaints about the Property, primarily from residents, leading to the issuance of approximately 135 notices of violation to the Debtor.  *Id.* at ¶¶5-6.

33.    Violations issued to the Debtor have included: (i) infestations of mice, cockroaches, and bedbugs; (ii) inoperable elevators; (iii) lack of hot water service that last approximately three months in one tower; (iv) clogged trash chutes; (v) inoperable air conditioning systems in one of the two towers; and (vi) water leaks inside multiple units.  *Id.* at ¶7.

34.    In the course of trying to remediate damage from the flooding on Christmas Day 2022, contractors hired by the Debtor disturbed significant amounts of asbestos-containing materials, which contaminated all tenant personal property.  *Id.* at ¶10.

35.    Mr. Schmitter inspected the Property after the Petition Date on February 22 and 23, 2023, and observed that: (i) the only person present at the Property was a security guard sitting in a vehicle in the parking lot; (ii) multiple exterior doors to the Property were unlocked, and at least one was standing wide open; (iii) multiple exterior windows were open, broken, or removed, leaving the interior of the Property exposed to the elements; (iv) there were multiple active water leaks throughout the interior; and (v) there was mold growth in several places in the interior of the Property.  *Id.* at ¶12.  Photographs taken by Mr. Schmitter during his February 22 and 23, 2023 inspections are annexed as "Exhibit A" to the Schmitter Affidavit.

**RELIEF REQUESTED**

36.     As set forth below, the City submits that the Debtor's case was filed in bad faith and should be dismissed immediately.  There has already been adequate findings by a court of competent jurisdiction following an evidentiary hearing that "[i]t is in the best interests of all of those involved that [the "Debtor"] no longer have control of this [P]roperty and a Receiver is appointed over the Property".  2/16/23 Decision, at p.8.

37.     Alternatively, the City and Lender must be permitted to immediately appoint a Receiver and take control of the Property.  The Debtor is doing nothing to deal with the ongoing emergency with the tenants who are quite literally homeless, to perform necessary repairs of the Property, or to remediate the asbestos and mold that are contaminating the Property.  The Debtor is not equipped to deal with these problems and further shows absolutely no interest in dealing with them.  While the Debtor has apparently fled Columbus, Ohio, the City and the Debtor's residents remain.  It is unfortunate that the Debtor refuses to take accountability and has stuck the City, former tenants, and the Lender with this mess.  The Debtor should not be permitted to further frustrate these efforts through this ill-fated and completely unorganized bankruptcy case.

38.     If the Court elects to permit the Debtor's case to continue following appointment of the Receiver, the City further submits that the Debtor should not remain in possession of its other property and that a trustee should be appointed either in this Chapter 11 case or by conversion to Chapter 7 to investigate the conduct of management, affiliates, and insiders.  An independent trustee can then investigate the Debtor's conduct and determine whether claims exist against insiders in connection with their mismanagement of the Debtor.

**A.  The Debtor's Case Should be Dismissed Pursuant to 11 U.S.C. 1112(b)**

39.     Section 1112(b) of the Bankruptcy Code requires courts to convert or dismiss a Chapter 11 case, whichever is in the best interests of creditors and the estate, "for cause", unless

the court determines that appointment of a trustee or examiner is in the best interests of creditors and the estate. See 11 U.S.C. § 1112(b)(1). Bankruptcy Courts "have wide latitude in determining whether cause exists to convert or dismiss" a Chapter 11 case. *In re NuGelt, Inc.*, 142 B.R. 661, 665 (Bankr. D. Del. 1992).

40.     The Third Circuit and other courts have overwhelmingly held that "a Chapter 11 petition is subject to dismissal for 'cause' under 11 U.S.C. § 1112(b) unless it is filed in good faith." *In re SGL Carbon Corp.*, 200 F.3d 154, 162 (3d Cir. 1999); *see also Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 828 (9th Cir. 1994); *C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC Ave. P'ship)*, 113 F.3d 1304, 1311 (2d Cir. 1997); *Carolin Corp. v. Miller*, 886 F.2d 693, 698 (4th Cir. 1989).  Once a party in interest has made allegations that a filing was not made in good faith, the burden shifts onto the debtor to establish that good faith exists. *NMSBPCSLDHB, L.P. v. Integrated Telecom Express, Inc. (In re Integrated Telecom Express, Inc.)*, 384 F.3d 108, 118 (3d Cir. 2004); *In re Cloudeeva, Inc.*, No. 14-24874, 2014 WL 6461514, at *4 (Bankr. D.N.J. Nov. 18, 2014).

41.     Determining whether a petition for Chapter 11 was filed in good faith is a fact-specific undertaking and requires an examination of the totality of the facts and circumstances surrounding a debtor's filing. *In re SGL Carbon*, 200 F.3d at 162. The focus of the inquiry is whether the petitioner sought "to achieve objectives outside the legitimate scope of the bankruptcy laws" when filing for protection under Chapter 11. *Id*. at 165 (*citing In re Marsch*, 36 F.3d at 828). The Third Circuit has focused on two primary questions, namely, (i) whether the petition was filed to obtain a tactical litigation advantage; and (ii) whether the petition serves a valid bankruptcy purpose. *See 15375 Mem'l Corp. v. Bepco, L.P.*, 589 F.3d 605, 618 (3d Cir. 2009) (citing *SGL Carbon Corp*., 200 F.3d at 165). Other factors courts consider include improper pre-petition

16

conduct and whether the debtor was formed immediately prepetition. *See Primestone Inv. Partners L.P. v. Vornado PS, L.L.C. (In re Primestone Inv. Partners L.P.)*, 272 B.R. 554, 557-58 (D. Del. 2002) (*citing In re SGL Carbon*, 200 F.3d at 165; *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394-95 (11th Cir. 1988); *In re SB Props.*, 185 B.R. 198, 205 (E.D. Pa. 1995)). "[N]o single factor is determinative of a lack of good faith in filing a petition." *In re Tiffany Square Assocs., Ltd.*, 104 B.R. 438, 441 (Bankr. M.D. Fla. 1989).

42.     Under *C-TC 9th Ave.*, these factors indicate bad faith: (i) the debtor has only one asset; (ii) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors; (iii) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt; (iv) the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action; (v) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights; (vi) the debtor has little or no cash flow; (vii) the debtor cannot meet current expenses including the payment of personal property and real estate taxes; and (viii) the debtor has no employees. 113 F.3d at 1311.

43.     In addition to the *C-TC 9th Ave.* factors, courts have found "further cause" for bad faith dismissal where (i) the debtor filed the case to obtain a tactical advantage in a two party dispute, and (ii) there was no showing of financial pressure on the debtor other than from the counter-party in a two party dispute. *In re Syndicom Corp.*, 268 B.R. 26, 51 (Bankr. S.D.N.Y. 2001). Filing a Chapter 11 petition merely to obtain tactical litigation advantages is not within "the legitimate scope of the bankruptcy laws." *Marsch*, 36 F.3d at 828. As this Court has previously explained, "[g]enerally, where . . . the filing for relief under the Bankruptcy Code is intended to frustrate the legitimate efforts of creditors to enforce their rights against the debtor,

dismissal for 'cause' is warranted." *In re Ravick Corp.*, 106 B.R. 834, 844 (Bankr. D.N.J. 1989) (*citing In re Brandywine Assocs., Ltd.*, 85 B.R. 626 (Bankr. M.D.Fla. 1988)). Courts typically dismiss Chapter 11 petitions where such abuse of the bankruptcy system is evident. *See Argus Grp. 1700, Inc. v. Steinman (In re Argus Grp. 1700, Inc.)*, 206 B.R. 757, 765-66 (E.D. Pa. 1997); *Furness v. Lilienfield*, 35 B.R. 1006, 1013 (D. Md. 1983) ("The Bankruptcy provisions are intended to benefit those in genuine financial distress. They are not intended to be used as a mechanism to orchestrate pending litigation.").

44.    Bad faith also can be shown, and dismissal warranted, when it is clear on the filing date that "there was no reasonable likelihood that the debtor intended to reorganize and no reasonable probability that it would eventually emerge from bankruptcy proceedings." *C-TC 9th Ave.*, 113 F.3d at 1309. For example, in *In re Wally Findlay Galleries (New York), Inc.*, 36 B.R. 849, 851 (Bankr. S.D.N.Y. 1984), the bankruptcy court dismissed a Chapter 11 case as a bad faith filing after finding that the "debtor is unable to propose a meaningful plan or reorganization until" its underlying two party litigation is resolved.

45.    The Debtor's case was filed in bad faith and not for any legitimate bankruptcy purpose and should be dismissed with prejudice.

46.    First, the Debtor filed a barebones petition and provided almost no information to this Court or creditors. Even with the limited filings, there are numerous problems, including the failure to disclose the significant issues that require immediate attention. Question 12 on the voluntary petition asks clearly "Does the debtor own or have possession of any real property or personal property that needs immediate attention?" The Debtor simply checked "No." [Docket No. 1, Q.12]. That same question also asks if the property "poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety", and the Debtor failed to disclose that

the Property contained active asbestos and mold contamination.  The questions also asks if "[i]t needs to be physically secured or protected from the weather", and the Debtor failed to disclose that the Property is not secure, that there are active water leaks, and that windows to multiple apartment units are broken and the units and their contents are exposed to the weather."

47.      Second, the Debtor fails to make any disclosure regarding actual ownership and management of the Debtor.  The voluntary petition and other documents are executed by David Goldwasser, a member of GC Realty Advisors LLC, which apparently manages Paxe Latitude GP LLC, a non-debtor general partner of the Debtor, Paxe Latitude LP.  See Written Consent at Docket No. 2.  There is no signature on any of the documents except for Mr. Goldwasser's other than counsel.  This presents a serious problem.  Mr. Goldwasser and his company, GC Realty Advisors LLC, are professionals presumably employed by the Debtor's non-debtor general partner to attempt some type of restructuring.  As stated on GC Realty Advisors' LinkedIn page, it is a Boca Raton, Florida based company "[s]pecializing in all sorts of advisory with regards to commercial real estate mainly in negotiating restructuring or note purchases for clients which are upside down and under water on their property and unsure what to do."[4]  While chief restructuring officers and other professional agents are often employed to execute bankruptcy petitions and lead restructuring efforts, they cannot displace management as it appears Mr. Goldwasser has done by signing the corporate resolutions [Written Consent at Docket No. 2].  This is akin to a debtor usurping the United States Trustee's exclusive function by trying to select its own trustee in Mr. Goldwasser in violation of the long-standing "Jay Alix Protocol".[5]  Regardless, there needs to be significant

---

[4] See https://www.linkedin.com/company/gc-realty-advisors/about/.  While the City cannot attribute a marketing description of the Debtor's chosen advisor to the Debtor, the City does take note that the Debtor's chosen professional specifically markets to "*clients which are upside down and under water on their property and unsure what to do.*" (emphasis added).  If that aptly describes the Debtor, it would be good cause alone to dismiss the bankruptcy case.

[5] See *e.g.,* Clifford J. White III, William K. Harrington, and Nan Roberts Eitel, *The Future of the USTP's CRO "Protocol"*, ABI Journal, Sept. 8, 2018, available at https://www.justice.gov/ust/file/abi_201809.pdf/download.

additional disclosure regarding precisely who is making decisions, and the terms and timing of Mr. Goldwasser's indirect retention and appointment.

48.      Third, the Debtor has not filed even the most basic disclosures prompting the Court to enter on February 21, 2023 an *Order to Show Cause Why Case Should Not be Dismissed for re: Failure to File Missing Documents* [Docket No. 4], and then a subsequent *Remark: STILL MISSING: Declaration Under Penalty For Non Individual Debtors, 20 Largest Unsecured Creditors, List of All Creditors, Statement of Financial Affairs. . , Summary of Assets and Liabilities. . , and Schedules A/B, D, E/F, G & H"* on February 22, 2023.  There is no indication that the Debtor has any ability or intention to prosecute a serious bankruptcy case.

49.      Fourth, the Debtor's case is a single asset real estate case, and it appears that given the Property's condition and lack of tenants, the Debtor does not appear to have any equity in the Property.  While the Debtor has numerous unsecured creditors in its tenants, those obligations have been consolidated and addressed in the 2/16/23 Decision of the Environmental Court wherein it created a mechanism for dealing with those claims.  Both the Lender and the City, which is dealing with the tenant's claims through its offices, are pursuing their interests in fair and open proceedings in the Foreclosure Action and Environmental Case in Ohio where the Debtor is adequately and fairly represented.  No legitimate purpose is served by the administration of a bankruptcy estate in a forum that is 500 miles away from the Property, tenants, and City offices.

50.      Fifth, the timing of the Debtor's filing evidences a clear intent to delay or frustrate the legitimate efforts of the City, the County, the Lender, and tenants to enforce their rights.  The timing of the filing makes clear that it was done simply to gain a tactical advantage and try to get away from the Environmental Court following entry of the 2/16/23 Decision and rapid deadlines set forth therein, and the Lender's and City's joint motion in the Foreclosure Action seeking the

appointment of the Receiver which was filed less than six hours before the Debtor filed its skeletal bankruptcy petition.

51.     Sixth, the Debtor cannot conceivably have any means to reorganize.  The Property is dilapidated and damaged, contaminated with asbestos and mold, with active leaks, and requires millions of dollars in repairs.  The Debtor has no tenants and no cash flow.  Worse, the Debtor has ongoing obligations accruing post-petition at the rate of $220,000.00 per month to pay for the housing of its tenants until they can find alternatives.  The Debtor did not appear to have the funds to keep the Property functioning legally before it lost its tenants and the Property was severely damaged and condemned.  Nor has the Debtor presented any means by which it will be able to do so now.  Given these circumstances and that the Debtor's case was filed with no funding or plan and as a last-minute, kneejerk reaction to the 2/16/23 Decision and joint motion to appoint the Receiver, it is clear that the Debtor has no means by which to reorganize.

52.     For all of these reasons, the City respectfully submits that the Debtor's case should be dismissed with prejudice so that the City and Lender can continue to pursue their rights (and the Debtor can defend itself as appropriate) in the Environmental Case and Foreclosure Action.

**B. Alternatively, the Court Should Determine that the Stay Does Not Apply, or Otherwise Grant Relief from the Stay**

53.     In the event that this Court decides not to dismiss the Debtor's case immediately, the City respectfully requests a determination that the following proposed acts, among others, are within the police powers exception to the automatic stay, or that the Court alternatively grants the City relief from the automatic stay:

- Continuation of the prosecution of the Environmental Case and enforcement of the City's environmental, fire, and other codes designed to protect the health and safety of the citizens of Columbus;

- Appointment of the Receiver in conjunction with the Lender in the Foreclosure Action, to take control of the Property, perform necessary repairs, and market the Property for sale;

- Funding the Receiver's necessary activities through an extension of funds of up to $750,000 by the County which will take a priming lien against the Property on account of the funding on consent of the Lender; and

- Pursuing any and all related claims against non-debtors, including the collection of all contempt fines imposed by the Environmental Court against non-debtors jointly and severally.

### 1. The City's Proposed Actions Constitute the Enforcement of its Police and Regulatory Powers and are not Subject to the Stay

54.     Section 362(b)(4) of the Bankruptcy Code excepts from the automatic stay the enforcement of police or regulatory powers by governmental units, providing that filing a bankruptcy petition does not operate as a stay:

> . . . . to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit's or organization's regulatory power.

11 U.S.C. § 362(b)(4).

55.     "[The police powers] exception discourages debtors from submitting bankruptcy petitions either primarily or solely for the purpose of evading impending governmental efforts to invoke the governmental police powers to enjoin or deter ongoing debtor conduct which would seriously threaten the public safety and welfare (*e.g.*, environmental and/or consumer protection regulations)." *In re McMullen*, 386 F.3d 320, 324–25 (1st Cir. 2004) (*citing In re First Alliance Mortg. Co.,* 263 B.R. 99, 107 (B.A.P. 9th Cir. 2001) (noting that fundamental policy of § 362(b)(4) is to "prevent the bankruptcy court from becoming a haven for wrongdoers") (internal quotation

marks and citation omitted)); *see also United States v. Nicolet, Inc.*, 857 F.2d 202, 207 (3d Cir. 1988) ("To combat the risk that the bankruptcy court would become a sanctuary for environmental wrongdoers, among others, Congress enacted the police and regulatory power exception to the automatic stay.").

56.     Here, the City and County are attempting to enforce environmental and safety regulation and enforce the cleanup of asbestos and mold contamination caused by the Debtor. Moreover, the City's proposed actions in appointing and funding a Receiver are intended to promote the public policy of protecting the Debtor's vulnerable residents, many of whom have taken up temporary residences in motels funded by the City and County, have had all their personal property contaminated and destroyed by the Debtor, and have generally had their lives turned upside down. Any and all relief sought by the City in promotion of environmental and public policy concerns falls squarely within the police powers exception to the automatic stay.

### 2. *Relief From the Stay Should be Granted to the Extent any Proposed Actions do not Fall Within the Police Powers Exception*

57.     The City maintains that most of the actions it proposes to take including the appointment of the Receiver along with the Lender, taking control of the Property to remediate environmental contaminates, and continuing to provide social services to the Debtor's displaced tenants, fall squarely within the police powers exception of the automatic stay. However, certain portions of the relief that it proposes to take may not, including the enforcement of contempt sanctions meant to compensate the City and County, or the County's funding of the Receiver by way of a priming lien against the Property upon agreement with the Lender. The City requests that it be granted relief from the automatic stay to implement any form of relief that this Court does not find to fall squarely under the police powers exception.

58.    Section 362(d)(1) of the Bankruptcy Code provides, in relevant part:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest . . . .

11 U.S.C. § 362(d)(1).

59.    Courts have held that a Chapter 11 petition filed in bad faith is "cause" to grant relief from the automatic stay under § 362(d)(1). *See In re Trident Associates Ltd. Partnership*, 52 F.3d 127, 131 (6th Cir. 1995), cert. denied, 516 U.S. 869, 116 S.Ct. 188, 133 L.Ed.2d 125 (1995) (upholding bankruptcy court's decision to lift automatic stay and dismiss petition because petitioner filed in bad faith to isolate insolvent property and its creditors on the eve of foreclosure); *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394 (11th Cir. 1988).  Courts apply the same standard of bad faith for lifting the automatic stay as for dismissal under § 1112(b)(2). *Id.*; *In re 234-6 W. 22nd St. Corp.*, 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997) (noting that in a motion to dismiss or to lift stay, "the standards for bad faith as evidence of cause are not substantively different from each other").

60.    For the very same reasons that this case should be dismissed, the City should be granted relief from the automatic stay to the extent the Court decides not to dismiss the Debtor's case immediately, and determines that certain proposed acts by the City may not fit within the police powers exception to the automatic stay.

**C.  If the Debtor's Case is not Dismissed, a Trustee Should be Appointed Under 11 U.S.C. § 1104, or the Case Should be Converted**

61.    Section 1104(a) of the Bankruptcy Code provides that the Court shall order the appointment of a trustee, at any time after the commencement of the case but prior to the

confirmation of a plan, on request of a party or the United States Trustee, and after notice and a

hearing:

> (1) for cause, including **fraud, dishonest, incompetence, or gross mismanagement** of the affairs of the debtor b**y current management, either before or after the commencement of the case**, or similar cause, but not including the number of holders of securities if the debtor or the amount of assets or liabilities of the debtor; or
>
> (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

11 U.S.C. § 1104(a)(1)-(2) (emphasis in bold added).

62.     Subsection (a)(1) addresses management's pre- and post-petition misdeeds or

mismanagement, while subsection (a)(2) provides the court with "particularly wide discretion" to

appoint a trustee even absent wrongdoing or mismanagement. *In re Bellevue Place Assocs.*, 171

B.R. 615, 623 (Bankr. N.D. Ill. 1994). Where the court finds either that cause exists or that

appointment is in the interest of the parties, an order for the appointment of a trustee is mandatory.

*In re W.R. Grace & Co.*, 285 B.R. 148, 158 (Bankr. D. Del. 2002).

63.     A debtor in possession and its officers and managing employees have a fiduciary

duty to creditors and shareholders, and an "obligation to treat all parties, not merely the

shareholders, fairly." *In re The AdBrite Corporation*, 290 B.R. 209, 217 (Bankr. S.D.N.Y. 2003)

(citing *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 355-56, 105 S.Ct. 1986,

85 L.Ed. 2d 372 (1985)); *In re Hampton Hotel Investors, L.P.*, 270 B.R. 346, 357-358 (Bankr.

S.D.N.Y. 2001); *see also In re Northwest Airlines Corporation*, 483 F.3d 160, 181 (2d Cir. 2007)

(observing that a debtor in possession has a fiduciary duty to creditors and the estate). The

presumption that a debtor should remain in possession of its estate and in control of its affairs

holds only if management "can be depended upon to carry out the fiduciary responsibilities of a

trustee." *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. at 355; *see also*, *In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 169 (Bankr. S.D.N.Y. 1990) ("a debtor-in-possession must act as a 'fiduciary of his creditors' to 'protect and to conserve property in his possession for the benefit of creditors,' and to refrain [ ] from acting in a manner which could damage the estate . . ." (citing *In re Sharon Steel Corp.* 86 B.R. 455, 457 (Bankr. W.D. Pa. 1988), *aff'd*, 871 F.2d 1217 (3d Cir. 1989)).

64.     Among the fiduciary duties of a debtor in possession is the primary goal of the bankruptcy process: "to get the creditors paid." *In re Ionosphere Clubs*, 113 B.R. at 169 (quoting *In re Pied Piper Casuals, Inc.*, 40 B.R. 723, 727 (Bankr. S.D.N.Y. 1984)). Moreover, a debtor in possession's fiduciary duties also "include a duty of care to protect the assets, a duty of loyalty and a duty of impartiality." *In re Bowman*, 181 B.R. 836, 843 (Bankr. D. Md. 1995). To fulfill its duty of loyalty, a debtor in possession must "avoid self-dealing, conflicts of interest and the appearance of impropriety." *Id.*

65.     When a debtor in possession is incapable of performing its fiduciary duties, or when creditors' confidence in management evaporates, a chapter 11 trustee must be appointed. *See In re McCorhill Publ'g, Inc.*, 73 B.R. 1013, 1017 (Bankr. S.D.N.Y. 1987); *In re Marvel Entm't Grp.*, 140 F.3d 463, 473 (3d Cir. 1998). "[I]n the appropriate case, the appointment of a trustee is a power which is critical for the Court to exercise in order to preserve the integrity of the bankruptcy process and to insure that the interests of creditors are served." *In re Suncruz Casinos, LLC*, 298 B.R 821, 828 (Bankr. S.D. Fla. 2003); *see also In re V. Savino Oil & Heating Co.*, 99 B.R. 518, 525 (Bankr. E.D.N.Y. 1989) ("Section 1104(a) represents a potentially important protection that courts should not lightly disregard or encumber with overly protective attitudes towards debtors-in-possession").

66.     Here, there is ample reasons to appoint a chapter 11 trustee pursuant to sections 1104(a)(1) and (2) of the Bankruptcy Code.

67.     First, the Debtor's current management has already been found by the Environmental Court to be conducting precisely the kind of incompetence and gross mismanagement mandating the appointment of a trustee under section 1104(a)(1).  Specifically, the Environmental Court found that the Christmas Day 2022 disaster and subpar conditions that have plagued the Property were "completely preventable", and that the initial code violations and public nuisance conditions, the catastrophic rupture of the waterlines in December 2022, the traumatic emergency evacuations of the tenants on Christmas Day 2022, and the mishandling of asbestos materials were all "***a direct result of the severe and gross neglect of ownership and management***."  2/16/23 Decision at p.8 (emphasis added).

68.     The Environmental Court also found that "any moisture leading to the growth of mold or disturbance of asbestos materials that potentially released fibers into the environment are the direct result of Defendants' own ***negligence***." *Id.* at p.7 (emphasis added).  These findings alone warrant, if not mandate, the appointment of a trustee.

69.     Moreover, the attempts by management to distance themselves from the Debtor by appointing Mr. Goldwasser are not persuasive.  Upon information and belief, Mr. Goldwasser was not and is not an owner of the Debtor.  He is merely an agent appointed by and serving at the pleasure of the manager or managers, presumably Drillman, who the Environmental Court described as negligent and grossly and severely neglectful.  Accordingly, the Debtor cannot mask bad management through the appointment of a professional who serves as the direction of those bad managers and who can be fired by those bad mangers.

70.     Second, it does not appear that the Debtor has any equity in the Property, or that any other purpose would be served by the Debtor remaining in bankruptcy or remaining as a debtor in possession.  The only valuable asset that may exist is potential causes of action against the Debtor's insiders on account of their conduct or receipt of benefits from the Debtor.  Prepetition management routinely agreed to and then failed to live up to its obligations in the Environmental Case.  The Debtor's prepetition management is clearly conflicted in investigating and if appropriate, pursuing such causes of action against themselves to the extent they exist. Accordingly, if the case is not dismissed, an independent fiduciary is required to perform the task of investigating the conduct of management.

71.     Third, the Debtor is so disheveled that it is apparently unable to make even the most basic disclosures timely in this bankruptcy case.  Permitting this Debtor to remain in possession of its Property and other property is simply irresponsible.

72.     Finally, appointment of a trustee is independently warranted under section 1104(a)(2) of the Bankruptcy Code because it is in the best interests of creditors.  No creditors including the Lender, the City, the County or the tenants, all of which have been wronged by the Debtor and its current management, would be better served if the Debtor remained in possession of its property.  As the Environmental Court stated in appointing the Receiver, "[i]t is in the best interest of all of those involved that [the Debtor] no longer have control of this property and a Receiver is appointed over the Property so this case can move forward in a responsible and accountable manner."  2/16/23 Decision, at p.8.

73.     Alternatively, to the extent that this Court finds cause to dismiss the case under section 1112(b) of the Bankruptcy Code but declines to dismiss the case, the City respectfully submits that the case should be converted to one under Chapter 7.

## NOTICE

74.     In light of the exigencies, the City intends to proceed by way of a hearing on shortened notice.  In connection with its separate application, the City will propose to serve the Debtor, the United States Trustee, and the Lender with notice of this Motion by Federal Express overnight delivery.  The City respectfully submits that this be considered good and sufficient notice and that no other notice need be given.

## NO PRIOR RELIEF

75.     Except as otherwise stated herein specifically with respect to the Environmental Case and Foreclosure Action, no prior application for the relief sought herein has been made to this or any other court.

**WHEREFORE**, the City respectfully requests that the Motion be granted and that the Court enter an order or order(s):

(I)     immediately dismissing the Debtor's Chapter 11 case with prejudice pursuant to 11 U.S.C. § 1112(b);

or, in the event the Court declines to immediately dismiss the Debtor's case:

(II)     (A) finding that the City taking physical control of the Debtor's Property by and through a Receiver is within the City's police and regulatory power not subject to the automatic stay pursuant to 11 U.S.C. § 362(b)(4), or alternatively, granting the City relief form the automatic stay pursuant to 11 U.S.C. § 362(d) in order to install the Receiver, take necessary emergency control over the Property, and fund the Receiver and other costs and expenses necessary to care for the Debtor's displaced tenants by way of a priming first mortgage on consent of the Debtor's Lender; and

(B) appointing an operating trustee pursuant to 11 U.S.C. § 1104(a), or converting

the Debtor's case to Chapter 7 pursuant to 11 U.S.C. § 1112(b); and

that the City be granted such other and further relief as is just.


Dated:   New York, New York
         February 28, 2023

**KLESTADT WINTERS JURELLER**
**SOUTHARD & STEVENS, LLP**


By:    _/s/ Christopher Reilly_
       Fred Stevens (*pro hac vice* pending)
       Christopher J. Reilly
       200 41st Street, 17th Floor
       New York, New York 10036
       Tel: (212) 972-3000
       Fax: (212) 972-2245
       Email: fstevens@klestadt.com
              creilly@klestadt.com

       *Attorneys for the Lawful Representative of*
       *the City of Columbus, Ohio*