UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1**

**A.Y. STRAUSS LLC**
Eric H. Horn, Esq.
Heike M. Vogel, Esq.
Maria A.G. Harper, Esq.
101 Eisenhower Parkway, STE 412
Roseland, New Jersey 07068
Tel:  (973) 287-0966
Fax:  (973) 226-4104

*Counsel to the Debtor and*
*Debtor-in-Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| Paxe Latitude LP, | Case No. 23-11337 (CMG) |
| Debtor. | |

### DISCLOSURE STATEMENT FOR THE DEBTOR'S PLAN OF REORGANIZATION PURSUANT TO <u>CHAPTER 11 OF THE BANKRUPTCY CODE</u>

---

**<u>IMPORTANT DATES</u>**

- Hearing on Confirmation of the Plan: [•][•], 2023 at [•][•] __.m. (ET)

## TABLE OF CONTENTS

Page

I.     EXECUTIVE SUMMARY ..................................................................................................4

II.    IMPORTANT INFORMATION ABOUT THIS DISCLOSURE STATEMENT ...................................4

III.   THE DEBTOR'S STRUCTURE AND BUSINESS OVERVIEW ..........................................8

    A.     Paxe's Organizational Structure .............................................................8

    B.     Property Overview ..................................................................................9

    C.     Paxe's Prepetition Capital Structure ......................................................9

IV.    SUMMARY OF LEGAL PROCEEDINGS .......................................................................10

    A.     Pending Legal Proceedings outside the Bankruptcy Court ..........................10

V.     EVENTS LEADING TO THE CHAPTER 11 FILING ......................................................10

VI.    DAMAGE TO THE PROPERTY AND THE DEBTOR'S INSURANCE CLAIM......................12

VII.   THE COMMENCEMENT OF THE CHAPTER 11 CASE .................................................12

VIII.  DEVELOPMENTS DURING THE CASE .......................................................................12

    A.     Retention of Professionals .......................................................................12

    B.     Motions to Dismiss ................................................................................12

    C.     Utility Issues ..........................................................................................13

    D.     Debtor in Possession Financing ..............................................................13

    E.     Settlement with Tenants ..........................................................................13

    F.     Exclusivity .............................................................................................13

    G.     Claims Bar Date ....................................................................................13

    H.     Avoidance Action Analysis .....................................................................14

IX.    DESCRIPTION OF THE PLAN OF REORGANIZATION.................................................14

    A.     Administrative Claims and Priority Tax Claims ........................................14

    B.     Classification and Treatment of Claims and Interests ...............................16

    C.     Acceptance Requirements .......................................................................17

    D.     Means for Implementation of the Plan .....................................................18

    E.     Treatment of Executory Contracts and Unexpired Leases ........................20

    F.     Provisions Governing Distributions ........................................................21

    G.     Procedures for Resolving Contingent, Unliquidated and Disputed Claims ......22

    H.     Settlement, Release, Injunction and Related Provisions ...........................22

    I.     Conditions Precedent to Confirmation of the Plan and the Effective Date ......23

    J.     Modification, Revocation or Withdrawal of the Plan..................................24

K.      Retention of Jurisdiction ................................................................................................ 24

L.      Miscellaneous Provisions ............................................................................................ 24

X.      PROJECTED FINANCIAL INFORMATION ..................................................................... 24

XI.     RISK FACTORS ............................................................................................................... 25

A.      Risks Relating to Bankruptcy ...................................................................................... 25

B.      Risks Related to Financial Information ........................................................................ 26

XII.    CONFIRMATION OF THE PLAN ..................................................................................... 27

A.      The Confirmation Hearing ........................................................................................... 27

B.      Deadline To Object To Confirmation ........................................................................... 27

C.      Requirements For Confirmation Of The Plan .............................................................. 27

D.      Best Interests of Creditors/Liquidation Analysis ........................................................ 28

E.      Feasibility .................................................................................................................... 29

F.      Acceptance by Impaired Classes ................................................................................ 29

G.      Confirmation Without Acceptance by All Impaired Classes ........................................ 30

H.      No Unfair Discrimination ............................................................................................. 30

I.      Fair and Equitable Test ............................................................................................... 30

        (i)     Secured Claims: ............................................................................................... 30

        (ii)    Unsecured Claims: ........................................................................................... 30

        (iii)   Equity Interests: ............................................................................................... 31

J.      Valuation Of the Debtor ............................................................................................... 31

XIII.   RECOMMENDATION ...................................................................................................... 31

## EXHIBITS

EXHIBIT A       Plan of Reorganization

EXHIBIT B       Liquidation Analysis

EXHIBIT C       Insurance Proceeds

| THE DEBTOR HEREBY ADOPTS AND INCORPORATES EACH EXHIBIT ATTACHED TO THIS DISCLOSURE STATEMENT BY REFERENCE AS THOUGH FULLY SET FORTH HEREIN. |
| --- |

## I.    EXECUTIVE SUMMARY

Paxe Latitude LP ("*Paxe*" or the "*Debtor*"), which owns the real property located at 521, 525 and 529 Sawyer Boulevard, Columbus, Ohio 43203 known as Latitude Five25 (the "*Property*"), submits this Second Amended Disclosure Statement pursuant to section 1125 of the Bankruptcy Code to Holders of Claims in connection with the solicitation of acceptances of the *Debtor's Plan of Reorganization Under Chapter 11 of the Bankruptcy Code*, dated May 22, 2023 (the "*Plan*").  A copy of the Plan is attached hereto as **Exhibit A**.

The Plan provides for the reorganization of the Debtor and, other things, the Plan contemplates the following:

- on or after the Effective Date[1], the Holders of Other Priority Claims will be repaid in full by the Debtor;

- the Lument Claim will be paid in full on or after the Effective Date;

- the Mechanics Lien Claimants will be paid in full on or after the Effective Date;

- the DIP Claim will be paid be paid in full on or after the Effective Date;

- the Holders of Unsecured Claims will be paid in full on or after the Effective Date; and

- the Holders of Equity will retain their interests.

**THE DEBTOR BELIEVES THAT THE PLAN IS FAIR AND EQUITABLE, WILL MAXIMIZE THE VALUE OF THIS ESTATE AND PROVIDES THE BEST RECOVERY TO CREDITORS.  AT THIS TIME, THE DEBTOR DOES NOT BELIEVE THAT THERE IS A VIABLE ALTERNATIVE FOR COMPLETING THIS CHAPTER 11 CASE OTHER THAN THROUGH CONFIRMATION OF THE PLAN.  THE DEBTOR STRONGLY RECOMMENDS THAT YOU VOICE YOUR SUPPORT FOR THE PLAN.**

**THE PROJECTED RECOVERIES SET FORTH HEREIN ARE ESTIMATES ONLY AND THEREFORE ARE SUBJECT TO CHANGE.  FOR A COMPLETE DESCRIPTION OF THE DEBTOR'S CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS, REFERENCE SHOULD BE MADE TO THE ENTIRE PLAN.**

## II.    IMPORTANT INFORMATION ABOUT THIS DISCLOSURE STATEMENT

This Disclosure Statement provides information regarding the chapter 11 plan of reorganization that the Debtor is seeking to have confirmed by the Bankruptcy Court.  The Debtor believes that the Plan is in the best interests of all creditors.  Because this Plan is unimpaired – meaning that all creditors are projected to be paid in full – the creditors are deemed to accept the Plan.  That being said, the Debtor urges The Debtor urges all Holders of Claims and Interests to voice their support for the Plan.

**The summary of the Plan provided above is qualified in its entirety by reference to the Plan.  In the case of any inconsistency between the summary herein and the Plan, the Plan shall govern.**

---

[1]    All terms not otherwise defined herein shall have the meaning given to them in the Plan.

The Confirmation of the Plan and effectiveness of the Plan are subject to certain material conditions precedent described herein. There is no assurance that the Plan will be confirmed, or if confirmed, that the conditions required to be satisfied will be satisfied or waived.

You are encouraged to read this Disclosure Statement in its entirety, including without limitation, the Plan, which is annexed as **Exhibit A** hereto, and the section entitled "Risk Factors."

**The Bankruptcy Court's approval of this Disclosure Statement does not constitute a guarantee of the accuracy or completeness of the information contained herein or an endorsement of the merits of the Plan by the Bankruptcy Court.**

The statements contained in this Disclosure Statement are made only as of the date of this Disclosure Statement, and there is no assurance that the statements contained herein will be correct at any time after such date. Except as otherwise provided in the Plan or in accordance with applicable law, the Debtor is under no duty to update or supplement this Disclosure Statement.

The information contained in this Disclosure Statement is included for purposes of soliciting acceptances to, and confirmation of, the Plan and may not be relied on for any other purpose. The Debtor believes that the summary of certain provisions of the Plan and certain other documents and financial information contained or referenced in this Disclosure Statement is fair and accurate. The summaries of the financial information and the documents annexed to this Disclosure Statement, including, but not limited to, the Plan, or otherwise incorporated herein by reference, are qualified in their entirety by reference to those documents.

No representations concerning the Debtor or the value of the Debtor's property have been authorized by the Debtor other than as set forth in this Disclosure Statement. Any information, representations or inducements made to obtain acceptance of the Plan, which are other than or inconsistent with the information contained in this Disclosure Statement and in the Plan, should not be relied on by any Claim Holder entitled to vote on the Plan.

This Disclosure Statement has not been approved or disapproved by the United States Securities and Exchange Commission (the "**SEC**") or any similar federal, state, local or foreign regulatory agency, nor has the SEC or any other such agency passed upon the accuracy or adequacy of the statements contained in this Disclosure Statement.

The Debtor has sought to ensure the accuracy of the financial information provided in this Disclosure Statement, but the financial information contained in, or incorporated by reference into, this Disclosure Statement has not been and will not be audited or reviewed by the Debtor's independent auditors unless explicitly stated otherwise herein.

The Debtor makes statements in this Disclosure Statement that are considered forward-looking statements under the federal securities laws. The Debtor considers all statements regarding anticipated or future matters, including the following, to be forward-looking statements:

- any future effects as a result of the pendency of the Chapter 11 Case;

- the Debtor's expected future financial position, liquidity, results of operations, profitability and cash flows;

- financing plans;

- competitive position;

- business strategy;

- budgets;

- projected cost reductions;

- results of litigation;

- disruption of operations;

- plans and objectives of management for future operations;

- contractual obligations;

- off-balance sheet arrangements; and

- projected general market conditions.

- projected and estimated liability costs;

Statements concerning these and other matters are not guarantees of the Debtor's future performance. Such statements represent the Debtor's estimates and assumptions only as of the date such statements were made. There are risks, uncertainties and other important factors that could cause the Debtor's actual performance or achievements to be materially different from those they may project and the Debtor undertakes no obligation to update any such statement. These risks, uncertainties and factors include:

- the Debtor's ability to develop, confirm and consummate the Plan;

- the Debtor's ability to reduce its overall financial leverage;

- the potential adverse impact of the Chapter 11 Case on the Debtor's operations, management and staff, and the risks associated with operating the business in the Chapter 11 Case;

- customer response to the Chapter 11 Case;

- inability to have claims discharged/settled during the chapter 11 proceeding;

- general economic, business and market conditions, including the volatility and disruption in the capital, credit and real estate markets;

- interest rate fluctuations;

- exposure to litigation;

- declines in the commercial and residential development markets;

- dependence upon key personnel;

- ability to implement cost reduction initiatives in a timely manner;

- financial conditions of the Debtor's customers;

- adverse tax changes;

- limited access to capital resources;

- changes in laws and regulations;

- natural disasters;

- inability to implement business plan; and

- the effects of governmental regulation on the Debtor's business.

The Debtor is seeking to obtain Bankruptcy Court approval of the Plan. Before soliciting acceptances of the Plan, section 1125 of the Bankruptcy Code requires the Debtor to prepare a Disclosure Statement containing adequate information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment regarding acceptance of the Plan. This Disclosure Statement is being submitted in accordance with such requirements.

Your ability to vote and your distribution under the Plan, if any, depend on what kind of Claim or Interest you hold. A summary of the Classes of Claims and Interests (each, a category of Holders of Claims or Interests as set forth in Section VIII of this Disclosure Statement and Article III of the Plan pursuant to section 1122(a) of the Bankruptcy Code, which we refer to as a "*Class*") and their respective voting statuses is set forth below.

You should refer to this entire Disclosure Statement and the Plan for a complete description of the classification and treatment of Allowed Claims against and Interests in the Debtor.

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1 | Lument Claim | Unimpaired | Not Entitled to Vote |
| 2 | Mechanic Lien Claims | Unimpaired | Not Entitled to Vote |
| 3 | DIP Claim | Unimpaired | Not Entitled to Vote |
| 4 | General Unsecured Claims | Unimpaired | Not Entitled to Vote |
| 5 | Equity Interests | Unimpaired | Not Entitled to Vote |

In the event that the Plan is not confirmed, there is no assurance that the Debtor will be able to reorganize its business. If the Plan is not confirmed in a timely manner, it is unclear whether the transactions contemplated

thereby could be implemented and what Holders of Claims would ultimately receive in respect of their Claims. Moreover, non-Confirmation of the Plan may result in an extended chapter 11 proceeding.  For a more detailed description of the consequences of this or of a liquidation scenario, see "Confirmation Of The Plan - Best Interests of Creditors/Liquidation Analysis" below and the Liquidation Analysis attached as **Exhibit** to this Disclosure Statement.

All parties in interest will receive the notice of the hearing on the Confirmation of the Plan.  Additionally, creditors who are eligible to vote on the Plan will receive appropriate solicitation materials including ballots.

The notices sent to parties in interest will indicate that this Disclosure Statement, the Plan and all of the exhibits thereto are (and, in the future, the Plan Supplement will be) available for viewing by any party at: www.njb.uscourts.gov or by contacting counsel for the Debtor.

The Plan provides does not provide for any third-party releases.  Releases under the plan are limited to customary releases of the Released Parties, as fully set forth in Article IX of the Plan.

## ALL CLASSES ARE UNIMPAIRED AND ARE DEEMED TO ACCEPT THE PLAN

The Bankruptcy Court has scheduled the Confirmation Hearing for **[•][•], 2023 to take place at** [•] Entitled to Vote ___**.m.** (prevailing Eastern Time) before the Honorable Christine M. Gravelle, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of New Jersey, located at Clarkson S. Fisher US Courthouse, 402 East State Street, Trenton, NJ 08608.  The Confirmation Hearing may be adjourned from time to time without further notice except for an announcement of the adjourned date made at the Confirmation Hearing or any adjournment thereof.

Objections to Confirmation of the Plan must be filed and served on the Debtor, and certain other parties, by no later than **[•][•], 2023 at 4:00 p.m.** (prevailing Eastern Time).  Unless objections to Confirmation of the Plan are timely served and filed in compliance with the Disclosure Statement Order, they may not be considered by the Bankruptcy Court.

## III.    THE DEBTOR'S STRUCTURE AND OVERVIEW

### A.    PAXE'S ORGANIZATIONAL STRUCTURE

The following chart generally depicts Paxe's prepetition organizational structure:



### B.    PROPERTY OVERVIEW

The Debtor is the owner of the real property located at 521, 525 and 529 Sawyer Boulevard, Columbus, Ohio 43203 (the "**Property**").  The Property, known as Latitude Five25, is located on approximately seven (7) acres and consists of two (2) 15-story towers containing 392 units and 325,000 square feet (both in the aggregate).  The Property is insured by Great American Insurance Group.

### C.    PAXE'S PREPETITION CAPITAL STRUCTURE

#### *(i)    Secured Debt*

On or about August 16, 2021, the Debtor, as borrower, entered into a certain loan facility (the "**Prepetition Facility**") in an amount of up to $15,886,000 with OREC Structured Finance Co., LLC, as lender (the "**Lender**"), to finance the Debtor's acquisition of the Property.  Upon information and/or belief, the Lender is currently known as OREC Structured Finance, LLC and references to the term Lender herein shall include both.  At closing, $12,750,000 was advanced for the Debtor's acquisition of the Property and approximately $3,100,000 was reserved for the Debtor to draw down on.  As security for the Property, the Debtor executed a Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated as of August 16, 2021.  Additionally, (i) the Debtor and Mr.

*All persons and entities that own a 20% or greater direct or indirect interest in Borrower (or 10% or greater with respect to a foreign person or entity) and/or that directly or indirectly control Borrower are reflected on this chart.

Drillman entered into an Environmental Indemnity Agreement dated as oof August 16, 2021, and (ii) Mr. Drillman executed a Limited Recourse Guaranty dated as of August 16, 2021.

In addition to the secured debt owing under the Prepetition Facility, the Debtor owes an aggregate of approximately $200,000 to five (5) other secured creditors on account of mechanics liens.

### (ii)     Unsecured Debt

As set forth in the Debtor's Schedules, as of the Petition Date, the Debtor owes approximately $4 million (undisputed) to thirteen (13) creditors.

## IV.     SUMMARY OF LEGAL PROCEEDINGS

### A.     PENDING LEGAL PROCEEDINGS OUTSIDE THE BANKRUPTCY COURT

Prior to the Petition Date, the Debtor was a party to the following two litigations:

### (i)     The Environmental Action

On January 9, 2022, the City of Columbus commenced an action against the Debtor and others for preliminary and injunctive relief (the "*Environmental Action*") in the Franklin County Municipal Court, Environmental Division. Following the commencement of the Environmental Action, the Debtor determined that it was best to sell the Property. On December 27, 2022, the City commenced filed a motion for contempt against the Debtor. On January 3, 2023, the parties entered into an agreed to a framework that was memorialized in the Court's January 4, 2023, Agreed Judgment Entry (the "*January Order*"). On January 24, 2023, the Lender filed a motion for contempt in the Environmental Action, alleging among other things that the Debtor defaulted under the terms of the January Order by failing to provide the required purchase agreement to sell the Property. Subsequently, on January 27, 2023, the City filed a similar motion for contempt. On February 13-14, 2023, the court in the Environmental Action held a two-day hearing on the contempt motions. On February 16, 2023, the court in the Environmental Action entered an order finding the Debtor in contempt and fining the Debtor in excess of $4 million. On February 20, 2023, the City and the Lender filed a joint motion to appoint a receiver.

### (ii)     Foreclosure Action

On October 21, 2022, the Lender commenced an action against the Debtor and others in the Court of Common Pleas of Franklin County, Ohio bearing case number 22-cv-7387 (the "*Foreclosure Action*"). On February 20, 2023, the Lender and the City of Columbus filed a joint motion for the immediate appointment of a receiver.

## V.     EVENTS LEADING TO THE CHAPTER 11 FILING

The Debtor's chapter 11 was a direct result of a catastrophic storm that severely damaged the Property and required the tenants to vacate the premises. On December 25, 2022, the temperature dipped into the single digits. Due to the temperature dropping to, and remaining below, the freezing point for several days during that period, water pipes inside the Property froze and ruptured, causing large amounts of water to discharge throughout the Property and to cascade down several levels of the 15-story towers. As a further result, the Property lost all water service (including hot water), heat, elevator service, and fire suppression services. The City thereafter used emergency personnel to evacuate the Property's residents.

Prior to the foregoing events of late December, in November 2022, the parties entered a mutually agreeable plan, as memorialized in prior Agreed Orders in the Environmental Action, in which the Debtor would maintain and then transact, sell, and convey the Property to an unaffiliated, *bona fide* third- party buyer. That sale would result in the full satisfaction of Lender's loan and the termination of Lender's security interest to the Property, while simultaneously bringing in a new owner and manager who would make substantial capital investment in the Property to ameliorate the City's concerns. Unfortunately, the events of late December 2022 necessitated a change

to that plan. While the goal remained the same, the timeline to achieve that goal required adjustment; so too was a plan required to deal with the effects the weather wrought on the Property.

Thus, during the proceedings before the Court in the Environmental Action on January 3, 2023, the parties amended the prior agreement to address the emergent situation presented on the Property. The basic framework of that amended agreement is memorialized in the Court's January 4, 2023, Agreed Judgment Entry (the "**_January Order_**"). Save for some high-level monitoring by the Court, the Agreed Judgment Entry effectively memorialized an end to the litigation aspect of the case, and provided as follows:

The Sale of the Property
- On or before January 6, 2023, Debtor to enter into a Purchase and Sale Agreement ("**_PSA_**") for the sale of the Property.
- On or before January 6, 2023, the proposed buyer must deposit $500,000.00 in a Repair Reserve Account to be held with and administered by Lender.
- Debtor may make up to $150,000.00 in disbursements to pay costs and expenses incurred and/or billed for work at the Property.
- On or before January 31, 2023, Debtor must close the sale of the Property to the new buyer (the "**_Closing_**"), with one extension until February 10, 2023, permitted.

Care of the Property and Tenants, and Restoration of Services
- Debtor must work out payment arrangements with the Utility Providers, American Electric Power, Columbus Department of Public Utilities, Columbia Gas, and Spectrum Telephone, extending the payment deadline for payment in full to the new Closing date from the proceeds of the sale of the Property (subject to any liens with priority), and would maintain utility services through Closing.
- On or before January 29, 2023, Debtor must complete repairs and/or the replacements necessary to fully restore heat, hot water, and elevator service to the Property.
- The Property must remain unoccupied pending compliance with certain emergency orders issued by the Columbus Fire Department.
- On or before January 10, 2023, Debtor must pay the City $50,000.00 as reimbursement for legal expenses.
- Reimburse the City the cost of temporarily housing displaced tenants, not to exceed $340,000.00.
- Debtor must control and restrict access to the Property pending repair and remediation.
- Debtor must permit tenants to terminate their leases and abate January rent.
- The foreclosure proceedings are stayed pending Closing.

While the Debtor envisioned that it would be able to fully comply with the January Order, the development of further facts on the ground relating to the extent of the water damage which was unknown at the time the order was agreed to. Indeed, during the process of inspection and repair of the Property, Debtor's insurance company and its mitigation team discovered that flooding created extensive damage and associated risk for the growth and propagation of mold. In addition, Debtor discovered previously undisturbed asbestos. These issues, amongst others, require remediation that is far more extensive than that which was ever contemplated when agreeing to the January Order, and proper remediation is necessary and critical for both short- and long-term health and safety of the Property and its occupants.

In order to begin the process of returning the Property to a habitable state, Debtor engaged All Dry 24/7, LLC ("**_All Dry_**") to manage the on-site water infiltration and remediation issues at the Property, as well as an experienced insurance adjuster, Guardian Claims USA, to facilitate the creation of a full scope of work and cost analysis for the work required in furtherance of Debtor's insurance claim. Initially, it appeared that, though the damage was extensive, it was a matter of removing all water, drying out the Property, and then remediating all cosmetic (or facia) issues.

However, because the ruptured water pipes caused such a significant amount of water _to_ pour into, and spread throughout, the interior of the Property, including living spaces, the volume of water and the areas of intrusion

lend themselves to the growth and accumulation of mold.  The need to ensure this is not the case, and/or to remedy the growth or accumulation of mold in the Property, necessitated significant demolition, rehabilitation, and reconstruction on the Property.

In addition to the latent mold concern, the mitigation team discovered, as part of its inspections, that there is asbestos in the Property. That asbestos will have to be completely removed – in  full compliance with state and federal law – and the Property tested and cleared by the City before anyone can re-occupy the Property. Neither one of these serious issues – mold or asbestos – were known to the Debtor when it agreed to the January Order.

Given the foregoing, the Debtor suggested amending and altering the January Order to account for the realities of the situation while, at the same time, still facilitating the goal of the parties' original agreement: to transact the Property to new owners, and to provide the tenants with a safe, habitable place to live.

On January 24, 2023, the Lender filed a motion for contempt in the Environmental Action, alleging among other things that the Debtor defaulted under the terms of the January Order by failing to provide the required purchase agreement to sell the Property.  Subsequently, on January 27, 2023, the City filed a similar motion for contempt.

On February 13-14, 2023, the court in the Environmental Action held a two-day hearing on the contempt motions. On February 16, 2023, the court in the Environmental Action entered an order finding the Debtor in contempt and fining the Debtor in excess of $4 million (the "***Environmental Action Judgment***").

On February 20, 2023, the City and the Lender filed a joint motion to appoint a receiver.  Later that evening, the Debtor commenced its Chapter 11 Case.

## VI.    DAMAGE TO THE PROPERTY AND THE DEBTOR'S INSURANCE CLAIM

As a result of the damage caused by the storm discussed above, the Debtor's Property suffered severe damage.  The Debtor's insurance adjuster estimates the damage to be not less than $30,000,000.

It is from the proceeds of the Debtor's insurance claim (the "***Insurance Claim***"), once liquidated, that the Debtor will fund this unimpaired Plan.  The Debtor is working with its insurance carrier – Great American – to ensure that the claim is paid as expeditiously as possible.

## VII.    THE COMMENCEMENT OF THE CHAPTER 11 CASE

On February 20, 2023, the Debtor filed a voluntary petition in the United States Bankruptcy Court for the District of New Jersey seeking relief under the provisions of chapter 11 of the Bankruptcy Code.  The Chapter 11 Case is being administered under the caption *In re Paxe Latitude LP*, Case No. 23-11337 (CMG).  The Debtor continues to operate its business and manage its property as debtor in possession under the jurisdiction of the Bankruptcy Court and in accordance with the applicable provisions of the Bankruptcy Code and orders of the Bankruptcy Court.

## VIII.    SIGNIFICANT EVENTS DURING THE CHAPTER 11 CASE

### A.    RETENTION OF RESTRUCTURING PROFESSIONALS

To assist the Debtor in carrying out its duties as debtor in possession and to represent its interest in the Chapter 11 Case, the Debtor obtained Bankruptcy Court approval to retain A.Y. Strauss LLC as its restructuring attorneys.

### B.    MOTIONS TO DISMISS

On February 28, 2023, the City filed a motion with this Court seeking, among other things, to dismiss the Chapter 11 Case [Docket No. 15] (the "*City Dismissal Motion*").  On March 3, 2023, Lument filed a motion with this Court seeking, among other things, to dismiss the Chapter 11 Case [Docket No. 22] (the "*Lument Dismissal Motion*").  Following several days of evidentiary hearings, this Court denied both the City Dismissal Motion and the Lument Dismissal Motion – but held open Lument's and the City's request for stay relief, and the City's request for appointment of a Chapter 11 trustee or conversion of the Debtor's case to Chapter 7.  The stay relief motions have been carried until late June 2023.

### C.    UTILITY ISSUES

On April 18, 2023, the Court entered a final order prohibiting utility providers from terminating services and providing same with adequate assurance [Docket No. 92].

### D.    DEBTOR-IN-POSSESSION FINANCING

The Debtor is in the process of finalizing a $3 million debtor in possession financing facility with Legalist as the lender, which will be subject to approval of this Court.  The facility is a non-priming facility and thus will be junior to existing secured debt.  It is from this facility that the Debtor intends on funding the tenant settlement and funding the chapter 11 case through confirmation.

### E.    SETTLEMENT WITH THE TENANTS

The Debtor has reached in principle, a settlement with the tenants and the City of Columbus which the Debtor will be seeking approval of in short order.  The salient terms of the settlement are as follows:

- $1.525 million settlement fund for tenants (implement a procedure for tenants to opt out);

- Retention of New Perspective Asset Management ("*NPAM*") to supervise the return of property to the Tenants, to vet and supervise contractors, and serve as a liaison between the Debtor and City, and the Debtor will set aside $100,000 in funds to be earmarked for payment of NPAM's fees - which the Debtor expects to put up for hearing in short order;

- The reduction of the Environmental Action Judgement by $2,500,000; and

- Release of Debtor from all tenants' claims.

### F.    EXCLUSIVITY

Under the Bankruptcy Code, a debtor has the exclusive right to file and solicit acceptance of a plan or plans of reorganization for an initial period of 120 days from the date on which the debtor filed for voluntary relief (the "*Exclusive Filing Period*").  If a debtor files a plan within this exclusive period, then the debtor has the exclusive right for 180 days from the commencement date to solicit acceptance of the Plan (the "*Exclusive Solicitation Period*," and together with the Exclusive Filing Period, the "*Exclusive Periods*").  During these Exclusive Periods, no other party in interest may file a competing plan of reorganization, however, a court may extend these periods upon request of a party in interest.  The Debtor's initial Exclusive Filing Period and Exclusive Solicitation Period are set to expire on June 20, 2023 and August 19, 2023, respectively.  The Debtor intends on filing motion papers to extend such periods.

### G.    CLAIMS BAR DATE

The Bankruptcy Code provides for the bankruptcy court to fix the time within which proofs of claim must be filed in a chapter 11 case.  Any creditor whose claim is not scheduled in the debtor's schedules or whose claim is scheduled as disputed, contingent or unliquidated must file a proof of claim.

On February 21, 2023, a *Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines* was filed in this Chapter 11 Case [Docket No. 3] (the "***Notice***"). Pursuant to the Notice, (a) May 1, 2023 was established as the deadline for filing Claims in this Chapter 11 Case and (b) August 21, 2023 was established as the deadline for all governmental units (as defined in section 101(27) of the Bankruptcy Code) to file Claims in this Chapter 11 Case ((a) and (b) together, the "***Bar Dates***").

## H.    AVOIDANCE ACTION ANALYSIS

Chapter 5 of the Bankruptcy Code enables a debtor to avoid and recover payments made by the debtor to parties within 90 days of the petition date and, in the case of insiders (as defined in section 101(31) of the Bankruptcy Code), payments made within one year of the petition date. The Bankruptcy Code also provides certain defenses to an action seeking to avoid and recover such payments. The Debtor has reviewed its payment history prior to the Petition Date and said payment history is set forth in the Debtor's Statement of Financial Affairs filed in this Chapter 11 Case. The payment history reveals that the Debtor made no payments to insiders (as defined in section 101(31) of the Bankruptcy Code) within one year of the Petition Date. While the Debtor made payments to approximately thirty (30) different creditors within 90 days of the petition date, the vast majority of those payments were either made in the ordinary course of the Debtor's business or are otherwise defensible. While the Debtor reserves the right to further analyze and, to the extent warranted, bring Causes of Action prior to or after the Effective Date as set forth in the Plan, the Debtor does not expect such actions to augment the distribution to creditors proposed herein.

## IX.    DESCRIPTION OF THE PLAN OF REORGANIZATION

This section provides a summary of the structure and means for implementation of the Plan and the classification and treatment of Claims and Interests under the Plan and is qualified in its entirety by reference to the Plan (as well as the exhibits thereto and definitions therein).

The statements contained in this Disclosure Statement include summaries of the provisions contained in the Plan and in the documents referred to therein. The statements contained in this Disclosure Statement do not purport to be precise or complete statements of all the terms and provisions of the Plan or documents referred to therein, and reference is made to the Plan and to such documents for the full and complete statement of such terms and provisions of the Plan or documents referred to therein.

The Plan itself and the documents therein control the actual treatment of Claims against and Interests in the Debtor under the Plan and will, upon the occurrence of the Effective Date, be binding upon all Holders of Claims against and Interests in the Debtor, the Debtor's Estate, the Reorganized Debtor, all parties receiving property under the Plan, and other parties in interest. In the event of any conflict between this Disclosure Statement and the Plan or any other operative document, the terms of the Plan and/or such operative document shall control.

## A.    ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims and Other Priority Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III of the Plan.

### 1.    Administrative Claims

#### a.    General Administrative Claims

Except with respect to Administrative Claims that are Fee Claims and except to the extent that a Holder of an Allowed Administrative Claim and the Debtor agree to less favorable treatment to such Holder, each Holder of an Allowed Administrative Claim shall be paid in full in Cash on the later of: (i) on or within thirty (30) days after the Effective Date, (ii) on or within thirty (30) days after the date such Administrative Claim is Allowed, and (iii) the date such Allowed Administrative Claim becomes due and payable, or (with the exception of claims arising under section 503(b)(9) of the Bankruptcy Code) as soon thereafter as is practicable; *provided*, *however*, that Allowed Administrative Claims that arise in the ordinary course of the Debtor's business shall be paid in full in the ordinary

course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to, such transactions.

### b.    Professional Compensation

#### (i)    Fee Claims

Professionals or other Entities asserting a Fee Claim for services rendered before the Confirmation Date must File and serve on the Debtor and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Bankruptcy Court an application for final allowance of such Fee Claim no later than 45 days after the Effective Date; *provided* that the Reorganized Debtor may pay retained Professionals or other Entities in the ordinary course of business after the Confirmation Date. To the extent necessary, the Plan and the Confirmation Order shall amend and supersede any previously entered order regarding the payment of Fee Claims.

#### (ii)    Post-Confirmation Date Fees and Expenses

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Reorganized Debtor shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable legal, professional, or other fees and expenses related to implementation and Consummation of the Plan incurred by the Reorganized Debtor and its Professionals through and including the Effective Date.  Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtor may employ and pay any Professional for services rendered or expenses incurred after the Confirmation Date in the ordinary course of business without any further notice to any party or action, order, or approval of the Bankruptcy Court.

### c.    Administrative Claim Bar Date

Except as otherwise provided in Article II.A of the Plan, requests for payment of Administrative Claims must be filed and served on the Reorganized Debtor pursuant to the procedures specified in the Confirmation Order. Holders of Administrative Claims that are required to, but do not, file and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped and enjoined from asserting such Administrative Claims against the Debtor or its property and such Administrative Claims shall be deemed discharged as of the Effective Date.

### 2.    Priority Tax Claims

### a.    Priority Tax Claims

Each Holder of an Allowed Priority Tax Claim due and payable on or before the Effective Date shall receive, on the Distribution Date, at the option of the Debtor, one of the following treatments: (1) Cash in an amount equal to the amount of such Allowed Priority Tax Claim; (2) Cash in an aggregate amount of such Allowed Priority Tax Claim payable in installment payments over a period of time not to exceed five years after the Petition Date, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code; or (3) such other treatment as may be agreed upon by such Holder and the Debtor or otherwise determined upon an order of the Bankruptcy Court.

### 3.    Other Priority Claims

Each Holder of an Allowed Other Priority Claim due and payable on or before the Effective Date shall receive, on the Distribution Date, at the option of the Debtor, one of the following treatments: (1) Cash in an amount equal to the amount of such Allowed Other Priority Claim; (2) Cash in an aggregate amount of such Allowed Other Priority Claim payable in installment payments over a period of time not to exceed five years after the Petition Date, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code; or (3) such other treatment as may be agreed upon by such Holder and the Debtor or otherwise determined upon an order of the Bankruptcy Court.

4.      **Statutory Fees**

On the Distribution Date, Reorganized Debtor shall pay, in full in Cash, any fees due and owing to the U.S. Trustee at the time of Confirmation.  On and after the Confirmation Date, Reorganized Debtor shall pay the applicable U.S. Trustee fees until the entry of a final decree in each Debtor's Chapter 11 Case or until such Chapter 11 Case is converted or dismissed.

B.      **CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

1.      **Classification of Claims and Interests**

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Interests in the Debtor.  A Claim or Interest is placed in a particular Class for the purposes of voting on the Plan and receiving distributions pursuant to the Plan only to the extent that such Claim or Interest has not been paid, released, withdrawn or otherwise settled before the Effective Date.

2.      **Summary of Classification**

This Plan constitutes a chapter 11 plan of reorganization for the Debtor.

The following chart represents the general classification of Claims and Interests against the Debtor pursuant to the Plan:

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 1 | Lument Claim | Unimpaired | Not Entitled to Vote |
| 2 | Mechanic Lien Claims | Unimpaired | Not Entitled to Vote |
| 3 | DIP Claim | Unimpaired | Not Entitled to Vote |
| 4 | General Unsecured Claims | Unimpaired | Not Entitled to Vote |
| 5 | Equity Interests | Unimpaired | Not Entitled to Vote |

3.      **Treatment of Claims and Interests**

To the extent a Class contains Allowed Claims or Allowed Interests with respect to the Debtor, the treatment provided to each Class for distribution purposes is specified below:

a.      **Class 1 – Lument Claim**

(i)      *Classification:*  Class 1 consists of the secured claim of Lument Structured Finance, LLC.

(ii)     *Treatment:*  Holder of Lument Claim will receive, on or as soon as practicable after the Effective Date, the full amount of its Claim in full and final satisfaction of its Claim.

(iii)    *Voting*:  Class 1 is unimpaired.  Therefore, the Holder of Class 1 Lument Claim is not entitled to vote to accept or reject the Plan.

(iv)     *Projected Recovery:*  100%

b.      **Class 2 – Mechanic Lien Claims**

(i)      *Classification*:  Class 2 consists of the Mechanic Lien Claims.

(ii)     *Treatment:*  Holder of Mechanic Lien Claims will receive, on or as soon as practicable after the Effective Date, the full amount of their Claims, in full and final satisfaction of its Claim.

(iii)    *Voting*:  Class 1 is unimpaired.  Therefore, Holders of Class 2 Mechanics Lien Claims are not entitled to vote to accept or reject the Plan.

(iv)     *Projected Recovery:*  100%

c.     **Class 3 - DIP Claim**

(i)      *Classification:*  Class 3 consists of the secured claim of the DIP Lender.

(ii)     *Treatment:*  Holder of DIP Claim will receive, on or as soon as practicable after the Effective Date, the full amount of its Claim in full and final satisfaction of its Claim.

(iii)    *Voting*:  Class 1 is unimpaired.  Therefore, the Holder of the Class 2 DIP Claim is not entitled to vote to accept or reject the Plan.

(iv)     *Projected Recovery:*  100%

d.     **Class 4 – General Unsecured Claims**

(i)      *Classification*:  Class 4 consists of general unsecured creditors.

(ii)     *Treatment:*  Holder of General Unsecured Claims will receive, on or as soon as practicable after the Effective Date, the full amount of their Claims in full and final satisfaction of their Claims.

(iii)    *Voting*:   Class 4 is unimpaired.   Therefore, Holders of Class 4 General Unsecured Claims are not entitled to vote to accept or reject the Plan.

(iv)     *Projected Recovery:*  100%

e.     **Class 5 – Equity Interests**

(i)      *Classification*:  Class 5 consists of the Equity Interests.

(ii)     *Treatment*:  Class 5 Equity Interests retain their equity.

### C.     ACCEPTANCE REQUIREMENTS

Pursuant to section 1126(c) of the Bankruptcy Code and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an impaired class of claims has accepted the applicable Plan if the Holders of at least two thirds in dollar amount and more than one-half in number of Allowed Claims in such Class actually voting have voted to accept the applicable Plan.

### 1.     Acceptance or Rejection of the Plan

All Classes under the Plan are Unimpaired and are not entitled to vote to accept or reject the Plan.  By operation of section 1126(f) of the Bankruptcy Code, all Classes are presumed to have accepted the Plan.  The Plan does not contain any classes that are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

2.        **Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code**

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by an Impaired Class of Claims. The Debtor shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Debtor reserves the right to modify the Plan in accordance with Article XI of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

D.        **MEANS FOR IMPLEMENTATION OF THE PLAN**

1.        **Insurance Proceeds.**

As a condition of the Plan going effective, the Debtor would have to receive the proceeds of its insurance claim for damage to the Property. It is anticipated that those proceeds will be sufficient to satisfy all classes of creditors in full.

2.        **Corporate Existence**

Except as otherwise provided herein, the Debtor shall continue to exist after the Effective Date as a separate limited liability company with all the powers of a limited liability company pursuant to the applicable law in the jurisdiction in which the Debtor is formed and pursuant to the Operating Agreement (or other formation documents) in effect before the Effective Date.

3.        **Post Effective Date Management and Compensation**

The Debtor anticipates that the post-effective date management will not change.

4.        **Vesting of Assets in the Reorganized Debtor**

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated therein, on the Effective Date, all property in Estate, all Causes of Action (except those released pursuant to the Releases by the Debtor), and any property acquired by any of the Debtor pursuant to the Plan shall vest in the Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances. On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

5.        **Restructuring Transactions**

On the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Debtor may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including: (1) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (3) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion or dissolution pursuant to applicable state law; and (4) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

6.        **Corporate Action**

Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects. All matters provided for in the Plan involving the corporate structure of the Debtor or the Reorganized Debtor, and any corporate action required by the Debtor or the Reorganized Debtor in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, members, managers, directors or officers of the Debtor or the Reorganized Debtor.

On or (as applicable) before the Effective Date, the appropriate members, managers and/or officers of the Debtor or the Reorganized Debtor, as applicable, shall be authorized and directed to issue, execute and deliver the agreements, documents, securities, certificates of incorporation, operating agreements, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Reorganized Debtor.

7.        **Effectuating Documents; Further Transactions**

On and after the Effective Date, the Reorganized Debtor and the managers, officers and members thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the securities issued pursuant to the Plan in the name of and on behalf of the Reorganized Debtor, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

8.        **Exemption from Certain Taxes and Fees**

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct and be deemed to direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment. Such exemption specifically applies, without limitation, to (1) the creation of any mortgage, deed of trust, lien or other security interest; (2) the making or assignment of any lease or sublease; (3) any restructuring transaction authorized by the Plan; or (4) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including: (a) any merger agreements; (b) agreements of consolidation, restructuring, disposition, liquidation, or dissolution; (c) deeds; (d) bills of sale; or (e) assignments executed in connection with any restructuring transaction occurring under the Plan.

9.        **Preservation of Rights of Action**

In accordance with section 1123(b) of the Bankruptcy Code, and except where such Causes of Action have been expressly released, the Reorganized Debtor shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, and the Reorganized Debtor's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Reorganized Debtor may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtor. No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against them as any indication that the Debtor or Reorganized Debtor, as applicable, will not pursue any and all available Causes of Action against them. Except with respect to Causes of Action as to which the Debtor or Reorganized Debtor has released any Person or Entity on or before the Effective Date (including pursuant to the Releases by the Debtor's Estate or otherwise), the Debtor or Reorganized Debtor, as applicable, expressly reserves all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan. Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Reorganized Debtor expressly reserves all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

### E.    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 1.    Assumption and Rejection of Executory Contracts and Unexpired Leases

Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the assumptions or rejections of such Executory Contracts or Unexpired Leases as set forth in the Plan, all pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Except as otherwise provided herein, or in any contract, instrument, release, or other agreement or document entered into in connection with the Plan, the Debtor's Executory Contracts and Unexpired Leases shall be deemed rejected as of the Effective Date, unless such Executory Contract or Unexpired Lease: (1) was assumed or rejected previously by the Debtor; (2) previously expired or terminated pursuant to its own terms; (3) is the subject of a motion to assume filed on or before the Effective Date; or (4) is identified as an Executory Contract or Unexpired Lease to be assumed pursuant to the Plan Supplement, including any amendments before the Effective Date.

With respect to any Executory Contracts and Unexpired Leases to be assumed by the Debtor pursuant to Article VI.A of the Plan or otherwise, Cure Claims shall be satisfied, pursuant to section 365(b) of the Bankruptcy Code, by payment of the Cure Claims in Cash on the Effective Date or as soon as reasonably practicable thereafter or on such other terms as the parties to each such Executory Contract or Unexpired Lease may otherwise agree.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the effective date of assumption.  Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

### 2.    Contracts and Leases Entered Into After the Petition Date

On and after the Effective Date, the Debtor may continue to perform under contracts and leases entered into after the Petition Date by the Debtor in the ordinary course of business, including any Executory Contracts and Unexpired Leases assumed by such Debtor.

### 3.    Modifications, Amendments, Supplements, Restatements, or Other Agreements

Unless otherwise provided in the Plan, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

### 4.    Reservation of Rights

Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtor that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder.  In the event of a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtor or the Reorganized Debtor, as applicable, shall have 45 days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease as otherwise provided in the Plan.

5.      **Rejection Claims Bar Date**

**Notwithstanding anything herein to the contrary, any Creditor holding a Rejection Claim must File a Proof of Claim on account of such Claim with the Bankruptcy Court on or before the Rejection Claims Bar Date.  All Rejection Claims for which a Proof of Claim is not timely Filed will be forever barred from assertion against the Debtor or the Reorganized Debtor, its Estate, and its property unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein.  All such Rejection Claims shall, as of the Effective Date, be subject to the discharge and permanent injunction set forth in Article IX.E and Article IX.F of the Plan.**

F.      **PROVISIONS GOVERNING DISTRIBUTIONS**

As of the Voting Deadline, the transfer register for each of the Classes of Claims or Interests as maintained by the Debtor or its agents shall be deemed closed, and there shall be no further changes made to reflect any new record holders of any Claims or Interests.

Except as otherwise provided in the Plan, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such a Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim against the Debtor shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class and in the manner provided herein.  If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VIII of the Plan. Except as otherwise provided herein, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for herein, regardless of whether such distributions are delivered on or at any time after the Effective Date.

All distributions under the Plan shall be made by the Reorganized Debtor as Disbursing Agent or such other Entity designated by the Reorganized Debtor as a Disbursing Agent on the Effective Date.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court and the rights and powers of the Disbursing Agent are set forth in Article VII. of the Plan.  In the event that a Disbursing Agent is so ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Reorganized Debtor.

Notwithstanding any other provision of the Plan, no distributions shall be made under the Plan on account of any Disputed Claim, unless and until such Claim becomes an Allowed Claim.  Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

Notwithstanding any provision otherwise in the Plan and except as may be agreed to by the Debtor or the Reorganized Debtor, on the one hand, and the Holder of a Disputed Claim, on the other hand, no partial payments and no partial distributions shall be made with respect to any Disputed Claim until all Disputed Claims held by the Holder of such Disputed Claim have become Allowed Claims or have otherwise been resolved by settlement or Final Order.

The delivery of distributions, together with the treatment of minimum, undeliverable or unclaimed distributions are addressed in Article VII.F. of the Plan.

In connection with the Plan and all instruments issued in connection therewith, the Disbursing Agent shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements.

Article VII.H. of the Plan authorizes the Debtor and the Reorganized Debtor to withhold (but not set off except as set forth below) from the distributions called for under the Plan on account of any Allowed Claim an amount equal to any claims, equity interests, rights, and Causes of Action of any nature that the Debtor or the Reorganized Debtor may hold against the Holder of any such Allowed Claim.  In the event that any such claims, equity interests, rights, and Causes of Action of any nature that the Debtor or the Reorganized Debtor may hold against the Holder of any such Allowed Claim are adjudicated by Final Order or otherwise resolved, the Debtor

may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant hereto on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim) the amount of any adjudicated or resolved claims, equity interests, rights, and Causes of Action of any nature that the Debtor or the Reorganized Debtor may hold against the Holder of any such Allowed Claim, but only to the extent of such adjudicated or resolved amount.  Neither the failure to effect such a setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtor or the Reorganized Debtor of any such claims, equity interests, rights, and Causes of Action that the Debtor or the Reorganized Debtor may possess against any such Holder, except as specifically provided in the Plan.

Article VII.I. sets forth the treat of Claims paid or payable by third parties, including the applicability of insurance policies to such Claims.

### G.    PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS

The Plan, including Article VIII, enables the Debtor or the Reorganized Debtor (on or after the Effective Date) to File, settle, compromise, withdraw, or litigate to judgment any objections to Claims as permitted under the Plan without approval of the Bankruptcy Court.  The Debtor reserves all rights to resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law.

Claims and Interests are Allowed only to the extent set forth in the Plan, including Article VIII.B. thereof.  No payment or distribution provided under the Plan shall be made on account of such Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim and as set forth in Article VIII.C. of the Plan. Article VIII.E. of the Plan enables the Debtor or Reorganized Debtor (on or after the Effective Date) to request that the Bankruptcy Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether an objection was previously Filed with the Bankruptcy Court with respect to such Claim.  All of the objection, estimation, settlement, and resolution procedures set forth in the Plan are cumulative and not necessarily exclusive of one another.  Claims may be estimated and subsequently compromised, objected to, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

Any Claim that has been paid, satisfied or superseded may be expunged on the Claims Register by the Reorganized Debtor, and any Claim that has been amended may be adjusted thereon by the Reorganized Debtor, in both cases without a claims objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court.

The Plan provides that any objections to Claims shall be Filed no later than the Claims Objection Bar Date.

### H.    SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS

#### 1.    Compromise and Settlement of Claims, Interests, and Controversies

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, its Estate, and Holders of Claims and Interests and is fair, equitable, and reasonable.

#### 2.    Releases by the Debtor's Estate

**Article IX.B. of the Plan provides for customary and limited releases by the Debtor's Estate of parties defined in the Plan as the Released Parties.  The Plan does not contain any third-party releases by the Debtor.  Excepted from these releases are Claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct (including fraud) or gross negligence.**

3. **Releases by Holders of Claims and Interests**

**Section IX.C. of the Plan provides for customary releases by Holders of Claims and Interests in favor of the Released Parties. Claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct (including fraud) or gross negligence are excepted from the release. The release set forth herein also does not apply to (i) any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement.**

4. **Exculpation**

**Section IX.D. of the Plan contains a customary exculpation provision in favor of Exculpated Parties. As with the releases set forth herein, Exculpated Claims exclude any act or omission that is determined by a Final Order to have constituted gross negligence or willful misconduct.**

5. **Discharge of Claims and Termination of Interests**

Article VIII.D of the Plan provides for the discharge of Claims against and termination of Interests in the Debtor as set forth in section 1141(d) of the Bankruptcy Code.

6. **Injunction**

ARTICLE VIII.F OF THE PLAN SEEKS TO ENJOIN PARTIES FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY CAUSE OF ACTION RELEASED OR TO BE RELEASED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER.

The injunction set forth in the Plan, including Article VIII.F. thereof, is reasonable and required. Term of Injunctions or Stays

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

7. **Setoff and Recoupment**

**Except with respect to Claims or payments allowed in or provided for under the Plan, the Debtor may setoff against or recoup from any Claims of any nature whatsoever that the Debtor may have against the claimant, but the failure to do so shall not constitute a waiver or release by the Debtor or the Reorganized Debtor of any such claim it may have against such claimant.**

8. **Release of Liens**

Except as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, judgments, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, judgments or other security interests shall revert to the Reorganized Debtor and its successors and assigns.

I. **CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN AND THE EFFECTIVE DATE**

It shall be a condition to Confirmation hereof that all provisions, terms and conditions hereof are approved in the Confirmation Order. Article X.B. of the Plan contains various conditions precedent to the Effective Date. It shall be a condition to the Effective Date that the following provisions, terms and conditions shall have been

satisfied or waived pursuant to the provisions of Article X.C. of the Plan.  The Effective Date shall be the date on which the Confirmation Order becomes a Final Order; *provided*, *however*, the conditions specified in Article X.B. have been satisfied or waived.

If the Consummation of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall:  (1) constitute a waiver or release of any claims by or Claims against or Equity Interests in the Debtor; (2) prejudice in any manner the rights of the Debtor, any Holders or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtor, any Holders, or any other Entity in any respect.

## J.        MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

Subject to Article XI of the Plan, the Debtor reserves the right to modify the Plan as to material terms and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not re-solicit votes on such modified Plan.  Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.  The Debtor reserves the right to revoke or withdraw the Plan before the Confirmation Date.

## K.        RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Case and all matters, arising out of, or related to, the Chapter 11 Case and the Plan, as more fully set forth in Article XII of the Plan.

## L.        MISCELLANEOUS PROVISIONS

Article XIII of the Plan contains various miscellaneous provisions, including provisions related to the binding effect of the Plan and the Plan Supplement, the filing and service of documents before and after the Effective Date, a reservation of rights by the Debtor, the severability of Plan provisions, incorporation of exhibits and Plan Supplement into the Plan, solicitation of votes, closing of Chapter 11 Case and resolution of conflicts.

## X.        PROJECTED FINANCIAL INFORMATION

The Debtor has attached its projected financial information as **Exhibit**  to this Disclosure Statement – which consists of the insurance claim.  The Debtor believes that the Plan meets the feasibility requirement set forth in section 1129(a)(11) of the Bankruptcy Code, as confirmation is not likely to be followed by liquidation or the need for further financial reorganization of the Debtor or any successor under the Plan.  In connection with the development of the Plan and for the purposes of determining whether the Plan satisfies this feasibility standard, the Debtor analyzed its ability to satisfy its financial obligations while maintaining sufficient liquidity and capital resources.

Moreover, the projections contain certain statements that are "forward-looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995.  These statements are subject to a number of assumptions, risks, and uncertainties, many of which are beyond the control of the debtor.  Actual results or developments may differ from the expectations expressed or implied in the forward-looking statements, and the Debtor undertakes no obligation to update any such statements.  The projections may not be relied upon as a guaranty or other assurance of the actual results that will occur.

The Projections should be read in conjunction with the assumptions, qualifications, and explanations set forth in this Disclosure Statement and the Plan.

Creditors and other interested parties should see the section entitled "Risk Factors" of this Disclosure Statement for a discussion of certain factors that may affect the future financial performance of the Reorganized Debtor.

## XI.    RISK FACTORS

*Holders of Claims and Interests should read and consider carefully the risk factors set forth below, as well as the other information set forth in this Disclosure Statement and the documents delivered together herewith, referred to or incorporated by reference herein, before voting to accept or reject the Plan.  Although these risk factors are many, these factors should not be regarded as constituting the only risks present in connection with the Debtor's business or the Plan and its implementation.*

### A.    RISKS RELATING TO BANKRUPTCY

**(i)**    The Debtor may not be able to obtain confirmation of the Plan.

To emerge successfully from chapter 11 as a viable entity, the Debtor, like any debtor, must obtain approval of a plan of reorganization from its creditors and confirmation of the Plan through the Bankruptcy Court and must successfully implement the Plan.  The foregoing process requires the Debtor to (a) meet certain statutory requirements concerning the adequacy of disclosure with respect to any proposed plan, (b) solicit and obtain creditor acceptances of the proposed plan and (c) fulfill other statutory conditions with respect to plan confirmation.

With regard to any proposed plan of reorganization, the Debtor may not receive the requisite acceptances to confirm a plan.  If the requisite acceptances of the Plan are received, the Debtor intends to seek Confirmation of the Plan by the Bankruptcy Court.  If the requisite acceptances are not received, the Debtor may nevertheless seek Confirmation of the Plan notwithstanding the dissent of certain Classes of Claims. The Bankruptcy Court may confirm the Plan pursuant to the "cramdown" provisions of the Bankruptcy Code, which allow the Bankruptcy Court to confirm a plan that has been rejected by an impaired Class of Claims if it determines that the plan satisfies section 1129(b) of the Bankruptcy Code.  To confirm a plan over the objection of a dissenting Class, the Bankruptcy Court also must find that at least one impaired Class has accepted the plan, with such acceptance being determined without including the acceptance of any "insider" in such Class.

Even if the requisite acceptances of a proposed plan are received, the Bankruptcy Court might not confirm the Plan as proposed.  A dissenting Holder of a Claim against the Debtor could challenge the balloting procedures and results as not being in compliance with the Bankruptcy Code.  Finally, even if the Bankruptcy Court determined that the balloting procedures and results were appropriate, the Bankruptcy Court could still decline to confirm the Plan if it found that any of the statutory requirements for confirmation had not been met.  Specifically, section 1129 of the Bankruptcy Code sets forth the requirements for confirmation and requires, among other things, a finding by the Bankruptcy Court that (a) the Debtor's plan "does not unfairly discriminate" and is "fair and equitable" with respect to any non-accepting Classes, (b) confirmation of the Debtor's plan is not likely to be followed by a liquidation or a need for further financial reorganization and (c) the value of distributions to non-accepting Holders of Claims within a particular Class under the Debtor's plan will not be less than the value of distributions such Holders would receive if the Debtor were liquidated under chapter 7 of the Bankruptcy Code.  The Bankruptcy Court may determine that a proposed plan does not satisfy one or more of these requirements, in which case the proposed plan would not be confirmed by the Bankruptcy Court.

If the Plan is not confirmed by the Bankruptcy Court, it is unclear whether the Debtor would be able to reorganize its business and what, if any, distributions Holders of Claims ultimately would receive with respect to their Claims.  There also can be no assurance that the Debtor will be able to successfully develop, prosecute, confirm and consummate an alternative plan of reorganization that is acceptable to the Bankruptcy Court and the Debtor's creditors and other parties in interest.  Additionally, it is possible that third parties may seek and obtain approval to terminate or shorten the exclusivity period during which only the Debtor may propose and confirm a plan of reorganization. Finally, the Debtor's emergence from bankruptcy is not assured. While the Debtor expects to emerge from bankruptcy in the future, there can be no assurance that the Debtor will successfully reorganize or when this reorganization will occur.

(ii)        The Conditions Precedent to the Effective Date of the Plan may not occur.

As more fully set forth in the Plan, which is attached hereto as **Exhibit A**, the Effective Date is subject to a number of conditions precedent.  If such conditions precedent are not met or waived, the Effective Date will not occur.

(iii)       Historical Financial Information of the Debtor may not be comparable to the Financial Information of the Reorganized Debtor.

As a result of the consummation of the Plan and the transactions contemplated thereby, the financial condition and results of operations of the Reorganized Debtor from and after the Effective Date may not be comparable to the financial condition or results of operations reflected in the Debtor's historical financial statements.

(iv)       The Debtor may object to the amount or classification of a Claim.

Except as otherwise provided in the Plan, the Debtor reserves the right to object to the amount or classification of any Claim under the Plan.  The estimates set forth in this Disclosure Statement cannot be relied on by any Holder of a Claim where such Claim is subject to an objection.  Any Holder of a Claim that is subject to an objection thus may not receive its expected share of the estimated distributions described in this Disclosure Statement.

## B.        RISKS RELATED TO FINANCIAL INFORMATION

The financial information is based on the Debtor's books and records and, unless otherwise stated, no audit was performed.  This Disclosure Statement contains various projections concerning the financial results of the Reorganized Debtor's operations, including the Projections, that are, by their nature, forward looking, and which projections are necessarily based on certain assumptions and estimates.  Should any or all of these assumptions or estimates ultimately prove to be incorrect, the actual future experiences of the Reorganized Debtor may turn out to be different from the financial projections.  Specifically, the projected financial results contained in this Disclosure Statement reflect numerous assumptions concerning the anticipated future performance of the Reorganized Debtor, some of which may not materialize, including, without limitation, assumptions concerning: (a) the timing of Confirmation and Consummation of the Plan in accordance with its terms; (b) the Reorganized Debtor's ability to maintain or increase revenues and gross margins, control future operating expenses or make necessary capital expenditures; (c) general business and economic conditions; (d) overall industry performance and trends; and (e) the Debtor's ability to maintain the loyalty of its current patrons and prospective patrons.

The liquidation analysis, distribution projections and other information contained herein and attached hereto are estimates only, and the timing and amount of actual distributions to Holders of Allowed Claims may be affected by many factors that cannot be predicted.  Therefore, any analyses, estimates or recovery projections may or may not turn out to be accurate.

No legal or tax advice is provided by this disclosure statement.  This Disclosure Statement is not legal advice to any person.  The contents of this Disclosure Statement should not be construed as legal, business or tax advice.  Each Holder of a Claim or an Equity Interest should consult his or her own legal counsel and accountant with regard to any legal, tax and other matters concerning his or her Claim or Interest.

The information and statements contained in this Disclosure Statement will neither (a) constitute an admission of any fact or liability by any Entity (including, without limitation, the Debtor) nor (b) be deemed evidence of the tax or other legal effects of the Plan on the Debtor, the Reorganized Debtor, Holders of Allowed Claims, Interests or any other parties in interest.

No reliance should be placed on the fact that a particular litigation claim or projected objection to a particular Claim or Equity Interest is, or is not, identified in this Disclosure Statement.  The Debtor or the Reorganized Debtor may seek to investigate, File and prosecute Claims and Interests and may object to Claims after the Confirmation or Effective Date of the Plan irrespective of whether the Disclosure Statement identifies such Claims or objections to Claims.

Counsel to and other advisors retained by the Debtor have relied upon information provided by the Debtor in connection with the preparation of this Disclosure Statement. Although counsel and other advisors retained by the Debtor have performed certain limited due diligence in connection with the preparation of this Disclosure Statement, they have not verified independently the information contained herein.

No representations concerning or relating to the Debtor, the Chapter 11 Case or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other than as set forth in this Disclosure Statement. Any representations or inducements made to secure your acceptance or rejection of the Plan that are other than as contained in, or included with, this Disclosure Statement, should not be relied upon by you in arriving at your decision. You should promptly report unauthorized representations or inducements to counsel to the Debtor and the Office of the United States Trustee for the District of New Jersey.

## XII.    CONFIRMATION OF THE PLAN

### A.    THE CONFIRMATION HEARING

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on Confirmation of the Plan of Reorganization. Section 1128(b) of the Bankruptcy Code provides that any party-in-interest may object to Confirmation of the Plan.

The Bankruptcy Court has scheduled the Confirmation Hearing for **_____ ____, 2023 at ___:___ __.m. (prevailing Eastern Time)** before the Honorable Christine M. Gravelle, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of New Jersey, located at Clarkson S. Fisher US Courthouse, 402 East State Street, Trenton, NJ 08608. The Confirmation Hearing may be adjourned from time to time without further notice except for an announcement of the adjourned date made at the Confirmation Hearing or any adjournment thereof.

### B.    DEADLINE TO OBJECT TO CONFIRMATION

Objections to the Bankruptcy Court's Confirmation of the Plan, including to the proposed assumption of executory contracts and unexpired leases and proposed cure amounts set forth in the Plan Supplement, must be filed and served at or before **4:00 p.m. prevailing Eastern Time on _____ ____, 2023. Unless objections to Confirmation are timely served and Filed, they may not be considered by the Bankruptcy Court.**

### C.    REQUIREMENTS FOR CONFIRMATION OF THE PLAN

Among the requirements for the Confirmation of the Plan are that the Plan (1) is accepted by all impaired Classes of Claims and Interests, or if rejected by an impaired Class, that the Plan "does not discriminate unfairly" and is "fair and equitable" as to such Class, (2) is feasible, and (3) is in the "best interests" of Holders of Claims and Interests that are impaired under the Plan.

At the Confirmation Hearing, the Bankruptcy Court will determine whether the Plan satisfies the requirements of section 1129 of the Bankruptcy Code. The Debtor believes that: (1) the Plan satisfies or will satisfy all of the necessary statutory requirements of chapter 11 of the Bankruptcy Code; (2) the Debtor has complied or will have complied with all of the necessary requirements of chapter 11 of the Bankruptcy Code; and (3) the Plan has been proposed in good faith. Specifically, in addition to other applicable requirements, the Debtor believes that the Plan satisfies or will satisfy the applicable Confirmation requirements of section 1129 of the Bankruptcy Code set forth below:

- The Plan complies with the applicable provisions of the Bankruptcy Code.

- The Debtor, as the Plan proponent, has complied with the applicable provisions of the Bankruptcy Code.

- The Plan has been proposed in good faith and not by any means forbidden by law.

- Any payment made or promised under the Plan for services or for costs and expenses in, or in connection with, the Chapter 11 Case, or in connection with the Plan and incident to the case, has been disclosed to the Bankruptcy Court, and any such payment: (1) made before the Confirmation of the Plan is reasonable; or (2) subject to the approval of the Bankruptcy Court as reasonable, if it is to be fixed after Confirmation of the Plan.

- Either each Holder of an impaired Claim has accepted the Plan, or will receive or retain under the Plan on account of such Claim, property of a value, as of the Effective Date of the Plan, that is not less than the amount that the Holder would receive or retain if the Debtor were liquidated on that date under chapter 7 of the Bankruptcy Code, including pursuant to section 1129(b) of the Bankruptcy Code for Equity Interests deemed to reject the Plan.

- Each Class of Claims that is entitled to vote on the Plan will have accepted the Plan, or the Plan can be confirmed without the approval of the Class pursuant to section 1129(b) of the Bankruptcy Code.

- Except to the extent that the Holder of a particular Claim will agree to a different treatment of its Claim, the Plan provides that Administrative Claims and Priority Tax Claims will be paid in full on the Effective Date, or as soon thereafter as is reasonably practicable.

- At least one Class of impaired Claims will have accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim in that Class.

- Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor or any successors thereto under the Plan.

- All fees of the type described in 28 U.S.C. § 1930, including the fees of the United States Trustee, will be paid as of the Effective Date.

**D.      BEST INTERESTS OF CREDITORS/LIQUIDATION ANALYSIS**

Often called the "best interests" test, section 1129(a)(7) of the Bankruptcy Code requires that a bankruptcy court find, as a condition to confirmation, that a chapter 11 plan provides, with respect to each Class, that each Holder of a Claim or an Equity Interest in such Class either (a) has accepted the Plan or (b) will receive or retain under the Plan property of a value, as of the effective date of the Plan, that is not less than the amount that such Holder would receive or retain if the Debtor's assets were liquidated under chapter 7 of the Bankruptcy Code. To make these findings, the Bankruptcy Court must: (a) estimate the cash liquidation proceeds that a chapter 7 trustee would generate if the Debtor's chapter 11 case was converted to a chapter 7 case and the assets of such Debtor's estate were liquidated; (b) determine the liquidation distribution that each non-accepting Holder of a Claim or an Equity Interest would receive from such liquidation proceeds under the priority scheme dictated in chapter 7; and (c) compare the Holder's liquidation distribution to the distribution under the Plan that the Holder would receive if the Plan were confirmed and consummated.

To estimate what members of each impaired Class of Claims would receive if the Debtor were liquidated under chapter 7 of the Bankruptcy Code, the Bankruptcy Court must first determine the aggregate dollar amount that would be available if the Chapter 11 Case was converted to a chapter 7 case under the Bankruptcy Code and the Debtor's assets were liquidated by a chapter 7 trustee (the "Liquidation Value"). The Liquidation Value of a Debtor would consist of the net proceeds from the disposition of the assets of the Debtor, augmented by any cash held by the Debtor.

The Liquidation Value available to Holders of Claims would be reduced by, among other things: (a) the Claims of secured creditors to the extent of the value of their collateral; (b) the costs, fees and expenses of the liquidation, as well as other administrative expenses of the Debtor's chapter 7 case; (c) unpaid administrative expense Claims of the Chapter 11 Case; and (d) priority Claims and priority tax Claims. The Debtor's costs of liquidation in the chapter 7 case would include the compensation of a chapter 7 trustee, as well as of counsel and other professionals retained by such trustee, asset disposition expenses, applicable taxes, litigation costs, Claims arising from the operation of the Debtor during the chapter 7 case, and all unpaid administrative expense Claims

incurred by the Debtor during the Chapter 11 Case that are allowed in the chapter 7 case.  The liquidation itself would trigger certain priority Claims and would likely accelerate the payment of other priority Claims and priority tax Claims that would otherwise be payable in the ordinary course of business.  These priority Claims and priority tax Claims would be paid in full out of the net liquidation proceeds, after payment of secured Claims, before the balance would be made available to pay other Claims or to make any distribution in respect of Equity Interests.

Based on the liquidation analyses set forth in **Exhibit D** of this Disclosure Statement, the Debtor believes that Holders of Claims will receive equal or greater value as of the Effective Date under the Plan than such Holders would receive in a chapter 7 liquidation.  Moreover, in an actual liquidation of the Debtor, distributions to Holders of Claims would be made substantially later than the Effective Date designated in the Plan.

In summary, the Debtor and its management believe that a chapter 7 liquidation of the Debtor would result in substantial diminution in the value to be realized by Holders of Claims entitled to distributions, as compared to the distributions contemplated under the Plan, because of, among other factors:

- the increased cost and expenses of liquidation under chapter 7 arising from fees payable to the chapter 7 trustee and the attorneys and other professional advisors to such trustee;

- additional expenses and Claims, some of which would be entitled to priority and which would be generated during the liquidation in connection with the cessation of the Debtor's operations; and

- the cost and expense attributable to the time value of money resulting from a potentially more protracted chapter 7 proceeding than the estimated length of the Chapter 11 Case.

Consequently, the Debtor and its management believe that Confirmation of the Plan will provide a substantially greater return to Holders of Claims than would a liquidation under chapter 7.

If the Plan is not confirmed, and the Debtor fails to propose and confirm an alternative plan of reorganization, it may be liquidated pursuant to the provisions of a chapter 11 liquidating plan.  In liquidations under chapter 11, the Debtor's assets could be sold in an orderly fashion over a more extended period of time than in a liquidation under chapter 7.  Thus, a chapter 11 liquidation might result in larger recoveries than in a chapter 7 liquidation, but the delay in distributions could result in lower present values received and higher administrative costs.  Any distribution to Holders of Claims under a chapter 11 plan of liquidation probably would be delayed substantially.  Most importantly, the Debtor believes that any distributions to creditors in a liquidation scenario would fail to capture the significant "going concern" value of its business.  Accordingly, the Debtor believes that a chapter 11 liquidation would not result in distributions as favorable as those under the Plan.

## E.    FEASIBILITY

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of the plan of reorganization is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor, or any successor to the Debtor (unless such liquidation or reorganization is proposed in the plan of reorganization).

To determine whether the Plan meets this feasibility requirement, the Debtor has analyzed its ability to meet its respective obligations under the Plan.  As part of this analysis, the Debtor has attached a letter which demonstrates that the insurance claim proceeds should be more than sufficient to satisfy all classes of creditors under the Plan.

## F.    ACCEPTANCE BY IMPAIRED CLASSES

The Bankruptcy Code requires, as a condition to confirmation, that, except as described in the following section, each Class of Claims or Equity Interests that is impaired under a plan, accept the Plan.  A Class that is not "impaired" under a plan is deemed to have accepted the Plan and, therefore, solicitation of acceptances with respect to the Class is not required.  A Class is "impaired" unless the Plan: (a) leaves unaltered the legal, equitable and contractual rights to which the Claim or the Equity Interest entitles the Holder of the Claim or Equity Interest; or (b) cures any default, reinstates the original terms of such obligation, compensates the Holder for certain damages or

losses, as applicable, and does not otherwise alter the legal, equitable or contractual rights to which such Claim or Equity Interest entitles the Holder of such Claim or Equity Interest.

Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a Class of impaired Claims as acceptance by Holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of allowed Claims in that Class, counting only those Claims that actually voted to accept or to reject the Plan. Thus, a Class of Claims will have voted to accept the Plan only if two-thirds in amount and a majority in number actually voting cast their ballots in favor of acceptance. For a Class of impaired Equity Interests to accept a plan, section 1126(d) of the Bankruptcy Code requires acceptance by Equity Interest Holders that hold at least two-thirds in amount of the allowed Equity Interests of such Class, counting only those Equity Interests that actually voted to accept or reject the Plan. Thus, a Class of Equity Interests will have voted to accept the Plan only if two-thirds in amount actually voting cast their ballots in favor of acceptance.

## G.  CONFIRMATION WITHOUT ACCEPTANCE BY ALL IMPAIRED CLASSES

Section 1129(b) of the Bankruptcy Code allows a bankruptcy court to confirm a plan even if all impaired Classes have not accepted it, provided that the Plan has been accepted by at least one impaired Class. Pursuant to section 1129(b) of the Bankruptcy Code, notwithstanding an impaired Class rejection or deemed rejection of the Plan, the Plan will be confirmed, at the Plan proponent's request, in a procedure commonly known as "cramdown," so long as the Plan does not "discriminate unfairly" and is "fair and equitable" with respect to each Class of Claims or Equity Interests that is impaired under, and has not accepted, the Plan.

## H.  NO UNFAIR DISCRIMINATION

Often referred to as the "vertical test," this test applies to Classes of Claims or Equity Interests that are of equal priority and are receiving different treatment under the Plan. The test does not require that the treatment be the same or equivalent, but that such treatment be "fair." In general, bankruptcy courts consider whether a plan discriminates unfairly in its treatment of Classes of Claims of equal rank (e.g., Classes of the same legal character). Bankruptcy courts will take into account a number of factors in determining whether a plan discriminates unfairly, and, accordingly, a plan could treat two Classes of unsecured creditors differently without unfairly discriminating against either Class.

## I.  FAIR AND EQUITABLE TEST

Often referred to as the "horizontal test," this test applies to Classes of different priority and status (e.g., secured versus unsecured) and includes the general requirement that no Class of Claims receive more than 100% of the amount of the allowed Claims in such Class. As to the dissenting Class, the test sets different standards depending upon the type of Claims or Equity Interests in such Class.

**(i)**     Secured Claims:

The condition that a plan be "fair and equitable" to a non-accepting Class of secured Claims includes the requirements that: (1) the Holders of such secured Claims retain the liens securing such Claims to the extent of the allowed amount of the Claims, whether the property subject to the liens is retained by the Debtor or transferred to another entity under the Plan; and (2) each Holder of a secured Claim in the Class receives deferred cash payments totaling at least the allowed amount of such Claim with a value, as of the effective date of the Plan, at least equivalent to the value of the secured claimant's interest in the Debtor's property subject to the liens.

**(ii)**     Unsecured Claims:

The condition that a plan be "fair and equitable" to a non-accepting Class of unsecured Claims includes the requirement that either: (1) the Plan provides that each Holder of a Claim of such Class receive or retain on account of such claim property of a value, as of the effective date of the Plan, equal to the allowed amount of such claim; or (2) the Holder of any Claim or any Equity Interest that is junior to the claims of such Class will not receive or retain under the Plan on account of such junior claim or junior Equity Interest any property, subject to the applicability of the "new value" exception.

**(iii)** Equity Interests:

The condition that a plan be "fair and equitable" to a non-accepting Class of Equity Interests includes the requirements that either:  (1) the Plan provides that each Holder of an Equity Interest in that Class receives or retains under the Plan on account of that Equity Interest property of a value, as of the effective date of the Plan, equal to the greater of:  (a) the allowed amount of any fixed liquidation preference to which such Holder is entitled; (b) any fixed redemption price to which such Holder is entitled; or (c) the value of such interest; or (2) if the Class does not receive the amount as required under (1) hereof, no Class of Equity Interests junior to the non-accepting Class may receive a distribution under the Plan.

If any impaired Class rejects the Plan, the Debtor reserves the right to seek to confirm the Plan utilizing the "cramdown" provision of section 1129(b) of the Bankruptcy Code.  To the extent that any Impaired Class rejects the Plan, the Debtor will request Confirmation of the Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code.  The Debtor reserves the right to alter, amend, modify, revoke or withdraw the Plan or any Plan Exhibit or Schedule prior to confirmation of the Plan, including to amend or modify it to satisfy the requirements of section 1129(b) of the Bankruptcy Code.

The Debtor submits that if the Debtor "cramsdown" the Plan pursuant to section 1129(b) of the Bankruptcy Code, the Plan is structured such that it does not "discriminate unfairly" and satisfies the "fair and equitable" requirement.  With respect to the unfair discrimination requirement, all Classes under the Plan are provided treatment that is substantially equivalent to the treatment that is provided to other Classes that have equal rank.  The Debtor believes that the Plan and the treatment of all Classes of Claims and Interests under the Plan satisfy the foregoing requirements for nonconsensual Confirmation of the Plan.

## J.    VALUATION OF THE DEBTOR

The Debtor believes – as set forth in Exhibit B – that the insurance proceeds should be in excess of $30 million.

## XIII.    RECOMMENDATION

In the opinion of the Debtor, the Plan is preferable to the alternatives described in this Disclosure Statement because it provides for a full distribution on account of all claims.  In addition, any alternative other than Confirmation of the Plan could result in extensive delays and increased administrative expenses which may result in smaller distributions to Holders of Allowed Claims than proposed under the Plan.  Accordingly, the Debtor recommends that Holders of Claims and Interests voice their support this Plan (keeping in mind that all classes of creditors are unimpaired and do not vote).

Dated:  May 22, 2023

Respectfully submitted,

**A.Y. STRAUSS LLC**

By: */s/ Eric H. Horn*
Eric H. Horn, Esq.
Heike M. Vogel, Esq.
Maria A.G. Harper, Esq.
101 Eisenhower Parkway, STE 412
Roseland, New Jersey 07068
Tel:  (973) 287-0966
Fax:  (973) 226-4104

*Attorneys for the Debtor and Debtor in Possession*

*Exhibit A*

The Plan

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1**

**A.Y. STRAUSS LLC**
Eric H. Horn, Esq.
Heike M. Vogel, Esq.
Maria A.G. Harper, Esq.
101 Eisenhower Parkway, STE 412
Roseland, New Jersey 07068
Tel:  (973) 287-0966
Fax:  (973) 226-4104

*Counsel to the Debtor and*
*Debtor-in-Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| Paxe Latitude LP, | Case No. 23-11337 (CMG) |
| Debtor. | |

## DEBTOR'S PLAN OF REORGANIZATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

## **INTRODUCTION**

Paxe Latitude LP, the debtor-in-possession in the above-captioned Chapter 11 Case, respectfully proposes the following amended plan of reorganization under chapter 11 of the Bankruptcy Code.  Capitalized terms used in the Plan and not otherwise defined herein shall have the meanings ascribed to such terms in Article I.A hereof.

### **ARTICLE I.**

### **DEFINED TERMS, RULES OF INTERPRETATION,**

### **COMPUTATION OF TIME, AND GOVERNING LAW**

A.    *Defined Terms*

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1.    "*Accrued Professional Compensation*" means, at any given moment, all accrued, contingent and/or unpaid fees and expenses (including, without limitation, success fees) for legal, financial advisory, accounting and other services and reimbursement of expenses that are awardable and allowable under sections 327, 328, 330(a) or 331 of the Bankruptcy Code or otherwise rendered allowable before the Effective Date by any retained Professional in the Chapter 11 Case, or that are awardable and allowable under section 503 of the Bankruptcy Code, that the Bankruptcy Court has not denied by a Final Order, all to the extent that any such fees and expenses have not been previously paid (regardless of whether a fee application has been Filed for any such amount).  To the extent that the Bankruptcy Court or any higher court denies or reduces by a Final Order any amount of a professional's fees or expenses, then those reduced or denied amounts shall no longer constitute Accrued Professional Compensation.

2.    "*Administrative Claim*" means a Claim for costs and expenses of administration pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estate and operating the business of the Debtor; (b) compensation for legal, financial advisory, accounting, and other services and reimbursement of expenses Allowed pursuant to sections 328, 330(a), or 331 of the Bankruptcy Code or otherwise for the period commencing on the Petition Date; (c) all fees and charges assessed against the Estate pursuant to chapter 123 of the Judicial Code; (d) all requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Case pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code; and (e) Claims pursuant to section 503(b)(9) of the Bankruptcy Code.

3.    "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

4.    "*Allowed*" means with respect to Claims: (a) any Claim proof of which is timely Filed by the applicable Claims Bar Date (or for which Claim under the Plan, the Bankruptcy Code, or Final Order of the Bankruptcy Court a Proof of Claim is or shall not be required to be Filed); (b) any Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been timely Filed; or (c) any Claim Allowed pursuant to the Plan; *provided, however,* that with respect to any Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that with respect to any Claim no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim shall have been Allowed for voting purposes only by a Final Order.  Except for any Claim that is expressly Allowed herein, any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated or disputed, and for which no Proof of Claim has been Filed, is not considered Allowed and shall be expunged without further notice or hearing.

5.    "*Ballot*" means the ballot accompanying the Disclosure Statement upon which certain Holders of Impaired Claims and Interests entitled to vote shall, among other things, indicate their acceptance or rejection of the

Plan in accordance with the Plan and the procedures governing the solicitation process, and which must be actually received by the Balloting Agent on or before the Voting Deadline.

6. "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532.

7. "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of New Jersey having jurisdiction over the Chapter 11 Case, and, to the extent of the withdrawal of any reference under 28 U.S.C. § 157 and/or the order of the United States District Court for the District of New Jersey, the United States District Court for the District of New Jersey. The Bankruptcy Court is located at Clarkson S. Fisher US Courthouse, 402 East State Street, Trenton, New Jersey 08608.

8. "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Case, promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court.

9. "*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

10. "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

11. "*Causes of Action*" means any action, claim, cause of action, controversy, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law. Cause of Action also includes: (a) any right of setoff, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to sections 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim.

12. "*Chapter 11 Case*" means the chapter 11 case pending for the Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court under Case No. 23-11337 (CMG)

13. "*Claim*" means any claim against the Debtor as defined in section 101(5) of the Bankruptcy Code.

14. "*Claims Bar Date*" means the dates established in the Bankruptcy Case by which Proofs of Claim must be Filed.

15. "*Claims Objection Bar Date*" means, for each Claim, the later of (a) 180 days after the Effective Date and (b) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for Filing such Claims.

16. "*Claims Register*" means the official register of Claims maintained by Bankruptcy Court.

17. "*Class*" means a category of Holders of Claims or Interests as set forth in Article III hereof pursuant to section 1122(a) of the Bankruptcy Code.

18. "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Case, subject to all conditions specified in Article X.A hereof having been (a) satisfied or (b) waived pursuant to Article X.C hereof.

19. "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case, within the meaning of Bankruptcy Rules 5003 and 9021.

20.    *"Confirmation Hearing"* means the hearing held by the Bankruptcy Court on Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

21.    *"Confirmation Order"* means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

22.    *"Consummation"* means the occurrence of the Effective Date.

23.    *"Cure Claim"* means a Claim based upon a monetary default, if any, by the Debtor on an Executory Contract or Unexpired Lease at the time such contract or lease is assumed by the Debtor pursuant to sections 365 or 1123 of the Bankruptcy Code.

24.    *"Debtor"* means Paxe Latitude LP.

25.    *"DIP Facility"* means that certain debtor in possession credit facility.

26.    *"DIP Claim"* means any Claim derived from or based upon the DIP Facility.

27.    *"DIP Lender"* means the provider of the DIP Facility.

28.    *"Disclosure Statement"* means the *Disclosure Statement for the Debtor's Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code*, dated May 22, 2023, as amended, supplemented, or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law.

29.    *"Disclosure Statement Order"* means the order of the Bankruptcy Court approving the Disclosure Statement.

30.    *"Disputed"* means, with respect to any Claim or Interest, any Claim or Interest that is not yet Allowed.

31.    *"Distribution Date"* means the date that is as soon as practicable after the Effective Date, but no later than 10 days after the Effective Date.

32.    *"Effective Date"* means the date on which the Confirmation Order becomes a Final Order; *provided, however,* in each case, the conditions specified in Article X.B. have been satisfied or waived.

33.    *"Entity"* means an entity as defined in section 101(15) of the Bankruptcy Code.

34.    *"Equity Interest"* means any membership interest evidencing an ownership interest in the Debtor whether or not transferable, and any option, warrant or right, contractual or otherwise, to acquire any such interest in a Debtor that existed immediately before the Effective Date.

35.    *"Estate"* means the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

36.    *"Exculpated Claim"* means any claim related to any act or omission in connection with, relating to, or arising out of the Debtor's in or out of court restructuring efforts, the Debtor's Chapter 11 Case, formulation, preparation, dissemination, negotiation or filing of the Disclosure Statement or the Plan or any contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Case, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of Plan Securities, or the distribution of property under the Plan or any other agreement; *provided, however,* that Exculpated Claims shall not include any act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct.  For the avoidance of doubt,

no Claim, obligation or liability expressly set forth in, arising under, or preserved by the Plan or the Plan Supplement constitutes an Exculpated Claim.

37.    "*Exculpated Party*" means each of:  (a) the Debtor, (b) the Reorganized Debtor, and (c) such Entities' managers, members, attorneys, accountants, management companies, and other Professionals.

38.    "*Exculpation*" means the exculpation provision set forth in Article IX.D. hereof.

39.    "*Executory Contract*" means a contract to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

40.    "*Fee Claim*" means a Claim for Accrued Professional Compensation.

41.    "*File*," "*Filed*," or "*Filing*" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Case.

42.    "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be Filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing shall have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice.

43.    "*General Unsecured Claims*" means any unsecured Claim against the Debtor that is not an Administrative Claim, a Priority Tax Claim, an Other Priority Claim, an Other Unsecured Claim, a Fee Claim, or Indemnification Claim.

44.    "*Governmental Unit*" means a governmental unit as defined in section 101(27) of the Bankruptcy Code.

45.    "*Holder*" means any Person or Entity holding a Claim or an Interest.

46.    "*Impaired*" means any Claim or Interest in an Impaired Class.

47.    "*Impaired Class*" means an impaired Class within the meaning of section 1124 of the Bankruptcy Code.

48.    "*Interests*" means Equity Interests.

49.    "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

50.    "*Lien*" means a lien as defined in section 101(37) of the Bankruptcy Code.

51.    "*Local Bankruptcy Rules*" means the Local Bankruptcy Rules for the District of New Jersey.

52.    "*Lument Claim*" means the claim of Lument Structured Finance, LLC.

53.    "*Mechanic Lien Claims*" means the claims of certain holders of prepetition mechanics liens.

54.    "*Other Priority Claim*" means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than:  (a) an Administrative Claim or (b) a Priority Tax Claim.

55.    "*Person*" means a "person" as defined in section 101(41) of the Bankruptcy Code.

56.        "*Petition Date*" means February 20, 2023.

57.        "*Plan*" means this *Debtor's Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code*, as amended, supplemented, or modified from time to time, including the Plan Supplement, which is incorporated herein by reference.

58.        "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

59.        "*Pro Rata*" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

60.        "*Professional*" means an Entity:  (a) retained pursuant to a Final Order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 363, and 331 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

61.        "*Proof of Claim*" means a proof of Claim Filed against the Debtor in the Chapter 11 Case.

62.        "*Rejection Claim*" means a Claim arising from the rejection of an Executory Contract or Unexpired Lease.

63.        "*Rejection Claims Bar Date*" means the later of: (x) the first Business Day that is 30 days after the date of entry of an order of the Bankruptcy Court approving the rejection of the relevant Executory Contract or Unexpired Lease, unless a different date is set forth in the order approving the rejection of the relevant Executory contract or Unexpired Lease; and (y) the Claims Bar Date.

64.        "*Releasing Parties*" means all Entities who have held, hold, or may hold Claims or Interests that have been released pursuant to Article X.B or Article IX.C, discharged pursuant to Article IX.E or are subject to exculpation pursuant to Article X.D.

65.        "*Released Party*" means the Debtor and the Reorganized Debtor.

66.        "*Reorganized Debtor*" means the Debtor, in each case, or any successor thereto, by merger, consolidation or otherwise, on or after the Effective Date.

67.        "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtor pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time.

68.        "*Secured*" means when referring to a Claim:  (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) otherwise Allowed pursuant to the Plan as a Secured Claim.

69.        "*Secured Claim*" means a Claim that is Secured.

70.        "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, as amended.

71.      "*Unexpired Lease*" means a lease to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

72.      "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Claim or an Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

73.      "*U.S. Trustee*" means the United States Trustee for the District of New Jersey.

B.      *Rules of Interpretation*

For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, modified, or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) unless otherwise stated, the words "herein," "hereof," and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

C.      *Computation of Time*

The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

D.      *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New Jersey, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided, however,* that corporate governance matters relating to the Debtor or the Reorganized Debtor, as applicable, shall be governed by the laws of the state of formation of the Debtor or Reorganized Debtor, as applicable.

E.      *Reference to Monetary Figures*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

F.      *Reference to the Debtor or the Reorganized Debtor*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtor or to the Reorganized Debtor shall mean the Debtor and the Reorganized Debtor, as applicable, to the extent the context requires.

# ARTICLE II.

## ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims and Other Priority Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III.

A.      *Administrative Claims*

1.   <u>General Administrative Claims</u>

Except with respect to Administrative Claims that are Fee Claims and except to the extent that a Holder of an Allowed Administrative Claim and the Debtor agree to less favorable treatment to such Holder, each Holder of an Allowed Administrative Claim shall be paid in full in Cash on the later of: (i) on or within thirty (30) days after the Effective Date, (ii) on or within thirty (30) days after the date such Administrative Claim is Allowed, and (iii) the date such Allowed Administrative Claim becomes due and payable, or (with the exception of claims arising under section 503(b)(9) of the Bankruptcy Code) as soon thereafter as is practicable; *provided, however,* that Allowed Administrative Claims that arise in the ordinary course of the Debtor's business shall be paid in full in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to, such transactions.   Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim previously Allowed by Final Order and all Claims specifically Allowed under this Plan.

2.   <u>Professional Compensation</u>

(a)      Fee Claims

Professionals or other Entities asserting a Fee Claim for services rendered before the Confirmation Date must File and serve on the Debtor and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Bankruptcy Court an application for final allowance of such Fee Claim no later than 45 days after the Effective Date; *provided* that the Reorganized Debtor may pay retained Professionals or other Entities in the ordinary course of business after the Confirmation Date.   Objections to any Fee Claim must be Filed and served on the Reorganized Debtor and the requesting party no later than 75 days after the Effective Date. To the extent necessary, the Plan and the Confirmation Order shall amend and supersede any previously entered order regarding the payment of Fee Claims.

(b)      Post-Confirmation Date Fees and Expenses

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Reorganized Debtor shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable legal, professional, or other fees and expenses related to implementation and Consummation of the Plan incurred by the Reorganized Debtor's Professionals through and including the Effective Date.   Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtor may employ and pay any Professional for services rendered or expenses incurred after the Confirmation Date in the ordinary course of business without any further notice to any party or action, order, or approval of the Bankruptcy Court.

3.   <u>Administrative Claim Bar Date</u>

Except as otherwise provided in this Article II.A, requests for payment of Administrative Claims must be filed and served on the Reorganized Debtor pursuant to the procedures specified in the Confirmation Order no later than 45 days after the Effective Date.   Holders of Administrative Claims that are required to, but do not, file and

serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped and enjoined from asserting such Administrative Claims against the Debtor or its property and such Administrative Claims shall be deemed discharged as of the Effective Date.  Objections to such requests, if any, must be filed and served on the Reorganized Debtor and the requesting party no later than 75 days after the Effective Date.

B.      *Priority Tax Claims*

    1.    Priority Tax Claims

Each Holder of an Allowed Priority Tax Claim due and payable on or before the Effective Date shall receive, on the Distribution Date, at the option of the Debtor, one of the following treatments: (1) Cash in an amount equal to the amount of such Allowed Priority Tax Claim; (2) Cash in an aggregate amount of such Allowed Priority Tax Claim payable in installment payments over a period of time not to exceed five years after the Petition Date, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code; or (3) such other treatment as may be agreed upon by such Holder and the Debtor or otherwise determined upon an order of the Bankruptcy Court.

C.      *Other Priority Claims*

Each Holder of an Allowed Other Priority Claim due and payable on or before the Effective Date shall receive, on the Distribution Date, at the option of the Debtor, one of the following treatments: (1) Cash in an amount equal to the amount of such Allowed Other Priority Claim; (2) Cash in an aggregate amount of such Allowed Other Priority Claim payable in installment payments over a period of time not to exceed five years after the Petition Date, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code; or (3) such other treatment as may be agreed upon by such Holder and the Debtor or otherwise determined upon an order of the Bankruptcy Court.

D.      *Statutory Fees*

On the Distribution Date, Reorganized Debtor shall pay, in full in Cash, any fees due and owing to the U.S. Trustee at the time of Confirmation.  On and after the Confirmation Date, Reorganized Debtor shall pay the applicable U.S. Trustee fees until the entry of a final decree in each Debtor's Chapter 11 Case or until such Chapter 11 Case is converted or dismissed.

## ARTICLE III.

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.      *Classification of Claims and Interests*

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Interests in the Debtor.  A Claim or Interest is placed in a particular Class for the purposes of voting on the Plan and receiving distributions pursuant to the Plan only to the extent that such Claim or Interest has not been paid, released, withdrawn or otherwise settled before the Effective Date.

B.      *Summary of Classification*

The following chart represents the general classification of Claims and Interests against the Debtor pursuant to the Plan:

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1 | Lument Claim | Unimpaired | Not Entitled to Vote |
| 2 | Mechanic Lien Claims | Unimpaired | Not Entitled to Vote |
| 3 | DIP Claim | Unimpaired | Not Entitled to Vote |
| 4 | General Unsecured Claims | Unimpaired | Not Entitled to Vote |
| 5 | Equity Interests | Unimpaired | Not Entitled to Vote |

C.      *Treatment of Claims and Interests*

To the extent a Class contains Allowed Claims or Allowed Interests with respect to the Debtor, the treatment provided to each Class for distribution purposes is specified below:

(i)     Class 1 – Lument Claim

      (a)     Classification:  *Class 1 consists of the secured claim of Lument Structured Finance, LLC.*

      (b)     Treatment:  *Holder of Lument Claim will receive, on or as soon as practicable after the Effective Date, the full amount of its Claim in full and final satisfaction of its Claim.*

      (c)     Voting*: Class 1 is unimpaired.  Therefore, the Holder of Class 1 Lument Claim is not entitled to vote to accept or reject the Plan.*

      (d)     Projected Recovery: *100%*

(ii)    Class 2 – Mechanic Lien Claims

      (a)     Classification*:  Class 2 consists of the Mechanic Lien Claims.*

      (b)     Treatment:  *Holder of Mechanic Lien Claims will receive, on or as soon as practicable after the Effective Date, the full amount of their Claims, in full and final satisfaction of its Claim.*

      (c)     Voting*: Class 1 is unimpaired.  Therefore, Holders of Class 2 Mechanics Lien Claims are not entitled to vote to accept or reject the Plan.*

      (d)     Projected Recovery: *100%*

(iii)   Class 3 - DIP Claim

      *(a)*     Classification:  *Class 3 consists of the secured claim of the DIP Lender.*

      (b)     Treatment:  *Holder of DIP Claim will receive, on or as soon as practicable after the Effective Date, the full amount of its Claim in full and final satisfaction of its Claim.*

      (c)     Voting*: Class 1 is unimpaired.  Therefore, the Holder of the Class 2 DIP Claim is not entitled to vote to accept or reject the Plan.*

      (d)     Projected Recovery: *100%*

(iv)    Class 4 – General Unsecured Claims

      (a)     Classification*:  Class 4 consists of general unsecured creditors.*

      (b)     Treatment:  *Holder of General Unsecured Claims will receive, on or as soon as practicable after the Effective Date, the full amount of their*

*Claims in full and final satisfaction of their Claims.*

(c)     Voting*: Class 4 is unimpaired.  Therefore, Holders of Class 4 General Unsecured Claims are not entitled to vote to accept or reject the Plan.*

(d)     Projected Recovery:  *100%*

(v)     Class 5 – Equity Interests

(a)     Classification*: Class 5 consists of the Equity Interests.*

(b)     Treatment*: Class 5 Equity Interests retain their equity.*

## ARTICLE IV. ACCEPTANCE REQUIREMENTS

Pursuant to section 1126(c) of the Bankruptcy Code and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an impaired class of claims has accepted the applicable Plan if the Holders of at least two-thirds in dollar amount and more than one-half in number of Allowed Claims in such Class actually voting have voted to accept the applicable Plan.

A.     *Acceptance or Rejection of the Plan*.  All classes are unimpaired and are deemed to have accepted the Plan.

B.     *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by an Impaired Class of Claims.  The Debtor shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.  The Debtor reserves the right to modify the Plan in accordance with Article XI hereof to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

## ARTICLE V.

## MEANS FOR IMPLEMENTATION OF THE PLAN

A.     **Insurance Proceeds.**  As a condition of the Plan going effective, the Debtor would have to receive the proceeds of its insurance claim for damage to the Property. It is anticipated that those proceeds will be sufficient to satisfy all classes of creditors in full.

B.     **Corporate Existence**

Except as otherwise provided herein, the Debtor shall continue to exist after the Effective Date as a separate limited liability company with all the powers of a limited liability company pursuant to the applicable law in the jurisdiction in which the Debtor is formed and pursuant to the Operating Agreement (or other formation documents) in effect before the Effective Date.

C.     **Post Effective Date Management and Compensation.**  The Debtor anticipates that the post-effective date management will not change.

D.     **Vesting of Assets in the Reorganized Debtor.**

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated therein, on the Effective Date, all property in Estate, all Causes of Action (except those released pursuant to the Releases by the Debtor), and any property acquired by any of the Debtor pursuant to the Plan shall vest in the Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances.  On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtor may operate its business and may use,

acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

E.    **Restructuring Transactions**

On the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Debtor may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including: (1) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (3) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion or dissolution pursuant to applicable state law; and (4) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

F.    **Corporate Action**

Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects. All matters provided for in the Plan involving the corporate structure of the Debtor or the Reorganized Debtor, and any corporate action required by the Debtor or the Reorganized Debtor in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, members, managers, directors or officers of the Debtor or the Reorganized Debtor.

On or (as applicable) before the Effective Date, the appropriate members, managers and/or officers of the Debtor or the Reorganized Debtor, as applicable, shall be authorized and directed to issue, execute and deliver the agreements, documents, securities, certificates of incorporation, operating agreements, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Reorganized Debtor.

G.    **Effectuating Documents; Further Transactions**

On and after the Effective Date, the Reorganized Debtor and the managers, officers and members thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the securities issued pursuant to the Plan in the name of and on behalf of the Reorganized Debtor, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

H.    **Exemption from Certain Taxes and Fees**

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct and be deemed to direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment. Such exemption specifically applies, without limitation, to (1) the creation of any mortgage, deed of trust, lien or other security interest; (2) the making or assignment of any lease or sublease; (3) any restructuring transaction authorized by the Plan; or (4) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including: (a) any merger agreements; (b) agreements of consolidation, restructuring, disposition, liquidation, or dissolution; (c) deeds; (d) bills of sale; or (e) assignments executed in connection with any restructuring transaction occurring under the Plan.

J.    **Preservation of Rights of Action**

In accordance with section 1123(b) of the Bankruptcy Code, and except where such Causes of Action have been expressly released, the Reorganized Debtor shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, and the Reorganized Debtor's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  The Reorganized Debtor may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtor.  No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against them as any indication that the Debtor or Reorganized Debtor, as applicable, will not pursue any and all available Causes of Action against them.  Except with respect to Causes of Action as to which the Debtor or Reorganized Debtor has released any Person or Entity on or before the Effective Date (including pursuant to the Releases by the Debtor's Estate or otherwise), the Debtor or Reorganized Debtor, as applicable, expressly reserves all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.  Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Reorganized Debtor expressly reserves all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

## ARTICLE VI.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.    *Assumption and Rejection of Executory Contracts and Unexpired Leases*

Except as otherwise provided herein, or in any contract, instrument, release, or other agreement or document entered into in connection with the Plan, each of the Debtor's Executory Contracts and Unexpired Leases shall be deemed rejected as of the Effective Date, unless such Executory Contract or Unexpired Lease: (1) was assumed or rejected previously by the Debtor; (2) previously expired or terminated pursuant to its own terms; (3) is the subject of a motion to assume filed on or before the Effective Date; or (4) is identified as an Executory Contract or Unexpired Lease to be assumed pursuant to the Plan Supplement, including any amendments before the Effective Date.

Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the assumptions or rejections of such Executory Contracts or Unexpired Leases as set forth in the Plan, all pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Unless otherwise indicated, all assumptions or rejections of such Executory Contracts and Unexpired Leases in the Plan are effective as of the Effective Date.  Each such Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall revest in and be fully enforceable by the Reorganized Debtor in accordance with its terms, except as such terms may have been modified by such order.

B.    *Payments Related to Assumption of Executory Contracts and Unexpired Leases*

With respect to any Executory Contracts and Unexpired Leases to be assumed by the Debtor pursuant hereto (including pursuant to Article VI.A hereof) or otherwise, Cure Claims shall be satisfied, pursuant to section 365(b) of the Bankruptcy Code, by payment of the Cure Claims in Cash on the Effective Date or as soon as reasonably practicable thereafter or on such other terms as the parties to each such Executory Contract or Unexpired Lease may otherwise agree.  In the event of a dispute regarding: (1) the amount of any Cure Claim; (2) the ability of the Reorganized Debtor to provide "adequate assurance of future performance" (within the meaning of section 365(b) of the Bankruptcy Code), if applicable, under the Executory Contract or the Unexpired Lease to be assumed; or (3) any other matter pertaining to assumption, the Cure Claims shall be paid following the entry of a Final Order resolving the dispute and approving the assumption of such Executory Contracts or Unexpired Leases; *provided, however,* that the Debtor or the Reorganized Debtor may settle any dispute regarding the amount of any Cure Claim without any further notice to or action, order, or approval of the Bankruptcy Court.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the effective date of assumption.  Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

C.      *Preexisting Obligations to the Debtor Under Executory Contracts and Unexpired Leases*

Rejection or repudiation of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtor under such contracts or leases.  In particular, notwithstanding any nonbankruptcy law to the contrary, the Reorganized Debtor expressly reserves and does not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the Debtor or Reorganized Debtor, as applicable, from counterparties to rejected or repudiated Executory Contracts or Unexpired Leases.

D.      *Contracts and Leases Entered Into After the Petition Date*

On and after the Effective Date, the Debtor may continue to perform under contracts and leases entered into after the Petition Date by the Debtor in the ordinary course of business, including any Executory Contracts and Unexpired Leases assumed by the Debtor.

E.      *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in the Plan, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

F.      *Reservation of Rights*

Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtor that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Reorganized Debtor has any liability thereunder.  In the event of a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtor or the Reorganized Debtor, as applicable, shall have 45 days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease as otherwise provided herein.

G.      **Rejection Claims Bar Date**

**Notwithstanding anything herein to the contrary, any Creditor holding a Rejection Claim must File a Proof of Claim on account of such Claim with the Bankruptcy Court on or before the Rejection Claims Bar Date.  All Rejection Claims for which a Proof of Claim is not timely Filed will be forever barred from assertion against the Debtor or the Reorganized Debtor, its Estate, and its property unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein.  All such Rejection Claims shall, as of the Effective Date, be subject to the discharge and permanent injunction set forth in Article IX.E and Article IX.F hereof.**

# ARTICLE VII.

## PROVISIONS GOVERNING DISTRIBUTIONS

A.    *Record Date for Distributions*

As of the Voting Deadline, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Bankruptcy Court, the Debtor or its agents shall be deemed closed, and there shall be no further changes made to reflect any new record holders of any Claims or Interests.  The Debtor shall have no obligation to recognize any transfer of Claims or Interests occurring on or after the Voting Deadline.

B.    *Timing and Calculation of Amounts to Be Distributed*

Except as otherwise provided in the Plan, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such a Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim against the Debtor shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class and in the manner provided herein.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VIII hereof.  Except as otherwise provided herein, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for herein, regardless of whether such distributions are delivered on or at any time after the Effective Date.

C.    *Disbursing Agent*

Except as otherwise provided herein, all distributions under the Plan shall be made by the Reorganized Debtor as Disbursing Agent or such other Entity designated by the Reorganized Debtor as a Disbursing Agent on the Effective Date.  A Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.  In the event that a Disbursing Agent is so ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Reorganized Debtor.

D.    *Rights and Powers of Disbursing Agent*

1.    <u>Powers of the Disbursing Agent</u>

The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

2.    <u>Expenses Incurred On or After the Effective Date</u>

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement claims (including reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtor.

E.    *Distributions on Account of Claims Allowed After the Effective Date*

    1.    Payments and Distributions on Disputed Claims

Notwithstanding any other provision of the Plan, no distributions shall be made under the Plan on account of any Disputed Claim, unless and until such Claim becomes an Allowed Claim.  Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

    2.    Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise in the Plan and except as may be agreed to by the Debtor or the Reorganized Debtor, on the one hand, and the Holder of a Disputed Claim, on the other hand, no partial payments and no partial distributions shall be made with respect to any Disputed Claim until all Disputed Claims held by the Holder of such Disputed Claim have become Allowed Claims or have otherwise been resolved by settlement or Final Order.

F.    *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

    1.    Delivery of Distributions in General

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be made to Holders of record as of the Voting Deadline by the Reorganized Debtor or the Disbursing Agent, as appropriate: (a) to the signatory set forth on any of the Proofs of Claim Filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no Proof of Claim is Filed or if the Debtor has been notified in writing of a change of address); (b) at the addresses set forth in any written notices of address changes delivered to the Reorganized Debtor or the Disbursing Agent, as appropriate, after the date of any related Proof of Claim; (c) at the addresses reflected in the Schedules if no Proof of Claim has been Filed and the Reorganized Debtor or the Disbursing Agent, as appropriate, has not received a written notice of a change of address; or (d) on any counsel that has appeared in the Chapter 11 Case on the Holder's behalf.  Distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan.  The Debtor, the Reorganized Debtor, and the Disbursing Agent, as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan except for gross negligence or willful misconduct.

    2.    Minimum Distributions

The Reorganized Debtor and Disbursing Agent shall not be required to make partial or fractional distributions or distributions of $20 or less.

    3.    Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then current address of such Holder, at which time such distribution shall be made as soon as practicable after such distribution has become deliverable or has been claimed to such Holder without interest; *provided, however,* such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and forfeited at the expiration of six (6) months from the Effective Date.  After such date, all "unclaimed property" or interests in property shall revert to the Reorganized Debtor (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or Interest in property shall be discharged and forever barred.

G.      *Withholding and Reporting Requirements*

In connection with the Plan and all instruments issued in connection therewith, the Disbursing Agent shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements.

H.      *Setoffs*

The Debtor and the Reorganized Debtor may withhold (but not set off except as set forth below) from the distributions called for under the Plan on account of any Allowed Claim an amount equal to any claims, equity interests, rights, and Causes of Action of any nature that the Debtor or the Reorganized Debtor may hold against the Holder of any such Allowed Claim.  In the event that any such claims, equity interests, rights, and Causes of Action of any nature that the Debtor or the Reorganized Debtor may hold against the Holder of any such Allowed Claim are adjudicated by Final Order or otherwise resolved, the Debtor may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant hereto on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim) the amount of any adjudicated or resolved claims, equity interests, rights, and Causes of Action of any nature that the Debtor or the Reorganized Debtor may hold against the Holder of any such Allowed Claim, but only to the extent of such adjudicated or resolved amount.  Neither the failure to effect such a setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtor or the Reorganized Debtor of any such claims, equity interests, rights, and Causes of Action that the Debtor or the Reorganized Debtor may possess against any such Holder, except as specifically provided herein.

I.      *Claims Paid or Payable by Third Parties*

1.      Claims Paid by Third Parties

The Debtor or the Reorganized Debtor, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or Reorganized Debtor.  To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such Holder shall, within two weeks of receipt thereof, repay or return the distribution to the applicable Reorganized Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

2.      Claims Payable by Third Parties

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtor's insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtor's insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.      Applicability of Insurance Policies

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtor or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## ARTICLE VIII.

## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS

A.      *Prosecution of Objections to Claims*

The Debtor (before the Effective Date) or the Reorganized Debtor (on or after the Effective Date), as applicable, shall have the exclusive authority to File, settle, compromise, withdraw, or litigate to judgment any objections to Claims as permitted under the Plan.  From and after the Effective Date, the Debtor and the Reorganized Debtor may settle or compromise any Disputed Claim without approval of the Bankruptcy Court.  The Debtor reserves all rights to resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law.

B.      *Allowance of Claims and Interests*

Except as expressly provided herein, no Claim shall be deemed Allowed unless and until such Claim is deemed Allowed under the Bankruptcy Code, under the Plan, or the Bankruptcy Court enters a Final Order in the Chapter 11 Case allowing such Claim under section 502 of the Bankruptcy Code.  Except as expressly provided herein or in any order entered in the Chapter 11 Case before the Effective Date (including the Confirmation Order), the Reorganized Debtor after the Effective Date will have and retain any and all rights and defenses held by the Debtor with respect to any Claim as of the Petition Date.  All claims of any Entity that owes money to the Debtor shall be disallowed unless and until such Entity pays, in full, the amount it owes the Debtor.

C.      *No Distributions Pending Allowance*

Notwithstanding any other provision hereof, if any portion of a Claim is a Disputed Claim, no payment or distribution provided under the Plan shall be made on account of such Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim.

D.      *Distributions After Allowance*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan.  As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim.

E.      *Estimation of Claims*

The Debtor (before the Effective Date) or Reorganized Debtor (on or after the Effective Date) may, at any time, and from time to time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether an objection was previously Filed with the Bankruptcy Court with respect to such Claim, or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any Disputed Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim against any party or Entity, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtor (before the Effective Date) or the Reorganized Debtor (after the Effective Date), may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.  All of the objection, estimation, settlement, and resolution procedures set forth in the Plan are cumulative and not necessarily exclusive of one another.  Claims may be estimated and subsequently compromised, objected to, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

F.      *Expungement or Adjustment to Claims Without Objection*

Any Claim that has been paid, satisfied or superseded may be expunged on the Claims Register by the Reorganized Debtor, and any Claim that has been amended may be adjusted thereon by the Reorganized Debtor, in both cases without a claims objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court.

G.      *Deadline to File Objections to Claims*

Any objections to Claims shall be Filed no later than the Claims Objection Bar Date.

## ARTICLE IX.

## SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS

A.      *Compromise and Settlement of Claims, Interests, and Controversies*

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest.   The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, its Estate, and Holders of Claims and Interests and is fair, equitable, and reasonable.   In accordance with the provisions of the Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtor may compromise and settle Claims against it and Causes of Action against other Entities.

B.      ***Releases by the Debtor's Estate of the Debtor and the Reorganized Debtor***

**Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or the Plan Supplement, for good and valuable consideration, including the service of the Released Parties and their managers, members and Professionals to facilitate the expeditious reorganization of the Debtor and the implementation of the restructuring contemplated by the Plan, on and after the Effective Date, the Released Parties are deemed released and discharged by the Debtor, the Reorganized Debtor, and the Estate from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtor or its Estate, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtor, the Reorganized Debtor, the Estate, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Chapter 11 Case, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests during the Chapter 11 Case, the negotiation, formulation, or preparation of the Plan and Disclosure Statement, or related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Confirmation Date, other than Claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct (including fraud) or gross negligence.**

C.    ***Releases by Holders of Claims and Interests***

**As of the Effective Date, each Holder of a Claim or an Interest shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged each of the Released Parties from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims asserted on behalf of a Debtor or Debtor's Estate, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Debtor's restructuring, the Debtor's Chapter 11 Case, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests during the Chapter 11 Case, the negotiation, formulation, or preparation of the Plan, the Disclosure Statement, the Plan Supplement, or related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Confirmation Date, other than Claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct (including fraud) or gross negligence.**

**Nothing in the Confirmation Order or the Plan shall affect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including any claim arising under the Internal Revenue Code, federal securities laws, the environmental laws or any criminal laws of the United States or any state and local authority against the Debtor, the Reorganized Debtor, or Released Parties, nor shall anything in the Confirmation Order or the Plan enjoin the United States Government or any of its agencies or any state or local authority from bringing any claim, suit, action or other proceedings against the Debtor, the Reorganized Debtor or Released Parties for any liability whatever, including without limitation any claim, suit or action arising under the Internal Revenue Code, federal securities laws, the environmental laws or any criminal laws of the United States Government or any of its agencies or any state or local authority, nor shall anything in the Confirmation Order or the Plan exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, federal securities laws, the environmental laws or any criminal laws of the United States Government or any of its agencies or any state and local authority against the Debtor, the Reorganized Debtor and Released Parties. This paragraph, however, shall in no way affect or limit the discharge granted to the Debtor under sections 524 and 1141 of the Bankruptcy Code.**

D.    ***Exculpation***

**Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from any Exculpated Claim, obligation, cause of action, or liability for any Exculpated Claim, except for gross negligence or willful misconduct, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Debtor and the Reorganized Debtor (and its respective Affiliates, members, managers, agents, directors, officers, employees, advisors, and attorneys) have participated in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of the Plan Securities pursuant to the Plan, and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.**

E.    *Discharge of Claims and Termination of Interests*

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in full and final satisfaction, settlement, release, and discharge, effective as of the Effective Date, of all Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date,

whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtor or any of its assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not:  (1) a Proof of Claim or Interest based upon such Claim, debt, right, or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such Claim, debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan.  Except as otherwise provided herein, any default by the Debtor or its Affiliates with respect to any Claim or Interest that existed immediately before or on account of the filing of the Chapter 11 Case shall be deemed cured on the Effective Date.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring, except as otherwise expressly provided in the Plan.

F.    *Injunction*

FROM AND AFTER THE EFFECTIVE DATE, ALL ENTITIES ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY CAUSE OF ACTION RELEASED OR TO BE RELEASED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER.

FROM AND AFTER THE EFFECTIVE DATE, TO THE EXTENT OF THE RELEASES AND EXCULPATION GRANTED IN ARTICLE IX HEREOF, THE RELEASING PARTIES SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE RELEASED PARTIES AND THE EXCULPATED PARTIES AND THEIR ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, ACTION OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST OR REMEDY RELEASED OR TO BE RELEASED PURSUANT TO ARTICLE IX HEREOF.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN, THE PLAN SUPPLEMENT OR RELATED DOCUMENTS, OR FOR OBLIGATIONS ISSUED PURSUANT TO THE PLAN, ALL ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE BEEN RELEASED PURSUANT TO ARTICLE IX.B OR ARTICLE IX.C, DISCHARGED PURSUANT TO ARTICLE IX.E, OR ARE SUBJECT TO EXCULPATION PURSUANT TO ARTICLE IX.E ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS: (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (2) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (3) CREATING, PERFECTING, OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR ESTATE OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; AND (4) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED OR SETTLED PURSUANT TO THE PLAN.

THE RIGHTS AFFORDED IN THE PLAN AND THE TREATMENT OF ALL CLAIMS AND EQUITY INTERESTS HEREIN SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION OF CLAIMS AND EQUITY INTERESTS OF ANY NATURE WHATSOEVER, INCLUDING, WITHOUT LIMITATION, ANY INTEREST ACCRUED ON CLAIMS FROM AND AFTER THE PETITION DATE, AGAINST THE DEBTOR OR ANY OF ITS ASSETS, PROPERTY OR ESTATE.  ON THE EFFECTIVE DATE, ALL SUCH CLAIMS AGAINST THE DEBTOR SHALL BE FULLY RELEASED AND DISCHARGED, AND THE EQUITY INTERESTS SHALL BE MODIFIED AS SET FORTH HEREIN.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR HEREIN OR IN OBLIGATIONS ISSUED PURSUANT HERETO FROM AND AFTER THE EFFECTIVE DATE, ALL CLAIMS AGAINST THE DEBTOR

SHALL BE FULLY RELEASED AND DISCHARGED, AND THE EQUITY INTERESTS SHALL BE CANCELLED, AND THE DEBTOR'S LIABILITY WITH RESPECT THERETO SHALL BE EXTINGUISHED COMPLETELY, INCLUDING, WITHOUT LIMITATION, ANY LIABILITY OF THE KIND SPECIFIED UNDER SECTION 502(G) OF THE BANKRUPTCY CODE.

ALL ENTITIES SHALL BE PRECLUDED FROM ASSERTING AGAINST THE DEBTOR, THE DEBTOR'S ESTATE, THE REORGANIZED DEBTOR, ITS RESPECTIVE SUCCESSORS AND ASSIGNS, AND ITS ASSETS AND PROPERTIES, ANY OTHER CLAIMS OR EQUITY INTERESTS BASED UPON ANY DOCUMENTS, INSTRUMENTS OR ANY ACT OR OMISSION, TRANSACTION OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED BEFORE THE EFFECTIVE DATE.

NOTWITHSTANDING ANYTHING TO THE CONTRARY HEREIN, ABSENT REORGANIZE DEBTOR'S DEFAULT UNDER THE AFP EXIT DOCUMENTS THAT IS CONTINUING FOR NO LESS THAN SIXTY (60) DAYS FROM THE DATE OF REORGANIZED DEBTOR'S RECEIPT FROM AFP OF A WRITTEN NOTICE OF SAID DEFAULT, AFP SHALL BE ENJOINED AND PRECLUDED FROM CONTINUING THE AFP ACTION AND ENFORCING ANY JUDGMENT ENTERED IN THE AFP ACTION, OR ANY VARIATION THEREOF, AGAINST THE AFP ACTION DEFENDANTS; *PROVIDED, HOWEVER*, THAT AFP'S ASSERTION OF A DEFAULT MUST BE EITHER AGREED TO BY REORGANIZED DEBTOR OR ADJUDICATED BY THE BANKRUPTCY COURT.

G.    *Term of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

H.    *Protection Against Discriminatory Treatment*

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtor or deny, revoke, suspend or refuse to renew a license, permit, charter, franchise or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtor or another Entity with whom such Reorganized Debtor has been associated, solely because the Debtor has been a debtor under chapter 11, has been insolvent before the commencement of the Chapter 11 Case (or during the Chapter 11 Case but before the Debtor is granted or denied a discharge) or has not paid a debt that is dischargeable in the Chapter 11 Case.

I.    **Setoff and Recoupment**

**Except with respect to Claims or payments allowed in or provided for under the Plan, the Debtor may setoff against or recoup from any Claims of any nature whatsoever that the Debtor may have against the claimant, but the failure to do so shall not constitute a waiver or release by the Debtor or the Reorganized Debtor of any such claim it may have against such claimant.**

J.    *Release of Liens*

Except as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, judgments or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, judgments or other security interests shall revert to the Reorganized Debtor and its successors and assigns.

K.      *Releases of Governmental Claims*

Except as provided in Article VI hereof with respect to the compromise of the City claims, nothing in the Confirmation Order or the Plan shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including without limitation any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Released Parties, nor shall anything in the Confirmation Order or the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against the Released Parties for any liability whatever, including without limitation any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state or local authority, nor shall anything in the Confirmation Order or the Plan exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Released Parties.

## ARTICLE X.

**CONDITIONS PRECEDENT TO CONFIRMATION** OF THE PLAN AND **THE EFFECTIVE DATE**

A.      *Conditions Precedent to Confirmation*

It shall be a condition to Confirmation hereof that all provisions, terms and conditions hereof are approved in the Confirmation Order.

B.      *Conditions Precedent to the Effective Date*

It shall be a condition to the Effective Date that the following provisions, terms and conditions shall have been satisfied or waived pursuant to the provisions of Article X.C. hereof.

1.  Receipt of the Insurance Proceeds.

2.  The Confirmation Order (a) shall be a Final Order in form and substance acceptable to the Debtor.

3.  The Plan, including any amendments, modifications, or supplements thereto shall be reasonably acceptable to the Debtor.

4.  All actions, documents, certificates, and agreements necessary to implement this Plan shall have been effected or executed and delivered to the required parties and, to the extent required, Filed with the applicable governmental units in accordance with applicable laws.

C.      *Waiver of Conditions*

The conditions to Confirmation of the Plan and to Consummation of the Plan set forth in this Article X may be waived at any time by the Debtor; *provided, however,* that the Debtor may not waive entry of the Order approving the Disclosure Statement, the Confirmation Order or any condition the waiver of which is proscribed by law.  Any such waivers shall be evidenced by a writing, signed by the waiving parties, served upon the U.S. Trustee and Filed with the Bankruptcy Court.  The waiver may be a conditional one, such as to extend the time under which a condition may be satisfied.

D.      *Effective Date*

The Effective Date shall be the date on which the Confirmation Order becomes a Final Order; *provided, however,* the conditions specified in Article X.B. have been satisfied or waived.

E.    *Effect of Failure of Conditions*

If the Consummation of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall:  (1) constitute a waiver or release of any claims by or Claims against or Equity Interests in the Debtor; (2) prejudice in any manner the rights of the Debtor, any Holders or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtor, any Holders, or any other Entity in any respect.

## ARTICLE XI.

## MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

A.    *Modification and Amendments*

Except as otherwise specifically provided herein, the Debtor reserves the right to modify the Plan as to material terms and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not re-solicit votes on such modified Plan.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtor expressly reserves its rights to alter, amend, or modify materially the Plan with respect to the Debtor, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with this Article XI.

B.    *Effect of Confirmation on Modifications*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.    *Revocation or Withdrawal of the Plan*

The Debtor reserves the right to revoke or withdraw the Plan before the Confirmation Date.  If the Debtor revokes or withdraws the Plan, or if Confirmation or Consummation does not occur, then:  (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall:  (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor or any other Entity.

## ARTICLE XII.

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Case and all matters, arising out of, or related to, the Chapter 11 Case and the Plan including jurisdiction to:

1.    allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims;

2.    decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.    resolve any matters related to:  (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which the Debtor is party or with respect to which the Debtor may be liable in any manner and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Rejection Claims, Cure Claims pursuant to section 365 of the Bankruptcy Code or any other matter related to such Executory Contract or Unexpired Lease; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Reorganized Debtor amending, modifying, or supplementing, after the Effective Date, pursuant to Article VI, any Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired.

4.    ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5.    adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving the Debtor and the AFP Action Defendants that may be pending on the Effective Date;

6.    adjudicate, decide, or resolve any and all matters related to Causes of Action;

7.    adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

8.    enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9.    resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10.  resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with or under the Prepetition Security Agreement;

11.  issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

12.  resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the discharge, releases, injunctions, exculpations, indemnifications and other provisions contained in Article IX and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

13.  resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim for amounts not timely repaid pursuant to Article VII.I.1;

14.  enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

15.  determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Disclosure Statement;

16.  adjudicate any and all disputes arising from or relating to distributions under the Plan;

17. consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

18. determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

19. hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

20. hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

21. hear and determine all disputes involving the existence, nature, or scope of the Debtor's discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred before or after the Effective Date;

22. enforce all orders previously entered by the Bankruptcy Court;

23. hear any other matter not inconsistent with the Bankruptcy Code; and

24. enter an order concluding or closing the Chapter 11 Case.

## ARTICLE XIII.

## MISCELLANEOUS PROVISIONS

A.    *Immediate Binding Effect*

Subject to Article X.B, and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtor, the Reorganized Debtor, and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor.

B.    *Additional Documents*

On or before the Effective Date, the Debtor may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtor or Reorganized Debtor, as applicable, and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.    *Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by the Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtor with respect to the Holders of Claims or Interests before the Effective Date.

D.     *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, manager, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

E.     *Entire Agreement*

Except as otherwise indicated, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

F.     *Severability of Plan Provisions*

If, before Confirmation of the Plan, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Debtor shall have the right to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtor's consent; and (3) nonseverable and mutually dependent.

G.     *Exhibits*

All exhibits and documents included in the Plan are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtor's counsel or the Bankruptcy Court's web site at *www.njb.uscourts.gov*.  To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

H.     *Closing of Chapter 11 Case*

The Reorganized Debtor shall, promptly after the full administration of the Chapter 11 Case, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Case.

I.     *Conflicts*

Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control; *provided, however,* that if there is a conflict between this Plan and a Plan Supplement document, the Plan Supplement document shall govern and control.

J.     *Filing of Additional Documents*

On or before the Effective Date, the Debtor may File with the Bankruptcy Court all agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

Dated:  May 22, 2023

Respectfully submitted,

**A.Y. STRAUSS LLC**


By: _/s/ Eric H. Horn_
Eric H. Horn, Esq.
Heike M. Vogel, Esq.
Maria A.G. Harper, Esq.
101 Eisenhower Parkway, STE 412
Roseland, New Jersey 07068
Tel:  (973) 287-0966
Fax:  (973) 226-4104

*Attorneys for the Debtor and Debtor in Possession*

*Exhibit B*

Liquidation Analysis

*Exhibit C*

Projection / Insurance Proceeds



5/17/2023

To whom it may concern,

I am a licensed public adjuster (License number 1435413) retained by PAX Latitude LP to adjust the claim for damages sustained to 521, 525, 529 Sawyer Blvd Columbus Ohio Parcel number 010-288-512.

The subject buildings sustained major damage because of the widespread freeze event on about December 25, 2022.

The property consists of two 15 story towers as well as a 1 story administrative office building connecting the two towers.

Although we have yet to complete a comprehensive less measure our analysis thus far is as follows.

- 300 + affected units with major water intrusion.
  - All common areas, hallways, elevators, entryways etc.
- Domestic water supply lines and drain lines.
- Forced air systems.
- Ductwork
- Electrical- switches, panels etc.
- Elevator Shafts
- Chiller System
- Sprinkler Lines
- Asbestos abatement
- Extensive mitigation efforts are needed due to the advanced water damage.

Based on my experience we are estimating this loss will likely exceed $30,000,00.00. This number is solely based on our initial inspections as we have not completed a formal loss measure. This value is subject to change based on further inspections and findings. This is a professional opinion and is subject to change after receiving final reports.

This value is not based on, nor can we control the decisions made by the insurance carrier Great American to determine payment.

Regards,

Phillip Wright



501 East Las Olas Blvd., Fort Lauderdale, FL 33301
Main: (954) 603-2412   |   Fax: (954) 603-2423   |   Toll Free: 1-844-700-GGCC (4422)
GUARDIANCLAIMSUSA.COM   |   OFFICE@GUARDIANCLAIMSUSA.COM

