SILLS CUMMIS & GROSS P.C.
Andrew H. Sherman
Boris I. Mankovetskiy
Michael Savetsky
One Riverfront Plaza
Newark, NJ 07102
Telephone: (973) 643-7000
asherman@sillscummis.com
bmankovetskiy@sillscummis.com
msavetsky@sillscummis.com

*Attorneys for Lument Commercial Mortgage Trust*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| Paxe Latitude LP, | Case No. 23-11337 (CMG) |
| Debtor. | **Hearing Date: June 26, 2023 at 11:00 a.m. (ET)** |

**NOTICE OF LUMENT COMMERCIAL MORTGAGE TRUST'S (I)**
**RENEWED MOTION TO DISMISS DEBTOR'S BANKRUPTCY CASE**
**OR, IN THE ALTERNATIVE, FOR RELIEF FROM THE AUTOMATIC**
**STAY, AND (II) REQUEST FOR ADEQUATE PROTECTION**

**PLEASE TAKE NOTICE** that on **June 26, 2023 at 11:00 a.m. (ET)**, or as soon

thereafter as counsel may be heard, Lument Commercial Mortgage Trust ("Lument"), shall move

(the "Renewed Motion")[1] before the Honorable Christine M. Gravelle, United States Bankruptcy

Judge, in Courtroom #3 of the United States Bankruptcy Court for the District of New Jersey,

402 East State Street Trenton, NJ 08608, for entry of an order (a) dismissing the Debtor's

bankruptcy case pursuant to 11 U.S.C. § 1112(b), or (b) in the alternative, granting Lument relief

from the automatic stay pursuant to 11 U.S.C. § 362(d) to allow Lument to pursue all available

---

[1] Capitalized terms used but not defined in this notice shall have the meanings ascribed to them in the Renewed
Motion.

rights and remedies in the Foreclosure Action, in the Environmental Actions, and under the Loan

Documents. By the Renewed Motion, Lument further requests (a) that the Debtor be prohibited

from using the Property and (b) adequate protection of its interests in the Property pursuant to 11

U.S.C. § 363(e).[2]

**PLEASE TAKE FURTHER NOTICE** that Lument shall rely upon the Renewed

Motion filed herewith. Oral argument is requested.

**PLEASE TAKE FURTHER NOTICE** that any responses to the Renewed Motion must

be filed with the Clerk of the Court together with proof of service thereof, and served so as to be

actually received by no later than **June 19, 2023** by counsel to Lument, Sills Cummis & Gross

P.C., One Riverfront Plaza, Newark, New Jersey 07102, Attn: Andrew H. Sherman

(asherman@sillscummis.com), Boris I. Mankovetskiy (bmankovetskiy@sillscummis.com), and

Michael Savetsky (msavetsky@sillscummis.com).

**PLEASE TAKE FURTHER NOTICE** that responses to the Renewed Motion, if any,

must: (a) be in writing; (b) comply with the Bankruptcy Rules, the Local Rules of the United

States Bankruptcy Court for the District of New Jersey, and any other case management rules or

orders of this Court; and (c) state with particularity the legal and factual basis for the response.

**PLEASE TAKE FURTHER NOTICE** that unless a response is timely filed and served

in accordance with this notice, the Bankruptcy Court may not consider it. In the event no

response is filed, the relief requested in the Renewed Motion may be granted without a hearing.

*[Remainder of page intentionally left blank]*

---

[2] Lument filed its *Motion to Dismiss Case or for Relief from the Automatic Stay* (the "Original Lument Motion") [Doc. No. 22] on March 3, 2023. The Court entered an order on March 22, 2023 [Doc. No. 68] denying the Original Lument Motion, without prejudice, solely as to Lument's request for dismissal of this Chapter 11 case on grounds different from those raised in the Renewed Motion. The hearing on Lument's request for stay relief was adjourned to June 26, 2023 at 11:00 a.m. (ET).

9725154

Dated: June 9, 2023

SILLS CUMMIS & GROSS P.C.

*/s/ Andrew H. Sherman*

Andrew H. Sherman
Boris I. Mankovetskiy
Michael Savetsky
One Riverfront Plaza
Newark, NJ 07102
Telephone: (973) 643-7000
asherman@sillscummis.com
bmankovetskiy@sillscummis.com
msavetsky@sillscummis.com

*Attorneys for Lument Commercial Mortgage Trust*

9725154

SILLS CUMMIS & GROSS P.C.
Andrew H. Sherman
Boris I. Mankovetskiy
Michael Savetsky
One Riverfront Plaza
Newark, NJ 07102
Telephone: (973) 643-7000
asherman@sillscummis.com
bmankovetskiy@sillscummis.com
msavetsky@sillscummis.com

*Attorneys for Lument Commercial Mortgage Trust*

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| Paxe Latitude LP, | Case No. 23-11337 (CMG) |
| Debtor. | Hearing Date: June 26, 2023 at 11:00 a.m. |

## LUMENT COMMERCIAL MORTGAGE TRUST'S (I) RENEWED MOTION TO DISMISS DEBTOR'S BANKRUPTCY CASE OR, IN THE ALTERNATIVE, FOR RELIEF FROM THE AUTOMATIC STAY, AND (II) REQUEST FOR ADEQUATE PROTECTION

Lument Commercial Mortgage Trust ("Lument"), by and through its undersigned

counsel, hereby (i) renews its motion for entry of an order (a) dismissing this bankruptcy case

pursuant to 11 U.S.C. § 1112(b) or (b) in the alternative, granting Lument relief from the

automatic stay pursuant to 11 U.S.C. § 362(d) to allow Lument to pursue all available rights and

remedies in the Foreclosure Action, in the Environmental Actions, and under the Loan

Documents (each, as defined below), and (ii) requests that the Debtor be prohibited from using

the Property (as defined below) and adequate protection of its interests in the Property pursuant

to 11 U.S.C. § 363(e) (the "Renewed Motion").[1]  In support of the Renewed Motion, Lument

---

[1] Lument filed its *Motion to Dismiss Case or for Relief from the Automatic Stay* (the "Original Lument Motion")
[Doc. No. 22] on March 3, 2023. The Court entered an order on March 22, 2023 [Doc. No. 68] denying the Original

relies upon the Certification of James O'Toole, filed in support of the Original Lument Motion

[Doc. No. 22-2 and Exhibits thereto], and respectfully states as follows:[2]

## PRELIMINARY STATEMENT[3]

1.        The Debtor filed this case without the requisite legal authority and thereafter

engaged in efforts which served no true rehabilitative purpose, to the detriment of all creditors

and parties in interest herein. The Debtor's efforts to date are based on wishful thinking and

speculation, and there is no real prospect that the Debtor's wishful thinking will materialize. This

Court should put a prompt end to this Chapter 11 Case, which should have never been filed in

the first place.

2.        This Renewed Motion seeks four types of alternate relief as set forth more fully

below: (a) dismissal for lack of legal authority; (b) dismissal for cause pursuant to 11 U.S.C. §

1112(b); (c) relief from the automatic stay pursuant to 11 U.S.C. §362(d); and (d) adequate

protection pursuant to 11 U.S.C. § 363(e).

### This Case Must be Dismissed for Lack of Legal Authority

3.        As demonstrated below, (a) GC Realty Advisors, LLC and David Goldwasser (on

its behalf) lacked authority to sign the Written Consent purporting to authorize the Debtor's

bankruptcy filing, and (b) Mr. Goldwasser lacked authority to sign the Debtor's Petition.  GC

Realty Advisors, LLC and Mr. Goldwasser had no authority to act on behalf of the Debtor

because the removal of Boruch Drillman as the manager of Paxe Latitude GP LLC (the Debtor's

---

Lument Motion, without prejudice, solely as to Lument's request for dismissal of this Chapter 11 case on grounds different from those raised in this Renewed Motion. The hearing on Lument's request for stay relief was adjourned to June 26, 2023, at 11:00 a.m.

[2] Lument has propounded discovery to the Debtor in connection with this matter and will supplement this Renewed Motion based on the results of such discovery.

[3] Capitalized terms used but not defined in this Preliminary Statement shall have the meanings ascribed to them below in this Renewed Motion.

9708455

general partner) and the appointment of GC Realty Advisors, LLC as the purported replacement

manager of that entity violated the express terms of the Limited Liability Company Operating

Agreement of Paxe Latitude GP (the "Operating Agreement"). Section 5 of the Operating

Agreement explicitly prohibits the removal of Mr. Drillman as manager or replacing him with

another manager, without Lument's consent. Section 5 of the Operating Agreement provides, in

relevant part, as follows:

> **The initial Managing Member shall be Boruch Drillman.** For
> so long as any portion of the Loan remains outstanding, **Boruch
> Drillman shall not be <u>replaced</u>, <u>removed</u> or resign without the
> consent of Lender**.

(emphasis added).[4] Lument (the Lender referred to in section 5) was not consulted with and <u>did</u>

<u>not consent</u> to either the removal of Mr. Drillman as the "Managing Member" of Paxe Latitude

GP LLC or the appointment of GC Realty Advisors LLC as the purported replacement manager

of that entity.

    4.    Because GC Realty Advisors, LLC and Mr. Goldwasser had no authority to act on

behalf of the Debtor in any capacity, the Debtor's Petition was filed (and continues to be

prosecuted) without requisite legal authority. Thus, the Chapter 11 Case must be dismissed. *See*

*In re 3P Hightstown, LLC*, 631 B.R. 205, 209 (Bankr. D.N.J. 2021) (quoting *Price v. Gurney,*

324 U.S. 100, 106 (1945) ("Should a court find 'that those who purport to act on behalf of the

corporation have not been granted authority by local law to institute the proceedings, it has no

alternative but to dismiss the petition.'"). The Court need not go any further in its analysis, as

dismissal of the Chapter 11 Case for lack of legal authority is mandatory.

---

[4] A copy of the Operating Agreement is attached hereto as **Exhibit A**.

9708455

<u>Lument Must be Granted Relief from the Automatic Stay</u>

5.       In the event the Court does not dismiss the Chapter 11 Case for lack of legal authority, it must, in the alternative, grant Lument relief from the automatic stay pursuant to section 362(d) of the Bankruptcy Code.

6.       First, Lument is entitled to stay relief under section 362(d)(3) of the Bankruptcy Code because the Debtor's proposed Plan does not have a reasonable possibility of being confirmed within a reasonable time.

7.       The Plan is completely contingent and dependent upon receipt of an unknown amount of insurance proceeds at an unknown time pursuant to a liability insurance policy for the Property (the "<u>Insurance Policy</u>") that provides the carrier the <u>option</u> of, *inter alia*, repairing the property, paying for the repairs or paying the value of the lost property or damage.  There is simply no assurance that there will be any insurance proceeds which would or could fund any payment to the Debtor or provide for any payment (let alone payment in full) to creditors herein.[5]

8.       There is no explanation in the Plan or Disclosure Statement of how and when the Debtor will satisfy the claims of all creditors, including Lument, with funds the insurer may pay for damage to the Property consistent with the terms of the Insurance Policy. Payment in full of all such claims would require at least $22.4 million[6] and there is no showing how and when proceeds of the Insurance Policy will fund both the claims of creditors <u>and</u> rehabilitation of the Property. There is also no showing of how and when current administrative expenses (real estate taxes, insurance, etc.) will be satisfied.

---

[5] Lument is a loss payee on the Insurance Policy and reserves all rights and claims relating to the Insurance Policy or the proceeds thereof.  Nothing contained herein shall limit, impact or otherwise address Lument's rights to any insurance coverage. To the extent of any inconsistency between the statements contained herein and any statements made by Lument in connection with its rights as loss payee under the Insurance Policy, such other statements shall control.

[6] *See* Debtors' Schedules of Assets and Liabilities [Doc. No. 28].

4

9.      Compounding the uncertainty regarding the insurance proceeds which are at the heart of the Plan, Great American Insurance Company has issued a 15-page reservation of rights letter (the "Great American ROR Letter") in response to the insurance claim, and the Debtor has not produced any evidence to demonstrate that insurance proceeds are certain to be paid and when.[7] In sum, the Plan is illusory, speculative, not credible and has no reasonable possibility of being confirmed within a reasonable time. Accordingly, Lument is entitled to stay relief pursuant to section 362(d)(3) of the Bankruptcy Code.

10.      Second, Lument is entitled to stay relief under section 362(d)(1) of the Bankruptcy Code because there is a lack of adequate protection of Lument's interests in the Property. As described below and demonstrated by the photos attached to the City Complaint (and in color as Exhibit F hereto), the Debtor is not taking proper care of and is thereby causing further and ongoing deterioration of the Property.

11.      In addition, the Debtor has not confirmed that the Insurance Policy is being renewed on July 1, 2023, and that the Debtor has funds to pay the insurance premiums coming due in relation to the renewal.[8] To the extent that the insurance coverage is not being renewed, the Debtor has not provided any information as to how it will obtain insurance in the marketplace and how it will pay premiums in light of the fact that no DIP financing has been sought or approved. The Debtor also has not provided any information as to how it will pay property taxes, estimated to be approximately $255,000, which are due on June 20, 2023.

---

[7] A copy of the Great American ROR Letter is attached hereto as **Exhibit B**.

[8] Counsel for Lument requested confirmation of insurance renewal and payment of real estate taxes on June 6. To date, we have yet to receive a response.

9708455

12.     Because there is a lack of adequate protection of Lument's interests in the

Property, Lument is entitled to stay relief pursuant to section 362(d)(1) of the Bankruptcy Code

as the value of its collateral has deteriorated and continues to deteriorate.

13.     Finally, Lument is entitled to stay relief under section 362(d)(2) of the

Bankruptcy Code because the Debtor lacks equity in the Property and the Property is not

necessary to an effective reorganization. The Debtor clearly does not have any equity in the

Property because the Lument Claim is alone in excess of $14 million and the CBRE Appraisal

commissioned by the Debtor (discussed below) demonstrates that the Property is worth far less

than that – no more than $5.7 million, according to the Debtor's own appraiser – in its current

condition.[9] Because the Plan depends entirely on a speculative (at best) payment of insurance

proceeds, the Property is not necessary to an effective reorganization and Lument is entitled to

stay relief under section 362(d)(2) of the Bankruptcy Code.

<u>This Case Must be Dismissed Pursuant to 11 U.S.C. § 1112(b)</u>

14.     In the event the Court does not dismiss the case for lack of legal authority or lift

the stay, there are also other clear mandatory grounds for dismissal of the Chapter 11 Case for

"cause" pursuant to section 1112(b) of the Bankruptcy Code.

15.     First, the Chapter 11 Case must be dismissed pursuant to section 1112(b)(4)(B) of

the Bankruptcy Code due to the Debtor's gross mismanagement of its estate. This case is now

almost four months old. The Debtor has mismanaged the estate from the get-go and has shown

virtually no rehabilitative progress. The Debtor has continued to neglect its sole asset and

Lument's collateral – the Property – in violation of City and State laws (as detailed below), has

failed to obtain necessary DIP financing to fund the administrative expenses of the Chapter 11

---

[9] Lument reserves all rights to contest the conclusions reached, and the methodologies used, in the CBRE Appraisal, and reserves all rights regarding the current market value of the Property.

Case, and has failed to reach, fund and effectuate a settlement with the former tenants of the

Property (which the Debtor has touted as one of its highest priorities).

16.     Critically, based upon the post-petition complaints filed against the Debtor by the

City and Ohio, the Debtor has violated the requirements of 28 U.S.C. § 959(b), which requires a

debtor-in-possession to "manage and operate the property in his possession … according to the

requirements of the valid laws of the State in which such property is situated." The Debtor has

failed to remedy past violations and continued to violate City and State laws with respect to the

Property since the Petition Date, as detailed in the City Complaint and the State Complaint.

Moreover, there is no evidence that the Debtor has any concrete plan or ability to rectify those

violations in any reasonable period of time.

17.     Second, the Chapter 11 Case must also be dismissed pursuant to section

1112(b)(4)(A) of the Bankruptcy Code because there is a substantial or continuing loss to or

diminution of the estate and an absence of a reasonable likelihood of rehabilitation. The Debtor

is not operating and has no cash flow, income or ability to fund ongoing expenses. Its sole asset

is the Property, which is vacant and is not generating any income. Meanwhile, the condition and

value of the Property continues to deteriorate, while property taxes and other expenses associated

with the Property, including insurance, continue to accrue and exceed the Debtor's available

funds. In addition, the Debtor is incurring legal and other fees prosecuting this Chapter 11 Case.

The Debtor has not even begun to rehabilitate itself or the Property and there is no likelihood that

it ever can. Thus, the Chapter 11 Case must be dismissed under section 1112(b).

18.     For all of the foregoing reasons and the additional reasons set forth below, the

Renewed Motion should be granted.

9708455

19.     To the extent that the Renewed Motion is not granted, Lument requests that the

Debtor be prohibited from using the Property pursuant to section 363(e) of the Bankruptcy Code

and adequate protection as set forth below.

## JURISDICTION AND VENUE

20.     This Court has jurisdiction over the Renewed Motion pursuant to 28 U.S.C. §§

157 and 1334, and the Standing Order of the United States District Court for the District of New

Jersey referring matters to this Court.

21.     This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (G) and (O).

22.     Venue may be technically proper in this district pursuant to 28 U.S.C. § 1408, but

Lument reserves the right to request transfer of venue.

23.     The statutory predicates for the relief requested herein are sections 105(a), 362(d),

363(e) and 1112(b) title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy

Code"), 28 U.S.C. § 959(b), and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules").

## BACKGROUND

24.     On February 20, 2023 (the "Petition Date"), Paxe Latitude LP (the "Debtor" or

"Paxe Latitude") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code,

commencing this bankruptcy case (the "Chapter 11 Case").

25.     The Debtor remains in control of its property as a debtor in possession pursuant to

sections 1107 and 1108 of the Bankruptcy Code.

26.     No official committee of unsecured creditors, trustee, or examiner has been

appointed in the Chapter 11 Case.

9708455

27.     The facts relating to Lument's mortgage and loan documents and the Debtors'

prepetition conduct are set forth in the Original Lument Motion and incorporated herein by

reference.

**A.     GC Realty Advisor's and David Goldwasser's Lack of Legal Authority to File the Chapter 11 Case**

28.     The Debtor's bankruptcy petition (the "<u>Petition</u>") was signed by David

Goldwasser. Mr. Goldwasser is the sole member of GC Realty Advisors, LLC ("<u>GC Realty</u>").

*See Declaration of David Goldwasser in Support of the Debtor's Chapter 11 Petition* (the

"<u>Goldwasser Declaration</u>") [Doc. No. 29], at ¶ 1. A copy of the Petition is attached hereto as

**Exhibit C**.

29.     GC Realty purports to be the manager of Paxe Latitude GP LLC ("<u>Paxe Latitude</u>

<u>GP</u>"), which is the general partner of the Debtor. *See* Goldwasser Declaration, at ¶ 1.

30.     Mr. Goldwasser's purported authority to sign the Petition on behalf of the Debtor

is based on the *Written Consent of the Manager of Paxe Latitude GP LLC the General Partner of*

*Paxe Latitude, LP* (the "<u>Written Consent</u>") [Doc. No. 51, pages 1-3]. The Written Consent was

signed by Mr. Goldwasser on behalf of GC Realty, as purported manager of Paxe Latitude GP. A

copy of the Written Consent is attached hereto as **Exhibit D** (pages 1-3).

31.     GC Realty was purportedly appointed as the manager of Paxe Latitude GP on the

Petition Date in replacement of Boruch Drillman pursuant to the *Replacement of Manager of*

*Paxe Latitude GP LLC* (the "<u>Replacement of Manager</u>") [Doc. No. 51, page 4]. Specifically, the

Replacement of Manager states, in relevant part, as follows:

> NOW, THEREFORE, **the undersigned hereby <u>removes</u>
> Drillman as Managing Member, and Drillman shall no longer
> be the Managing Member of the Company** or have any
> management powers or authorities, and Drillman shall no longer
> transact any business on behalf of the Company **and, the
> undersigned hereby appoints GC Realty Advisors, LLC as his
> <u>replacement</u>** as non-member Manager with sole management

9

    **rights, such <u>removal</u> and appointment** to take effect on the date
    hereof.

(emphasis added). A copy of the Replacement of Manager is attached hereto as **Exhibit D** (page

4).

   32.  The removal of Boruch Drillman as the manager of Paxe Latitude GP and the

appointment of GC Realty as the purported replacement manager of Paxe Latitude GP violated

the express terms of the Operating Agreement. Specifically, section 5 of the Operating

Agreement states as follows:

    5.  **<u>Management</u>**. The Managing Member may
   exercise its management powers and rights and otherwise act
   hereunder and under the Act through its own managers, officers,
   employees and other agents, or through any other persons that may
   be designated from time to time by the Managing Member to carry
   out any of the Managing Member's authority or duties. The
   Managing Member may also appoint a President, Secretary, one or
   more Vice-Presidents or such other officers of the Company, with
   such powers, authority and responsibilities as shall be assigned to
   them by the Managing Member, or in lieu of a specific grant of
   authority by the Managing Member to an officer, it shall be
   presumed that such officer has the authority and power to represent
   and act on behalf of the Company in the same manner as an officer
   of a New Jersey corporation with the same title. **The initial
   Managing Member shall be Boruch Drillman.** For so long as
   any portion of the Loan remains outstanding, **Boruch Drillman
   shall not be <u>replaced</u>, <u>removed</u> or resign without the consent of
   Lender**.

(emphasis added).

   33.  Lument, the Lender referred to in section 5 of the Operating Agreement, was not

consulted with and <u>did not consent</u> to either the removal of Boruch Drillman as the "Managing

Member" of Paxe Latitude GP or the appointment of GC Realty as the purported replacement

manager of Paxe Latitude GP. As such, such removal and replacement were in derogation of the

terms of the Operating Agreement and therefore invalid and of no force or effect.

9708455

**B.      The Debtor's Failure to Remedy Violations of State and City Laws at the Property Since the Petition Date and the Resulting Enforcement Actions**

34.      On May 12, 2023, due to the Debtor's numerous and ongoing violations of Ohio and Columbus, OH (the "City") laws at the Debtor's residential apartment towers property known as "Latitude Five25" (the "Property"), the City commenced an action against the Debtor and others (the "Second Environmental Action" and, together with the prepetition environmental action filed by the City and described in the Original Lument Motion, the "Environmental Actions") by filing a *Verified Complaint for Preliminary and Permanent Injunctive Relief* (the "City Complaint") in the Franklin County Municipal Court, Environmental Division. A copy of the City Complaint is attached hereto as **Exhibit E**.

35.      As set forth in the City Complaint, the conditions at the Property that led to the Property being determined to be unsafe by the Ohio Environmental Protection Agency, Columbus Fire Department, Columbus Building Department and Columbus Code Enforcement, as evidenced by certain notices of violations referred to therein and attached thereto, have not been remedied. *See* City Complaint, ¶¶ 40-41. In addition, while no persons currently reside in the Property, the vast majority of tenant personal property remains in the Property, and workers, contractors and inspectors are often at the Property. *Id.* ¶ 42.

36.      As further set forth in the City Complaint, as of May 12, 2023, the Debtor had failed to address numerous ongoing emergency conditions at the Property despite repeated notifications of these conditions. *Id.* ¶¶ 43, 44, 47-48, 50, 51, 53 & 54. In addition, as set forth in the City Complaint, on May 10, 2023, the City's Code Enforcement Supervisor, Aric Schmitter, inspected the Property and observed numerous violations of the Columbus City Code.

9708455

*Id.*, ¶ 55. Photos documenting the conditions observed by Mr. Schmitter during his inspection of the Property are attached as Exhibit O to the City Complaint.[10]

37.      On May 18, 2023, the State of Ohio (the "State"), at the request of the Director of the Ohio Environmental Protection Agency, filed a *Complaint for Injunctive Relief and Penalties* (the "State Complaint") against the Debtor and several other defendants for violation of various Ohio laws concerning the handling of asbestos containing materials in the Court of Common Pleas of Franklin County, Ohio. Among other things, the State seeks preliminary and permanent injunctive relief requiring the Debtor to abate all asbestos contamination at the Property (which is alleged to be continuing to the present) in accordance with Ohio law. A copy of the State Complaint is attached hereto as **Exhibit G**.

## C.      Lument's Secured Claim and the CBRE Appraisal

38.      As of June 8, 2023, the Debtor owed Lument no less than $14,489,560.47, plus additional legal fees and charges that continue to accrue  (the "Lument Claim") on account of the Debtor's obligations under the loan agreement between the parties, dated as of August 16, 2021 (the "Loan Agreement") and related documents (together with the Loan Agreement, the "Loan Documents").

39.      On March 9, 2023, CBRE, Inc. – Valuation & Advisory Services ("CBRE") conducted an inspection of the Property. In an Appraisal Report dated April 11, 2023 (the "CBRE Appraisal"), CBRE opined that the market value of the Property in an "As Is" condition as of March 9, 2023 was $5,700,000. CBRE further opined, based on discussions with the Debtor, the remediation team, insurance representative, and local market participants, that the

---

[10] Color copies of such photos, obtained from counsel to the City, that more clearly demonstrate the conditions observed at the Property are attached hereto as **Exhibit F**.

9708455

costs of completely remediating the damage and renovating the Property would be approximately

$14,000,000 to $18,000,000.  A copy of the CBRE Appraisal is attached hereto as **Exhibit H**.

40.     According to the Debtors' Schedules of Assets and Liabilities [Doc. No. 28],

secured claims against the Debtors total approximately $14 million and the Debtors have

approximately $8.4 million of unsecured debts.[11]

**D.     The Debtor's Proposed Chapter 11 Plan and Lack of Financing**

41.     On May 23, 2023, several hours after the deadline[12] of 90 days after the Petition

Date for the Debtor to file a plan or commence making monthly payments to Lument under

section 362(d)(3) of the Bankruptcy Code, the Debtor file its proposed Plan [Doc. No. 113] (the

"Plan") and an accompanying Disclosure Statement [Doc. No. 112] (the "Disclosure

Statement").

42.     The Plan proposes to pay all claims, including the Lument Claim, in full "on or as

soon as practicable after the Effective Date."  Plan, Art. III.C.(i)-(iv).

43.     The Plan is premised and conditioned upon the Debtor's receipt of proceeds from

its insurance claim for damage to the Property, which was insured by Great American Insurance

Company. *See* Plan, Art. V.A. ("As a condition of the Plan going effective, the Debtor would

have to receive the proceeds of its insurance claim for damage to the Property.").

44.     The Plan asserts that "[i]t is anticipated that those proceeds will be sufficient to

satisfy all classes of creditors in full."  Plan, Art. V.A.  The Plan does not provide for any other

means of payment of the Lument Claim or any other claims.

---

[11] Lument reserves all rights regarding the total amount of the Lument Claim.

[12] The Debtor has filed a motion to extend this deadline by one day on grounds of excusable neglect due to
technological difficulties encountered by Debtor's counsel [Doc. No. 115].

9708455

45.     The Disclosure Statement states that "[t]he Debtor believes – as set forth in Exhibit B[13] – that the insurance proceeds should be in excess of $30 million" but is silent as to how the $30 million figure was derived and how it would fund both payments to creditors <u>and</u> the restoration of the Property. Disclosure Statement, Art. XII.J.[14]  The Disclosure Statement does not explain how or why the Insurance Policy can satisfy claims relating to the Property (damage, restoration, etc.) <u>and</u> claims of creditors.

## <u>RELIEF REQUESTED</u>

46.     By the Renewed Motion, Lument (i) seeks entry of an order (a) dismissing the Chapter 11 Case or (b) in the alternative, granting Lument relief from the automatic stay pursuant to section 362(d) of the Bankruptcy to allow Lument to pursue all available rights and remedies in the Foreclosure Action,[15] in the Environmental Actions, and under the Loan Documents, and (ii) requests that the Debtor be prohibited from using the Property and adequate protection of its interests in the Property pursuant to section 363(e) of the Bankruptcy Code.

47.     Without limiting the foregoing, in the event the Chapter 11 Case is not dismissed, Lument specifically seeks relief from the automatic stay in order to (i) pursue appointment of a receiver for the Property and approval of a loan to support the receiver's work, (ii) pursue foreclosure of the Property, (iii) pursue all available remedies with respect to property insurance, including, without limitation, to collect insurance proceeds relating to the Property and apply them to its outstanding claim in accordance with section 5.2(b) of the Loan Agreement, (iv)

---

[13] It appears this should read "Exhibit C".

[14] Exhibit C to the Disclosure Statement is a single page letter from a public adjuster, Phillip Wright of Guardian Claims (who was retained by the Debtor; not Great American). Mr. Wright estimates that the Debtor's loss arising from damages to the Property will likely exceed $30 million, but his estimate is preliminary and subject to change, and he notes that any payment is dependent upon decisions by Great American.

[15] The "Foreclosure Action" refers to Lument's prepetition lawsuit filed on October 21, 2022 in the Court of Common Pleas of Franklin County, Ohio, seeking, among other relief, foreclosure of Lument's mortgage and appointment of a receiver to protect and preserve the Property and the health and safety of its then tenants.

14

9708455

sweep $150,000 that was deposited with Lument pursuant to the Agreed Judgment Entry dated

January 4, 2023 that was entered in the prepetition environmental action filed by the City (the

"January 4 Agreed Judgment") and apply those funds to its outstanding claim,[16] (v) sweep the

funds in the clearing account and apply them to outstanding debt service under the Loan

Agreement,[17] and (vi) exercise its right to take and sell the Interest Rate Protection Agreement.[18]

**BASIS FOR RELIEF**

**I.     THE CHAPTER 11 CASE MUST BE DISMISSED BECAUSE IT WAS FILED
        WITHOUT REQUISITE LEGAL AUTHORITY**

48.    Section 1112(b) of the Bankruptcy Code provides, subject to exceptions not

applicable here, that the court shall dismiss or convert a chapter 11 case if "cause" is

established. Section 1112(b)(1) states, in relevant part:

> [O]n request of a party in interest, and after notice and a hearing,
> the court shall convert a case under this chapter to a case under
> chapter 7 or dismiss a case under this chapter, whichever is in the
> best interests of creditors and the estate, for cause …

11 U.S.C. § 1112(b)(1).

49.    The Chapter 11 Case must be dismissed because GC Realty and Mr. Goldwasser

lacked requisite legal authority to file (and, in fact, lack authority to continue to prosecute) the

Chapter 11 Case. As noted by this Court (Kaplan, J.) in *In re 3P Hightstown, LLC*, courts often

cite a lack of authority to file for bankruptcy as cause for dismissal under section 1112(b) of the

Bankruptcy Code. 631 B.R. 205, 209 (Bankr. D.N.J. 2021); *see, e.g., In re A–Z Elec., LLC,* 350

---

[16] Although the Debtor did not satisfy its obligation under the January 4 Agreed Judgment to obtain a $500,000 purchase deposit for the Property from an unaffiliated buyer, it did arrange for an affiliate to deposit $150,000 with Lument.

[17] Although the Debtor has not deposited rent into the clearing account, as required under the Loan Documents, payments under an Interest Rate Protection Agreement in which Lument has a security interest have been deposited into the clearing account.

[18] Lument has a security interest in the Interest Rate Protection Agreement, and as such it has the right to sell that agreement if the Debtor is in default. Because the Debtor is in default and has no ability to provide adequate protection, Lument should be permitted to sell the Interest Rate Protection Agreement.

B.R. 886, 891 (Bankr. D. Idaho 2006) (holding that section 1112(b) provided grounds for

dismissal of case filed by individual who lacked authority to file the petition on behalf of the

debtor); *In re Real Homes, LLC,* 352 B.R. 221, 225 (Bankr. D. Idaho 2005) (same); *In re J&J*

*Prop. Holdings, LLC,* 2004 WL 5463804 at *2 (Bankr. W.D.N.C. Jan. 20, 2004) (same).

      50.     In addition, under United States Supreme Court precedent, the Court must dismiss

this Chapter 11 Case for lack of legal authority even without relying on section 1112(b). *See*

*Price*, 324 U.S. at 106 ("If the District Court finds that those who purport to act on behalf of the

corporation have not been granted authority by local law to institute the proceedings, it has no

alternative but to dismiss the petition."); *3P Hightstown*, 631 B.R. at 209 (should a debtor file

bankruptcy without the prerequisite authority, "the Court ... would be required to dismiss [that]

unauthorized filing even if § 1112(b) were not in the Bankruptcy Code.") (quoting *In re*

*ComScape Telecommunications, Inc.*, 423 B.R. 816, 830 (Bankr. S.D. Ohio 2010)); *see also In*

*re Southern Elegant Homes, Inc.*, 2009 WL 1639745 at *1 (Bankr. E.D.N.C. June 9, 2009)

(dismissing unauthorized petition without relying on section 1112(b)); *In re N2N Commerce,*

*Inc.*, 405 B.R. 34, 41 (Bankr. D. Mass. 2009) (same).

      51.     The filing of a bankruptcy petition "is a specific act requiring specific

authorization." *3P Hightstown*, 631 B.R. at 210 (quoting *In re N2N Commerce, Inc.*, 405 B.R. at

41). "The decision to initiate a voluntary bankruptcy case on behalf of a corporation must be

made by those persons having the power of managing the corporation." *In re Indus. Concerns,*

*Inc.*, 289 B.R. 609, 617 (Bankr. W.D. Pa. 2003) (dismissing bankruptcy case filed without

authority). Only the entity vested with "the power of management" has the requisite authority to

file a bankruptcy petition. *3P Hightstown*, 631 B.R. 205 at 209 (quoting *Price v. Gurney*, 324

U.S. 100, 104 (1945)). If a bankruptcy petition is filed by an entity lacking the "power of

management", the bankruptcy case must be dismissed. *Id.* at 209-10; *In re Advanced Vascular*

16

*Res. of Johnstown, LLC*, 590 B.R. 689, 691 (Bankr. W.D. Pa. 2018); *In re NNN 123 N. Wacker, LLC*, 510 B.R. 854, 858-59 (Bankr. N.D. Ill. 2014)); *see also In re Real Homes, LLC*, 352 B.R. at 225 ("It is generally accepted that a bankruptcy case filed on behalf of an entity by one without authority under state law to so act for that entity is improper and must be dismissed.").

52.    It is well-settled that applicable state law determines whether a bankruptcy filing was authorized. *See Price*, 324 U.S. at 106 (holding that those "who purport to act on behalf of the corporation" must have "been granted authority by local law to institute the proceedings"); *In re Franchise Servs. of N. Am., Inc.*, 891 F.3d 198, 206–07 (5th Cir. 2018), as revised (June 14, 2018) (quoting *Price*, 324 U.S. at 106) ("State law thus determines who has the authority to file a voluntary petition on behalf of the corporation. If the petitioners lack authorization under state law, the bankruptcy court 'has no alternative but to dismiss the petition.'"); *In re Sino Clean Energy, Inc.*, 901 F.3d 1139, 1142 (9th Cir. 2018) ("[S]tate law dictates which persons may file a bankruptcy petition on behalf of a debtor corporation."); *In re ComScape Telecommunications, Inc.*, 423 B.R. at 829-32 (collecting cases and stating that "bankruptcy courts generally look to state law to determine who is authorized to file a voluntary petition for a corporation, partnership or other kind of organizational entity").

53.    Here, the Debtor's Petition was signed by David Goldwasser, who is the sole member of GC Realty. *See* Goldwasser Declaration, at ¶ 1; Petition attached hereto as **Exhibit C**. GC Realty purports to be the manager of Paxe Latitude GP. *See* Goldwasser Declaration, at ¶ 1. Mr. Goldwasser's purported authority to sign the Petition on behalf of the Debtor is based on the Written Consent, which was signed by Mr. Goldwasser on behalf of GC Realty, as purported manager of Paxe Latitude GP. *See* Written Consent attached hereto as **Exhibit D** (pages 1-3).

54.    GC Realty was purportedly appointed as the manager of Paxe Latitude GP on the Petition Date in replacement of Boruch Drillman pursuant to the Replacement of Manager. The

removal of Boruch Drillman as the manager of Paxe Latitude GP and appointment of GC Realty

as the purported replacement manager violated the express terms of section 5 of the Operating

Agreement.

55.     Lument, the Lender referred to in section 5 of the Operating Agreement, was not

consulted with and <u>did not consent</u> to either the removal of Boruch Drillman as the "Managing

Member" of Paxe Latitude GP or the appointment of GC Realty as the purported replacement

manager. As such, such removal and replacement were invalid and of no force or effect.[19]

56.     Because the appointment of GC Realty as manager of Paxe Latitude GP was

invalid and of no force or effect, (a) GC Realty and Mr. Goldwasser (on its behalf) lacked

authority to sign the Written Consent purporting to authorize the Debtor's bankruptcy filing, and

(b) Mr. Goldwasser lacked authority to sign the Debtor's Petition. Therefore, the Debtor's

Chapter 11 Case was filed and continues to be prosecuted without requisite legal authority. In

addition, GC Realty and Mr. Goldwasser continue to act on behalf of the Debtor without any

authority.

---

[19] It bears noting that the Debtor's Agreement of Limited Partnership does not limit or prohibit the Debtor from filing for bankruptcy protection. Under section 4.6(a) of the Debtor's Agreement of Limited Partnership, the Debtor was permitted to file for bankruptcy with "written approval of a Majority of the Percentage Interests." Lument was not granted any consent rights in that regard. However, Lument was granted a consent right as to removal or replacement of Mr. Drillman as the Managing Member of Paxe Latitude GP.  Because Lument was not granted any consent rights with respect to the Debtor's filing of a bankruptcy case, any reliance by the Debtor on *In re Intervention Energy Holdings, LLC*, 553 B.R. 258 (Bankr. D. Del. 2016) is misplaced. In *Intervention Energy*, the court held that an agreement between a limited liability company and a creditor to which it was indebted, as a prerequisite to the creditor's forbearance in exercising its rights in connection with a default, whereby the creditor was granted a single common unit interest in the debtor and the debtor's limited liability company agreement was amended to require unanimous consent of all common unit holders for commencement of a bankruptcy case, was void as against public policy. 553 B.R. at 265. No such facts are present in this case. Lument did not have any control over any purported decision of the Debtor to file for bankruptcy.

Notably, however, such provisions may be enforceable depending on the factual circumstances.  *See, e.g., In re Franchise Servs. of N. Am., Inc.*, 891 F.3d 198 (5th Cir. 2018), as revised (June 14, 2018) (dismissing bankruptcy case because the debtor lacked authorization under state law to file a voluntary petition without consent of its preferred equity holder); *3P Hightstown*, 631 B.R. at 211 (dismissing bankruptcy case where "the Debtor had no authority to commence bankruptcy proceedings" because "the Debtor failed to get the requisite consent" of the preferred equity holders as required by the debtor's limited liability company agreement).

9708455

57.    Because Mr. Goldwasser lacked authority to file the Chapter 11 Case on behalf of

the Debtor, the Chapter 11 Case must be dismissed. The United States Supreme Court has made

clear that there is no other alternative. *Price*, 324 U.S. at 106.

## II.    IN THE ALTERNATIVE, LUMENT MUST BE GRANTED RELIEF FROM THE AUTOMATIC STAY TO EXERCISE ALL AVAILABLE RIGHTS AND REMEDIES

58.    In the event the Court does not dismiss the Chapter 11 Case, it must, in the

alternative, grant Lument relief from the automatic stay pursuant to section 362(d) of the

Bankruptcy Code to allow Lument to pursue all available rights and remedies in the Foreclosure

Action (including, but not limited to, the appointment of a receiver for the Property), in the

Environmental Actions, and under the Loan Documents.

### A.    The Plan Does Not Have a Reasonable Possibility of Being Confirmed Within a Reasonable Time

59.    Section 362(d)(3) of the Bankruptcy Code, applicable in this single asset real

estate case, provides that the Court <u>shall</u> grant stay relief:

> with respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief …
>
> (A) the debtor has filed a plan of reorganization that has **a reasonable possibility of being confirmed within a reasonable time**; or
>
> (B) the debtor has commenced monthly payments … to each creditor whose claim is secured by such real estate … in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate;

11 U.S.C. § 362(d)(3) (emphasis added).

60.    The purpose of section 362(d)(3) of the Bankruptcy Code "is to protect a secured

creditor whose collateral is real estate from perceived abusive filing by real estate developers

whose prospects for reorganization are dim." *In re 1121 Pier Vill. LLC*, 635 B.R. 127, 138

(Bankr. E.D. Pa. 2022) (quoting Joan N. Feeney, *et al.*, 1 Bankruptcy Law Manual § 7:55 (5th ed. West 2021); 3 Collier on Bankruptcy ¶ 362.07[5][b] (2023) ("The purpose of section 362(d)(3) is to address perceived abuses in single asset real estate cases, in which debtors have attempted to delay mortgage foreclosures even when there is little chance that they can reorganize successfully.").

61.     In enacting section 362(d)(3), Congress was motivated by a desire to afford relief in situations where (1) the owner of an encumbered building is attempting to avoid the loss of the building to a grossly undersecured lender and (2) there is no real hope that a viable and confirmable plan can be produced. *In re LDN Corp.*, 191 B.R. 320, 326 (Bankr. E.D. Va. 1996) (citation omitted). Congress expressly attempted to avoid the usual delays experienced in chapter 11 in single asset real estate cases, which historically have been filed to avoid a foreclosure and in the hope that the debtor can come up with some form of a miracle in order to formulate an acceptable plan. *Id.*

62.     As the Debtor has not commenced monthly interest payments to Lument, it bears the burden to prove that the Plan has a reasonable possibility of being confirmed within a reasonable time under section 362(d)(3). *In re 231 Fourth Ave. Lyceum, LLC*, 506 B.R. 196, 202 (Bankr. E.D.N.Y. 2014); *see also* 11 U.S.C. § 362(g)(2) (stating that the party opposing relief from the automatic stay under section 362(d) has the burden of proof on all issues except the debtor's equity in the property).

63.     While a plan does not have to be perfect to meet the standard forth in section 362(d)(3), it must delineate a credible path to reorganization. *In re RYYZ, LLC*, 490 B.R. 29, 37 (Bankr. E.D.N.Y. 2013). Hurdles to plan confirmation must be addressed in a way that provides the court with grounds to conclude (i) it is more likely than not they will be overcome, and (ii), because there is a time element, they can be overcome promptly. *Id.* Unless the plan has a true

9708455

prospect of being confirmed within a reasonable time, or timely payments have been made, a secured creditor should not be compelled to endure further delay, expense, and risk. *Id.*

64.     Here, the Debtor's Plan has no reasonable possibility of being confirmed within a reasonable time. The Plan proposes to pay all claims, including the Lument Claim, in full "on or as soon as practicable after the Effective Date."  Plan, Art. III.C.(i)-(iv). The Plan is premised and conditioned upon the Debtor's receipt of proceeds from its insurance claim for damage to the Property. *See* Plan, Art. V.A. ("As a condition of the Plan going effective, the Debtor would have to receive the proceeds of its insurance claim for damage to the Property."). The Plan asserts that "[i]t is anticipated that those proceeds will be sufficient to satisfy all classes of creditors in full."  *Id.* According to the Debtors' Schedules of Assets and Liabilities [Doc. No. 28], the secured claims against the Debtors total approximately $14 million and the Debtors have approximately $8.4 million of unsecured debts. Even assuming the total claims against the Debtor are not in excess of those amounts, payment in full of all such claims would require at least $22.4 million in insurance proceeds which would be payable to the Debtor and its creditors, without accounting for the administrative expenses of the Chapter 11 Case that must be paid, including, but not limited to, real estate taxes on the Property that continue to accrue and the cost of property insurance that needs to be renewed.

65.     As noted above, the Debtor's Plan and Disclosure Statement include no estimate of when any insurance proceeds might be paid to the Debtor (or Lument, as loss payee) and no explanation of how the purported $30 million in insurance proceeds would fund both payments to creditors and restoration of the Property. In fact, based upon the CBRE Appraisal, the costs to restore the Property would be approximately $14,000,000 to $18,000,000, and claims in this case exceed $22 million.  There may be insufficient insurance proceeds to both restore the Property and satisfy the claims of creditors even if the insurance claim is successful. In addition, the

9708455

Disclosure Statement is silent about the Great American ROR Letter and does not discuss the

risk that coverage could be limited or denied entirely or the fact that coverage may be limited to

the costs of restoration only.

66.     In addition, even if the Debtor's insurance claim is ultimately successful, there is

no assurance of whether any proceeds will be paid to the Debtor and its creditors or what rights

will be exercised by Great American Insurance Company consistent with the provisions of the

Insurance Policy. Section D of the "Loss Conditions" section of the Select Business Policy

Conditions of the Insurance Policy, at page 4 of 9, provides, in relevant part, as follows:

> **D.   Loss Payment**
>
> 1. In the event of direct physical loss or damage covered by this Coverage Part, at our option, we will either:
>
>    a. pay the value of lost or damaged property;
>
>    b. pay the cost of repairing or replacing the lost or damaged property, subject to 2. below;
>
>    c. take all or any part of the property at an agreed or appraised value; or
>
>    d. repair, rebuild or replace the property with other property of like kind and quality subject to 2. below.
>
> We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Part or any applicable provision which amends or supersedes the Valuation Condition.

Based on this provision, there no assurance that the Debtor or its creditors will receive any

insurance proceeds. A copy of the Insurance Policy, including the Select Business Policy

Conditions, is attached hereto as **Exhibit I**.

9708455

67.     Further, the Debtor's public adjuster acknowledges that his estimate as to the

value of the insurance claim is preliminary and subject to change, and any payment is dependent

upon decisions by Great American that are not in his control:

> Based on my experience we are estimating this loss will likely
> exceed $30,000,00.00. This number is solely based on our initial
> inspections as we have not completed a formal loss measure. This
> value is subject to change based on further inspections and
> findings. This is a professional opinion and is subject to change
> after receiving final reports.
>
> This value is not based on, nor can we control the decisions made
> by the insurance carrier Great American to determine payment.

Disclosure Statement, Exhibit C.

68.     Thus, the Debtor has not demonstrated with any reasonable likelihood if and

when it will receive insurance proceeds nor that any recovery under the Insurance Policy will

provide sufficient funds to confirm the Plan.

69.     In addition, the Disclosure Statement states that the Debtor "is in the process of

finalizing a $3 million debtor in possession financing facility with Legalist as the lender, which

will be subject to approval of this Court." *See* Disclosure Statement, Art. VIII.D.  It is from this

facility that the Debtor intends to fund the tenant settlement and the chapter 11 case through

confirmation. *See id.* To date, the Debtor has not filed a motion seeking approval of any DIP

financing from Legalist or anyone else, including the parties identified by the Debtor to date as a

potential source of financing (*e.g.*, Boruch Gottesman or MRBG Joint Projects LLC). *See* Letter

to The Honorable Christine M. Gravelle from Maria Harper, Esq., dated March 16, 2023, at

Exhibits A and B [Doc. No. 57], attached hereto as **Exhibit J**. Nor has the Debtor provided any

information regarding the terms or conditions of any possible DIP financing from Legalist. The

Debtor also has not filed a motion to approve a proposed settlement with the former tenants of

9708455

the Property as intended or presented any evidence concerning where the funding for such

settlement will come from.

70.     As noted by the Court in applying section 362(d)(3) of the Bankruptcy Code to a

mortgagee's motion for stay relief in *Fourth Ave. Lyceum*, 506 B.R. at 202-03, for a court to

confirm a plan, the requirements of section 1129 of the Bankruptcy Code must be met. Among

these requirements is that the plan must be feasible, such that "confirmation of the plan is not

likely to be followed by the liquidation, or the need for further financial reorganization, of the

debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is

proposed in the plan." 11 U.S.C. § 1129(a)(11).

71.     The purpose of the feasibility test is 'to prevent confirmation of visionary

schemes which promise creditors and equity holders more under a proposed plan than the debtor

can possibly attain after confirmation. .... [W]here the financial realities do not support the

proposed plan's projections or where proposed assumptions are unreasonable, confirmation of

the plan should be denied." *231 Fourth Ave. Lyceum*, 506 B.R. at 202 (citations and internal

quotation marks omitted). A plan "based on impractical or visionary expectations cannot be

confirmed." *In re Prudential Energy Co.*, 58 B.R. 857, 862 (Bankr. S.D.N.Y. 1986).

72.     Here, leaving aside all other confirmation requirements, the Plan filed by the

Debtor is not feasible because it is contingent and dependent upon receipt of an uncertain

recovery on an insurance claim in an unknown amount. The Plan is therefore speculative and has

no reasonable possibility of being confirmed within a reasonable time. Accordingly, Lument is

entitled to relief from the automatic stay pursuant to section 362(d)(3) of the Bankruptcy Code.

9708455

**B.      There is a Lack of Adequate Protection of Lument's Interest in the Property**

73.      Section 362(d)(1) of the Bankruptcy Code provides that the "lack of adequate

protection of an interest in property" of a party in interest constitutes "cause" for stay relief. 11

U.S.C. § 362(d)(1).

74.      As demonstrated by the photos attached to the City Complaint (and in color as

Exhibit F hereto) documenting the conditions observed by Mr. Schmitter during his inspection of

the Property on May 10, 2023, the Debtor is not taking proper care of the Property, causing

further and ongoing deterioration of the Property, which serves as the collateral for the Lument

Claim. Those photos were taken approximately 4½ months after the Property was flooded in late

December 2022. Yet, the Property still had exterior doors propped open; open, broken and/or

removed windows leaving the building open to the elements; missing and damaged sections of

roofing material; a water leak in the ceiling of the gymnasium; mold growth present throughout

the 521 tower, including active growth of mushrooms; open or damaged doors to roof

mechanical rooms of each tower, leaving the interior open to the elements; a water leak in the

529 tower sprinkler riser room; and mold growth present in multiple areas of the 529 tower. *See*

City Complaint, ¶¶ 55-56.

75.      In addition, Lument understands that the Debtor's insurance for the Property is up

for renewal on June 30, 2023. To the extent the Debtor does not obtain and pay for renewed or

replacement insurance coverage for the Property, Lument's interests in its collateral will be

further harmed and Lument would be compelled to seek alternative coverage in the force-placed

insurance market. Moreover, property taxes for the Property in the amount of approximately

$255,000 are due on June 20, 2023 to Franklin County, Ohio and there are currently no funds in

the Tax and Insurance Escrow Account established pursuant to section 6.2 of the Loan

Agreement to cover these taxes. If the Debtor does not make this payment, it would lead to a tax

9708455

lien being placed ahead of Lument's mortgage on the Property and cause further diminution of the value of Lument's interests in the Property. Further, it is unclear to Lument how the Debtor intends to fund these costs as the Debtor's most recent monthly operating report (for March 2023) showed a cash balance of approximately $182,000 [Doc. No. 97] and the Debtor has not sought approval of any DIP financing.

76.    The Debtor has not compensated Lument for post-petition diminution in the value of its collateral or provided any other form of adequate protection of its interests in the Property. Nor has the Debtor demonstrated an ability or willingness to do so. Accordingly, Lument must also be granted relief from the automatic stay pursuant to section 362(d)(1) of the Bankruptcy Code in order to proceed with foreclosure of the Property and to exercise all of its rights and remedies under the Loan Documents.

**C.    The Debtor Lacks Equity in the Property and the Property is Not Necessary to an Effective Reorganization**

77.    Section 362(d)(2) of the Bankruptcy Code provides that the Court shall grant stay relief "with respect to a stay of an act against property under subsection (a) of this section, if- (A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization." 11 U.S.C. § 362(d)(2).

78.    Here, the Debtor does not have any equity in the Property because the Lument Claim secured by the Property is alone in excess of $14,000,000 and the CBRE Appraisal demonstrates that the Property is worth far less than that. According to the CBRE Appraisal, the market value of the Property in an "As Is" condition as of March 9, 2023 was $5,700,000.

79.    As explained by the Supreme Court, once a creditor demonstrates lack of equity, "it is the burden of the debtor to establish that the collateral at issue is 'necessary to an effective reorganization'" *In re RYYZ, LLC*, 490 B.R. at 35 (quoting *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd. (In re Timbers of Inwood Forest Assocs., Ltd.),* 484 U.S. 365, 375

(1988). The debtor's burden "is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect.*" *Id.* (quoting *Timbers of Inwood Forest Assocs.*, 484 U.S. at 375-76). For an effective reorganization to be in prospect, "there must be a reasonable possibility of a successful reorganization within a reasonable time." *Id.* (quoting *Timbers of Inwood Forest Assocs.* at 376); *see also id.* at 36 (noting that "the standard announced in *Timbers* is quite similar to the language Congress later used in 11 U.S.C. § 362(d)(3)(A)").

80.     Because the Plan does not have a reasonable possibility of being confirmed in a reasonable period of time for the reasons set forth above at length, including, but not limited to, complete uncertainty as to the timing and amount of any recovery on the insurance claim, the Plan is speculative and the Debtor does not have a reasonable possibility of a successful reorganization within a reasonable time. The Property is, therefore, not necessary to an effective reorganization. It is not enough that the Debtor has filed a plan that involves the Debtor maintaining ownership of the Property. The Property must be essential for an effective reorganization that is "in prospect" and has a reasonable possibility of being confirmed within a reasonable period of time. *Timbers of Inwood Forest Assocs.* at 375-76. Accordingly, Lument must also be granted relief from the automatic stay pursuant to section 362(d)(2) of the Bankruptcy Code.

**D.     The Court Should Lift the Stay of Any Order Granting Stay Relief under Bankruptcy Rule 4001(a)(3)**

81.     "An order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 4001(a)(3). "The court may, in its discretion, order that Rule 4001(a)(3) is not applicable so that the prevailing party may immediately enforce and

9708455

implement the order granting relief from the automatic stay." Fed. R. Bankr. P. 4001 cmt. 1999 amend.

82.     Lument respectfully requests that the Court direct that any relief from the automatic stay shall take immediate effect, notwithstanding Bankruptcy Rule 4001(a)(3). By the time this Renewed Motion is heard, over four months will have elapsed since the Petition Date, without any progress in the Chapter 11 Case.  Equity dictates that the stay should be lifted immediately to allow Lument to pursue all available remedies.

## III.   THE CHAPTER 11 CASE MUST ALSO BE DISMISSED ON ADDITIONAL GROUNDS

83.     In the event the Court does not dismiss the case for lack of legal authority or lift the stay, there are also other clear mandatory grounds for dismissal of the Chapter 11 Case for "cause" pursuant to section 1112(b) of the Bankruptcy Code.

### A.     The Chapter 11 Case Must be Dismissed Due to Gross Mismanagement of the Debtor's Estate

84.     Section 1112(b)(4)(B) of the Bankruptcy Code provides that "gross mismanagement" of the estate constitutes "cause" for dismissal or conversion of a chapter 11 case.

85.     The Debtor has demonstrated gross mismanagement of its estate from the very beginning of this Chapter 11 Case by its continuing neglect of its sole asset – the Property – in violation of City and State laws, and its failure to reach, fund and effectuate a settlement with the former tenants of the Property in the almost four months that have passed since the Petition Date.

86.     Of particular relevance to the Debtor's mismanagement of its estate in this Chapter 11 Case are the Debtor's apparent disregard for and violation of the requirements of 28 U.S.C. § 959(b), which provides as follows:

> Except as provided in section 1166 of title 11, a trustee, receiver or manager appointed in any cause pending in any court of the United

28

9708455

> States, including a debtor in possession, shall manage and operate
> the property in his possession as such trustee, receiver or manager
> according to the requirements of the valid laws of the State in
> which such property is situated, in the same manner that the owner
> or possessor thereof would be bound to do if in possession thereof.

28 U.S.C. § 959(b).

87.     The congressional intent evidenced by 28 U.S.C. § 959(b) is to safeguard the

integrity of state and local regulatory laws. *In re Friarton Ests. Corp.*, 65 B.R. 586, 591 (Bankr.

S.D.N.Y. 1986). A chapter 11 debtor "is not *pro tanto* excused by virtue of its bankruptcy from

complying with valid and enforceable state and local regulation[s]. By virtue of 28 U.S.C. §

959(b), it is required to obey them." *In re Synergy Dev. Corp.*, 140 B.R. 958, 959 (Bankr.

S.D.N.Y. 1992) (quoting *In re Beker Industries Corp.,* 57 B.R. 611, 624 (Bankr. S.D.N.Y.

1986)).  It is thus "inescapable to avoid the conclusion that 28 U.S.C. § 959(b) requires a debtor

to conform with applicable federal, state, and local law." *In re St. Mary Hosp.*, 86 B.R. 393, 398

(Bankr. E.D. Pa. 1988); *Matter of Briarcliff*, 15 B.R. 864, 868 (D.N.J. 1981) ("the intent of

Congress as expressed in 28 U.S.C. § 959 operates to direct … compl[iance] with applicable

State and local law … In this case the debtor in possession is conducting an apartment rental

business, and so must comply with rent levelling ordinances.").

88.     The Debtor has failed to remedy past violations and continued to violate City and

State laws with respect to the Property since the Petition Date. These violations, which are

detailed in the City Complaint and the State Complaint, constitute numerous ongoing violations

of 28 U.S.C. § 959(b). Moreover, there is no evidence that the Debtor has any concrete plan or

ability to rectify those violations in any reasonable period of time.

89.     The Debtor's continued failure to comply with City and State laws with respect to

the Property constitutes gross mismanagement of the estate. Moreover, as demonstrated by the

photos documenting the conditions observed by Mr. Schmitter during his inspection of the

9708455

Property on May 10, 2023, the Debtor is not taking proper care of the Property. Those photos

were taken approximately 4½ months after the Property was flooded in late December 2022.

Yet, the Property still had exterior doors propped open; open, broken and/or removed windows

leaving the building open to the elements; missing and damaged sections of roofing material; a

water leak in the ceiling of the gymnasium; mold growth present throughout the 521 tower,

including active growth of mushrooms; open or damaged doors to roof mechanical rooms of

each tower, leaving the interior open to the elements; a water leak in the 529 tower sprinkler riser

room; and mold growth present in multiple areas of the 529 tower. *See* City Complaint, ¶¶ 55-56.

90.     It is not in the best interests of any party in this Chapter 11 Case to allow the

Debtor's violations of City and State law and failure to remediate and prevent further damage to

the Property to continue.  Gross mismanagement of the estate alone is sufficient grounds for

dismissal. 11 U.S.C. § 1112(b). Accordingly, the Chapter 11 Case must be dismissed.

**B.      The Chapter 11 Case Must Also be Dismissed Because There is a Substantial
or Continuing Loss to or Diminution of the Estate and Absence of a
Reasonable Likelihood of Rehabilitation**

91.     Section 1112(b)(4)(A) of the Bankruptcy Code provides that a "substantial or

continuing loss to or diminution of the estate and the absence of a reasonable likelihood of

rehabilitation" constitutes "cause" for dismissal or conversion of a chapter 11 case.

92.     In the case of a non-operating debtor, continued accrual of administrative

expenses without corresponding income may constitute substantial or continuing loss as

contemplated by section 1112(b)(4)(A).  7 Collier on Bankruptcy ¶ 1112.04[6][a][i] (2023). *See*

*Loop Corp. v. United States Trustee*, 379 F.3d 511, 516 (3d Cir. 2004) ("In the context of a

debtor who has ceased business operations and liquidated virtually all of its assets, any negative

cash flow—including that resulting only from administrative expenses—… is enough to satisfy

the first element of § [1112(b)(4)(A)]." (citations omitted)); *In re Sakon*, 617 B.R. 7, 15 (Bankr.

D. Conn. 2020) (where the estate has no hope of rehabilitation, no value to preserve in an operating business, and minimal income, "[t]he losses need not be large—'[a]ll that need be found is that the estate is suffering some diminution in value.'" (quoting *In re Taub*, 427 B.R. 208, 231 (Bankr. E.D.N.Y. 2010)).

93.    The Debtor is not operating and has no income. Its sole asset is the Property. Meanwhile, the condition and value of the Property continues to deteriorate as outlined above, while property taxes and other expenses associated with the Property, including insurance, continue to accrue and the Debtor is incurring legal and other fees prosecuting this Chapter 11 Case. Property taxes for the Property alone currently amount to approximately $510,000 on an annual basis.[20] Thus, there is a continuing loss to or diminution of the estate in this Chapter 11 Case.

94.    The Debtor also has no reasonable likelihood of rehabilitation in this Chapter 11 Case, which, even standing alone, warrants dismissal.[21] "Where the debtor has no cash flow and no source of income and where the claims against the property of the debtor exceed the property's value, a debtor has not demonstrated a reasonable likelihood of rehabilitation and dismissal may be appropriate." *In re 865 Centennial Avenue Assocs. Ltd. P'ship*, 200 B.R. 800, 810 (Bankr. D.N.J. 1996) (citing *First Jersey Nat'l Bank v. Brown (In re Brown)*, 951 F.2d 564, 571 (3d Cir. 1991)).

95.    The Debtor has no cash flow or source of income and the claims against the Debtor, of at least $22 million, exceed the value of the Property. In addition, as noted above, the

---

[20] The Debtor failed to pay prepetition real estate taxes, forcing Lument to pay same on behalf of the Debtor.

[21] Although section 1112(b)(4)(A), which refers to "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation," is written in the conjunctive, the examples of "cause" in section 1112(b)(4) are illustrative and non-exhaustive. It is well settled that a debtor's inability to achieve confirmation of a plan, by itself, provides sufficient "cause" for dismissal or conversion of a chapter 11 case. *In re 1121 Pier Village LLC*, 635 B.R. 127, 137 (Bankr. E.D. Pa. 2022).

9708455

Debtor's Plan and Disclosure Statement include no estimate of when any insurance proceeds might be paid to the Debtor (or Lument, as loss payee) under the Insurance Policy even if the Debtor's insurance claim is successful. There is also no explanation in the Plan or Disclosure Statement of how the purported $30 million in insurance proceeds would fund both payments to creditors and restoration of the Property. In fact, based upon the CBRE Appraisal, the costs to restore the Property would be approximately $14,000,000 to $18,000,000, and claims in this case exceed $22 million.  There would be insufficient insurance proceeds to both restore the Property and satisfy the claims of creditors even if the insurance claim is successful and the full limits of the Insurance Policy are paid. In addition, the Disclosure Statement is silent about the Great American ROR Letter and does not discuss the risk that coverage could be limited or denied entirely or the fact that coverage may be limited to the costs of restoration only. *See In re Woody's Enterprises, Inc.*, No. 09-04675-8-RDD, 2010 WL 481264, at *1-2 (Bankr. E.D.N.C. Feb. 3, 2010) (denying confirmation of debtor's plan, in part, because the debtor's projected revenues were based on speculative proceeds from an insurance claim for storm damages to the debtor's buildings and providing the debtor 14 days to file a substantially amended plan or face dismissal of its chapter 11 case).

96.     As the Third Circuit has noted in the context of a motion to dismiss under section 1112(b) based on the absence of a reasonable likelihood of rehabilitation, "[h]owever honest in its efforts the debtor may be, and however sincere its motives, the District Court is not bound to clog its docket with visionary or impracticable schemes for resuscitation." *In re Brown*, 951 F.2d at 572 (quoting *Tennessee Publishing Co. v. American Nat'l Bank,* 299 U.S. 18, 22 (1936)). "[T]here must be 'a reasonable possibility of a successful reorganization within a reasonable time.'" *Id.* (quoting *United Sav. Ass'n v. Timbers of Inwood Forest Assocs.,* 484 U.S. 365, 376 (1988)). "Courts usually require the debtor do more than manifest unsubstantiated hopes for a

9708455

successful reorganization." *Id.* (quoting *In re Canal Place Ltd. Partnership,* 921 F.2d 569, 577 (5th Cir. 1991)).

97.     Because the Debtor is suffering a continued loss to or diminution of the estate and has no likelihood of rehabilitation, the Chapter 11 Case must be dismissed. *See, e.g., Paradigm Elizabeth, LLC v. Empire TFI Jersey Holdings, LLC,* 560 B.R. 238, 243 (D.N.J. 2016) (affirming bankruptcy court's dismissal of chapter 11 case where court found that debtor "had no business, cash flow, or funds following the loss of [a property], and that the fraudulent conveyance claim – the only remaining asset – could take years to resolve"); *In re Pensignorkay, Inc.*, 204 B.R. 676 (Bankr. E.D. Pa. 1997) (cause for dismissal of chapter 11 debtor's single asset real estate case existed where, in addition to sheer unlikelihood that debtor would be able to propose a confirmable plan, unpaid real estate taxes and mounting tax liens against debtor's property constituted source of continuing loss to or diminution of the estate); *see also Quarles v. United States Trustee*, 194 B.R. 94, 97 (W.D. Va. 1996) (affirming conversion of case to chapter 7 where debtor was losing money and only hope of reorganization depended entirely on speculative outcomes in pending litigation); *Johnston v. Jem Dev. Co. (In re Johnston)*, 149 B.R. 158, 162 (B.A.P. 9th Cir. 1992) (affirming conversion of case to chapter 7 where debtor lacked sufficient income to fund a plan and further delay would be prejudicial to creditors and noting that "where there is no reasonable possibility of an effective reorganization, the bankruptcy court is not compelled to wait a certain period of time, to the detriment of creditors, before ordering conversion of the case.").

## IV.    LUMENT IS ENTITLED TO AND HEREBY REQUESTS ADEQUATE PROTECTION OF ITS INTERESTS IN THE PROPERTY

98.     Lument hereby requests that the Debtor be prohibited from using the Property without adequate protection of Lument's interests in the Property pursuant to section 363(e) of the Bankruptcy Code, which provides, in relevant part, as follows:

9708455

> Notwithstanding any other provision of this section, at any time, on
> request of an entity that has an interest in property used ... by the
> [debtor in possession], the court, with or without a hearing, shall
> prohibit or condition such use ... as is necessary to provide
> adequate protection of such interest.

11 U.S.C. § 363(e).

99.    The Bankruptcy Code does not expressly define adequate protection, but section 361 of the Bankruptcy Code states that it may be provided by (1) periodic cash payments; (2) additional or replacement liens; or (3) other relief resulting in the "indubitable equivalent" of the secured creditor's interest in the property. 11 U.S.C. § 361. The last possibility is regarded as a catch all, allowing courts discretion in fashioning the protection provided to a secured party on a case-by-case basis. *In re Swedeland Dev. Grp., Inc.*, 16 F.3d 552, 564 (3d Cir. 1994). *Id.* "When devising a proposal for adequate protection of a secured creditor's interest, the proponent should as nearly as possible under the circumstances of the case provide the creditor with the value of his bargained for rights." *In re GVM, Inc.*, 605 B.R. 315, 325 (Bankr. M.D. Pa. 2019) (quoting *In re Hari Ram, Inc.*, 507 B.R. 114, 120 (Bankr. M.D. Pa. 2014)). The Debtor has the burden of proof on the issue of adequate protection. 11 U.S.C. § 363(p)(1).

100.    In the event the Chapter 11 Case is not immediately dismissed or Lument is not granted stay relief to exercise all of its rights and remedies under the Loan Documents and applicable state law, Lument requests the following as adequate protection of its interests in the Property pending confirmation of a Plan or sale of the Property:[22]

> (i)    that the Debtor provide Lument with an immediate remediation plan for the Property in a form acceptable to Lument ("Remediation Plan"), together with evidence of sufficient funding to execute such Plan as promptly as possible;

---

[22] Capitalized terms used but not defined in this paragraph have the meanings ascribed to such terms in the Loan Agreement.

9708455

(ii)   that the Court fix milestones for the Remediation Plan subject to a schedule acceptable to Lument;

(iii)   that the Court fix milestones for the sale of the Property or confirmation of a Plan on terms acceptable to Lument;

(iv)   that the Debtor reimburse Lument for all real estate taxes and any insurance costs paid by Lument on behalf of the Debtor to date, fund into the Tax and Insurance Escrow Account all applicable Taxes and Insurance Premiums with respect to the Property going forward in accordance with section 6.2 of the Loan Agreement on each Payment Date, and comply in all respects with section 4.3(a) (Payment of Taxes) and 5.1 (Insurance) of the Loan Agreement;

(v)   that the Debtor make monthly adequate protection payments to Lument equal to the interest accruing on the Loan at the Default Rate and bring current all past due Debt Service other than principal under the Loan; and

(vi)   that the Debtor immediately pay Lument all fees and costs, including professional fees, owed under the Loan Documents, and stay current on payment of such fees and costs.

101.    Finally, Lument requests that the Court protect all rights that Lument has as loss payee under the Insurance Policy and make a determination of whether the Court should direct Great American Insurance Company to pay all policy proceeds directly to Lument to prevent any dissipation thereof.

## **NOTICE**

102.    Notice of this Renewed Motion is being provided to (i) the Debtor; (ii) the office of the United States Trustee; (iii) all creditors listed on the Debtor's creditor matrix filed at Doc. No. 28; and (iv) those parties who have filed a notice of appearance and request for service of pleadings in this Chapter 11 Case. In light of the nature of the relief requested herein, Lument submits that no other or further notice is required.

9708455

WHEREFORE, Lument respectfully requests that the Court enter an order (a)

dismissing the Chapter 11 Case or (b) in the alternative, granting Lument relief from the

automatic stay pursuant to section 362(d) of the Bankruptcy Code to allow Lument to pursue all

available rights and remedies in the Foreclosure Action (including, but not limited to, the

appointment of a receiver for the Property), in the Environmental Actions, and under the Loan

Documents, and granting Lument such other and further relief as the Court deems just and

proper.

Dated: June 9, 2023                         SILLS CUMMIS & GROSS P.C.

                                            */s/ Andrew H. Sherman*
                                            Andrew H. Sherman
                                            Boris I. Mankovetskiy
                                            Michael Savetsky
                                            One Riverfront Plaza
                                            Newark, NJ 07102
                                            Telephone: (973) 643-7000
                                            asherman@sillscummis.com
                                            bmankovetskiy@sillscummis.com
                                            msavetsky@sillscummis.com

                                            *Attorneys for Lument Commercial Mortgage Trust*

9708455